**IN THE U.S. DISTRICT COURT**
**DISTRICT OF RHODE ISLAND COURT OF PROVIDENCE COUNTY**

**JOSHUA MELLO and RACHEL WARE,**
*Plaintiffs*

**vs.**

**DEREK GUSTAFSON, TIMOTHY VESEY,**
**STEVEN CATALANO, JOHN ROCCHIO and**
**EDWARD ARRUDA**
*Defendants*

Case No. 1:23-cv-000480-JJM-PAS

COMPLAINT

1. **Introduction**

In the United States District Court for the District of Rhode Island, the plaintiffs, Joshua

Mello, appearing pro se, and Rachel Ware, hereby bring forth this civil action against the

defendant's, Derek Gustafson, Timothy Vesey, Steven Catalano, John Rocchio and Edward

Arruda (collectively hereinafter "Defendants"). The Defendants are accused of willfully and

knowingly violating the plaintiff Joshua Mello's rights as guaranteed by the United States

Constitution, including 18 USC § 242 Deprivation of rights under the color of law, 18 U.S. Code

§ 1621 - Perjury, and 18 U.S. Code § 1623. These violations transpired on October 21,2021,

(except defendant Mr. Catalano) and during the trial held on November 2, and 15, 2022, wherein

all the defendant's violated 18 USC § 242 Deprivation of rights under the color of law and

perjured themselves under oath. 42 USC § 1983 establishes a mechanism for individuals to seek

legal remedies for violations of their constitutional and statutory rights by state officials.

Furthermore, the defendant's actions also contravened the statutes of the State of Rhode

Island, specifically RI General Law 11-33-1, which expressly prohibits perjury in any form, and

RI General Law 11-33-2, which stipulates penalties, including imprisonment of up to twenty (20)

years, for the offense of perjury and subornation of perjury. The defendants' deliberate deceit during the trial infringed upon the plaintiff, Joshua Mello's, right to a fair trial and due process, ultimately resulting in a profound miscarriage of justice.

In addition to the federal and state law violations, the defendants orchestrated deception directly transgressed Article I, Section 2 of the Rhode Island Constitution, which safeguards every individual's right to due process and equal protection under the law. The defendant's deliberate misrepresentation during the trial infringed upon the plaintiffs' entitlement to a fair and impartial trial, thereby violating his rights as enshrined in the state constitution.

## 2. Jurisdiction and Venue

The United States District Court for the District of Rhode Island is the correct venue to file a civil lawsuit for violations of the color of law, which involve the abuse of authority by government officials. This federal court has jurisdiction over cases involving federal law, constitutional violations, and civil rights claims.

## 3. Parties

**Plaintiffs:**
Joshua Mello, Victim/Whistleblower
57 Rolfe Square, unit 10113
Cranston, RI 02910

Rachel Ware, Whistleblower
57 Rolfe Square, unit 10113
Cranston, RI 02910

**Defendant:**
Derek Gustafson, Assistant Principal
Western Hills Middle School
400 Phenix Ave,
Cranston, RI 02920

Steven Catalano, Attorney/Prosecutor
35 Hallmark Dr.
Warwick, RI 02886

Timothy Vesey, Principal
Western Hills Middle School
400 Phenix Ave,
Cranston, RI 02920

John Rocchio, School Resource Officer
5 Garfield Ave
Cranston, RI 02920

Edward Arruda, School Resource Officer
5 Garfield Ave
Cranston, RI 02920

4. **Statement of Facts**
**Regarding Derek Gustafson, Assistant Principal:**

The plaintiffs, Joshua Mello and Rachel Ware, present these statements of facts regarding the actions of Mr. Derek Gustafson, in his official capacity as the Assistant Principal at Western Hills Middle School, on October 21, 2021 and during the defendant's trial that took place at Kent County Courthouse in Warwick, RI on November 2, and 15, 2022, has made a series of grave violations, most notably the deprivation of the plaintiff's, Mr. Mello's rights under the color of law, as explicitly outlined in 18 USC § 242. Mr. Gustafson's actions resulted in the blatant denial of the plaintiff's constitutionally protected right to due process, guaranteed by the 5th and 14th Amendments, as he provided false statements and declarations while under oath during the plaintiff's trial. In doing so he also violated RI General Law 11-33-1, which prohibits perjury in any form, and in doing so is subject to RI General Law 11-33-2, which prescribes penalties for perjury and subornation of perjury. He is in violation of Article I Section 2 of the RI Constitution that established No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws.

Of particular concern are these instances of Mr. Gustafson's deliberate misrepresentations during the trial proceedings:

3

1. During the trial, Mr. Gustafson provided testimony claiming his presence during the moments preceding the plaintiff's assault and subsequent arrest by the school resource officers. Under oath, he affirmed his presence and responded to Attorney Catalano's inquiries regarding the events leading up to the assault. However, suppressed surveillance footage from Western Hills reveals a discrepancy in his testimony, indicating a period of approximately two minutes during which Mr. Gustafson was absent from the scene. Western Hills Middle School (WHMS) Main Lobby Video 8:40 am he walks the student to class. He does not return for 2 ½ minutes which is 8:42 am and 31seconds and within 9 seconds Officer Rocchio is grabbing and assaulting Josh. Astonishingly, Mr. Gustafson knowingly and willingly testified about events he was not present for, thereby compromising the integrity of the trial and violating the plaintiff's right to a fair and accurate representation of the events.

2. Mr. Gustafson further provided false information during his testimony, alleging that he had called the School Resource Officers (SROs) due to Mr. Mello's alleged visible shaking and agitation. WHMS Main Lobby video from the time Josh enters the school at 8:23 am until Derek Gustafson contacted the SRO's at 8:27 am. He is not seen visibly shaking or being agitated. Contrary to his claims, the suppressed surveillance video from Western Hills School depicted no such claims of agitation before Mr. Gustafson's called the SROs, with Mr. Mello visibly seated in a composed manner, awaiting the release of his child. By misrepresenting Mr. Mello's demeanor and actions, Mr. Gustafson not only misled the court but also distorted the truth, thereby undermining the plaintiff's right to a fair and impartial trial and breaching the integrity of the legal process. Mr. Gustafson also stated under oath based on Mr. Mello, being agitated, not willing to speak with us,

4

thought Mr. Mello was unsafe. The WHMS Main Lobby Video shows starting at 8:25 am 54 seconds Mr. Mello interacting with Mrs. Couto and then by 8:26 am and 41 seconds Mr. Vesey joins the conversation and by 8:27 am Josh is now at the main office window as they all have a conversation and by 8:29 am and 24 seconds Josh is heading back to sit on the bench. This shows that Mr. Gustafson's statement is not accurate. His actions also mislead the school resource officers that he called to the school for "an upset parent".

3. During the trial, the testimony provided by Mr. Gustafson is marred by several inaccuracies. He alleges that Mr. Mello was in close proximity, possibly recording, within eighteen inches of his person. However, the concealed footage from the Western Hills Surveillance contradicts this assertion, indicating a significant distance between Mr. Gustafson and Mr. Mello. See WHMS Main Lobby Video at 8:38am. Additionally, Mr. Gustafson's claim of being present within the office premises is disputed by evidence placing him in the foyer. Moreover, his account of Mr. Mello's purported destruction of the court order is contradicted by the actual sequence of events, which reveals that the document was torn as a result of Officer Arruda's forceful retrieval of the said order from Mr. Mello's possession. Mr. Gustafson testified that Mr. Mello grabbed it out of Mr. Vesey's hand and ripped it up. This is incorrect. In the WHMS Video at 8:34 am Mr. Vesey comes out with the document extended in his hand to Mr. Mello. The document got ripped when Officer Arruda aggressively grabbed the document out of Mr. Mello's hands. It is imperative to underscore that the principles of jurisprudence preclude the institution of charges based on speculative or preemptive grounds. This instance further exemplifies the deliberate misrepresentation of the events that transpired on October 21, 2021.

4. Mr. Gustafson and Attorney Catalano deliberately misrepresented the severity of the assault against Mr. Mello, downplaying the aggressive tactics employed by the officers involved. Mr. Gustafson called it a wrestling match; he obscured the excessive use of force against Mr. Mello. Thereby violating Mr. Mello's right to be free from unjustified and excessive force as guaranteed by law. His actions violated the plaintiff's right to due process as outlined in Article I, Section 2 of the RI Constitution.

These instances of deliberate misrepresentation and false testimony by Mr. Gustafson have severely compromised the plaintiff's right to a just and equitable trial, undermining the fundamental principles of fairness and impartiality that are essential to the integrity of the legal system. He was the first witness setting the groundwork for Attorney Catalano's scripted testimony for the remaining witnesses. Additionally, 42 USC § 1983, establishes a mechanism for individuals to seek legal remedies for violations of their constitutional and statutory rights by state officials.

Furthermore, Mr. Gustafson also conspired against the plaintiff's rights, with Attorney Catalano, in violation of 18 USC § 241. His deliberate act of providing false statements and declarations, which led to instances of perjury while under oath, constitutes a premeditated conspiracy aimed at violating the plaintiff's fundamental rights. These calculated actions have resulted in a severe miscarriage of justice and have undermined the essential principles of a fair and impartial legal process.

**Regarding Attorney Steven Catalano:**

The plaintiffs, Joshua Mello and Rachel Ware, present these statements of facts regarding the actions of Attorney Steven Catalano during the defendant's trial that took place at Kent County Courthouse in Warwick, RI last November 2, and 15, 2022, which have resulted in the

6

deprivation of the plaintiff, Joshua Mello's rights under 18 USC 242, specifically the deprivation

of rights under color of law. Mr. Catalano's conduct effectively deprived the plaintiff of rights,

privileges, or immunities that are secured or protected by the Constitution or laws of the United

States of America. He is guilty of prosecutorial misconduct which resulted in violation of civil

and constitutional rights along with a miscarriage of justice. Furthermore, 42 USC § 1983

establishes a mechanism for individuals to seek legal remedies for violations of their

constitutional and statutory rights by state officials.

   These are instances of Attorney Catalano's deliberate misrepresentations during the trial

proceedings:

1.   Violation of 18 USC § 242: Deprivation of plaintiff Joshua Mello's constitutional rights
     and prosecutorial misconduct resulting in a miscarriage of justice. The prosecutor,
     Attorney Steven Catalano, suppressed critical evidence during the trial, submitting but
     never viewing the Western Hills Middle School Surveillance video, prosecuting a knife
     charge that was not accurate, depriving the plaintiff of constitutional rights guaranteed
     under 18 USC § 242. His actions resulted in a miscarriage of justice, compromising the
     integrity of the trial proceedings.42 USC § 1983 establishes a mechanism for individuals
     to seek legal remedies for violations of their constitutional and statutory rights by state
     officials.

2.   Violation of 5th and 14th Amendments: Denial of Due Process. Attorney Catalano's
     suppression of crucial evidence, specifically the Western Hills surveillance video,
     violated the plaintiff's right to due process. His deliberate orchestration of false
     testimonies and manipulation of witness statements led to a violation of the plaintiff's
     rights under the 5th and 14th Amendments.

3. Violation of 18 USC § 241, RI General Law 11-33-1, and American Bar Association rules 8.4: Conspiracy, Perjury, and Egregious Misconduct. Attorney Catalano colluded to elicit false statements from witnesses, leading to instances of perjury, conspiracy, and a violation of legal and professional ethical standards. Attorney Catalano coerced witnesses, particularly Mr. Gustafson, to provide false testimony during a period of time he was not present. This manipulation of witness statements infringed upon Mr. Mello's right to an unbiased trial and compromised the integrity of the judicial process. His actions constituted egregious misconduct and a violation of various statutes and regulations.

4. Violation of Rule 3.3 Candor Toward the Tribunal from the Rhode Island Rules of Professional Conduct. Attorney Catalano deliberately misrepresented material facts to the court, disregarding the validity of evidence and the accuracy of the charges presented. His actions violated Rule 3.3 of the Rhode Island Rules of Professional Conduct. He also lied to the presiding Judge about not having received a part of the discovery even though he admitted to having the links to the evidence under oath. He then continued his lie by changing his story and telling the Judge he had only found out 2 to 3 weeks earlier about the videos. Yet they are specifically asked for in the discovery request dated August 17, 2022, signed by Attorney Catalano himself.

5. Violation of Rule 3.8 Special Responsibilities of a Prosecutor. Attorney Catalano failed to uphold his responsibilities as a prosecutor, providing false evidence and facilitating perjury during the trial. Attorney Catalano misled the courts by continuing to refer to the Family Court Order the school had, as being the document that governed the child's release. Infact that court order was terminated when a new Family Court Order was

8

agreed upon by Judge DiSegna on April 28, 2021, stating "All prior Orders are null and replaced by this Order" signed on May 27, 2021, by the Judge. Attorney Catalano had the duty to provide this information to the courts and he chose not to even though the Cranston School Department Superintendent and Principal Mr. Vesey of Western Hills Middle School were hand delivered the only Family Court Order in effect on October 22, 2021. His actions violated Rule 3.8, which outlines the special responsibilities of a prosecutor in upholding the integrity of the legal system. Attorney Catalano also failed to acknowledge crucial evidence pertaining to the legality of the knife in question. Per the Gerber manufacture specification, the knife in question has a blade that measures exactly 3 inches which complies with Rhode Island's laws. His misleading presentation of the knife charge undermined Mr. Mello's right to a fair and accurate representation of the charges brought against him, constituting a violation of his rights under the legal system. It is the job of the prosecutor to confirm the validity of all charges they are going to prosecute.

6. Violation of Article I, Section 2 of the RI Constitution: Misrepresentation of Assault and Violation of Due Process. Attorney Catalano deliberately misrepresented the severity of the assault against Mr. Mello. Downplaying the aggressive tactics employed, such as SRO Arruda placing his arm around the plaintiff's neck and utilizing disproportionate physical force to bring him to the ground. This was unreasonable and disproportionate under the circumstances and is deemed excessive. By mischaracterizing the incident as a mere "scuffle," he obscured the excessive use of force against Mr. Mello and thereby violated his right to be free from unjustified excessive force as guaranteed by law. His

actions violated the plaintiff's right to due process as outlined in Article I, Section 2 of the RI Constitution.

These claims are presented in response to Attorney Steven Catalano's conduct during the defendant's trial at the Kent County Courthouse in Warwick, RI on November 2 and 15, 2022, which have resulted in the deprivation of plaintiff Joshua Mello's legal rights and the miscarriage of justice.

**Regarding Mr. Timothy Vesey, Principal at Western Hills Middle School:**

The plaintiffs Joshua Mello and Rachel Ware, present these statements of facts regarding the actions of Mr. Timothy Vesey, in his capacity as the Principal at Western Hills Middle School, on October 21, 2021, and during the defendant's trial that took place at Kent County Courthouse in Warwick, RI on November 2, and 15, 2022. Mr. Vesey has been part of egregious instances that flagrantly violate the plaintiff's rights under 18 USC § 242, Deprivation of rights under color of law. Mr. Vesey's deliberate actions have directly resulted in the deprivation of the plaintiff's fundamental right to due process. His provision of false statements and declarations, culminating in instances of perjury while under oath, not only contravenes the foundational principles of fair legal proceedings but also violates the plaintiff's constitutional rights protected under the 5th Amendment, pertaining to the right to a fair trial, and the 14th Amendment, which safeguards equal protection under the laws. Not only is he in violation of Federal Laws he also violated the RI Constitution and RI General Laws. He violated RI General Law 11-33-1, which prohibits perjury in any form, and in doing so is subject to RI General Law 11-33-2, which prescribes penalties for perjury and subornation of perjury. He is in violation of Article I Section 2 of the RI Constitution that established No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws.

1. During the trial in November of 2022, Mr. Vesey's testimony contained several false statements, including his initial denial of any acquaintance with Mr. Mello. Merely weeks before the incident, Mr. Mello had raised concerns with Mr. Vesey regarding the inappropriate behavior of his daughter's substitute bus driver, who used profane language yelling at the children, causing distress as he veered off the traditional bus route. Additionally, Mr. Mello had expressed concerns about a teacher's failure to allocate the children their designated mask breaks during COVID. The severity of the issue with the bus driver prompted the school administration to intervene and address the matter with the students who take that bus, reprimanding them instead of the bus driver which resulted in Mr. Mello contacting Mr. Vesey a subsequent time. This is a circumstance that would have undoubtedly garnered Mr. Vesey's attention.

2. Furthermore, his claim of Mr. Mello tearing up an invalid court order, when juxtaposed with surveillance evidence, presents a stark contrast to the events that transpired, reflecting a misleading portrayal of the actual incident. In the Western Hills Middle School Main Lobby Video at 8:34 am Mr. Vesey comes out with the document extended in his hand to Mr. Mello. The document got ripped when Officer Arruda aggressively grabbed the document out of Mr. Mello's hands.

3. Mr. Vesey persisted in providing misleading information, asserting that he personally approached Mr. Mello after obtaining permission from the child's mother for the release of their child. Contrary to Mr. Vesey's claims, both the Western Hill surveillance footage and the plaintiff's video evidence unequivocally demonstrate Officer Arruda's direct involvement in communicating with Mr. Mello about the permission he got from speaking with Tonya Morena, the mother, on releasing their child. Mr. Vesey's

misrepresentations not only undermined the veracity of the court proceedings but also contributed to the distortion of the truth. He also stated this false declaration in his witness statement provided to the police. Both he and Officer Arruda write and testify to doing the exact same thing.

4. Additionally, Mr. Vesey's sworn testimony contradicts the suppressed video evidence, where he claims that the Family Court Order was never redacted, despite clear visual confirmation to the contrary. Which can be seen when watching the Western Hills Middle School Surveillance video. He nor Attorney Catalano never expressed to the courts that the family court order they refer to did not govern the release of the child as it was an invalid court order. This discrepancy not only highlights the inconsistencies in Mr. Vesey's narrative but also casts doubt on the integrity of the information presented during the proceedings.

**Regarding Officer Rocchio:**

The plaintiffs, Joshua Mello and Rachel Ware, present these statements of facts regarding the actions of Officer Rocchio during the defendant's trial that took place at Kent County Courthouse in Warwick, RI on November 2, and 15, 2022 and the actions the morning of October 21,2021. His actions have given rise to several violations of Mr. Mello's rights under 18 USC § 242, Deprivation of the color of law, perjury and subornation of perjury during the trial contravened federal law under 18 U.S. Code § 1621 and 18 U.S. Code § 1623. And to further exacerbate the violation of his civil rights, Officer Rocchio violated Article I Section 2 of the RI Constitution along with RI General Law 11-33-1, which prohibits perjury in any form, and in doing so are subject to RI General Law 11-33-2, which prescribes penalties for perjury and subornation of perjury.

12

1. A significant disparity emerges between the contents of Officer Rocchio's official narrative of the assault and arrest and his sworn testimony during the proceedings. Of particular concern is the handling of evidence and the crucial matter of the chain of custody. In his police narrative, Officer Rocchio claims to have personally measured and marked the knives for exhibits, yet under oath, he attests to having entrusted the evidence to the Bureau of Criminal Investigation (BCI) for measurement and photography. The discrepancy becomes crucial given the assertion that one of the plaintiff's knives exceeded the 3-inch blade limit, an assertion that contradicts both the manufacturer's specifications, which indicate a precisely 3-inch blade, and the lack of a clear chain of custody, casting doubt on the veracity of Officer Rocchio's claims. Furthermore, the plaintiff's own video illuminates' additional infractions committed by Officer Rocchio. In the footage, the knives are seen being handed off to who we believe is Officer Arruda yet in his testimony he stated he secured them in his pocket. These inaccuracies compromise the integrity of the chain of custody and bring into further questions the validity and trustworthiness of the evidence.

2. Officer Rocchio's use of excessive force during the altercation, including restraining Mr. Mello by kneeling on his neck, and back, forcibly. Not listening to Mr. Mello's repeated cry's that he could not breathe. Officer Rocchio perched on Mr. Mello's back while he was handcuffed, tossing him aggressively around the vestibule. He doesn't stop there as Officer Rocchio slammed Mr. Mello on the hood of Officer Arruda's cruiser while in handcuffs so hard that his feel came off the ground. This constitutes a blatant violation of Mr. Mello's Constitutional rights under the color of the law. Furthermore, 42 USC § 1983

establishes a mechanism for individuals to seek legal remedies for violations of their constitutional and statutory rights by state officials.

3.  During the trial, Officer Rocchio provided misleading information, presenting false statements regarding the events in question. It is important to note that the family court order referenced to was not in effect on October 21, 2021, yet he does not provide that information to the courts.  During the proceedings, Attorney Catalano inquired about the duration of Officer Rocchio's presence before the decision to arrest was made, to which Officer Rocchio indicated a timeframe of 5 to 10 minutes. However, an analysis of the Western Hills Middle School Main Lobby video reveals Officer Rocchio's presence on the scene for approximately 4 minutes before the incident culminated in the assault and arrest of Josh. Moreover, Officer Rocchio's assertion of attempting to de-escalate the situation and providing time for Rachel to calm Josh down does not align with the evidence, as no substantiated time was allocated for de-escalation, and the video evidence does not demonstrate any efforts by Officer Rocchio to diffuse the situation.

**Regarding Officer Arruda:**

The plaintiffs, Joshua Mello and Rachel Ware, present these statements of facts regarding the actions of Officer Edward Arruda that took place on October 21, 2021, and at the defendant's trial that took place at Kent County Courthouse in Warwick, RI on November 2, and 15, 2022. He is responsible for a series of severe transgressions that directly contravened the plaintiff Joshua Mello's rights under 18 USC § 242, Deprivation of rights under color of law. Moreover, he participated in a conspiracy against the plaintiff's rights, in violation of 18 USC § 241. His intentional dissemination of false statements and declarations, leading to instances of perjury while under oath, reflects a premeditated conspiracy designed to subvert the plaintiff's

fundamental rights. Furthermore, 42 USC § 1983 establishes a mechanism for individuals to seek legal remedies for violations of their constitutional and statutory rights by state officials. These calculated actions have resulted in a profound miscarriage of justice and have significantly undermined the core tenets of a fair and impartial legal process.

1.  Officer Arruda's testimony during the proceedings is replete with false statements and declarations, a violation that contradicts the higher standard of conduct expected of an officer of the law. His misrepresentation of events, while being questioned by Attorney Catalano, regarding the morning of the plaintiff's assault and arrest, stands in stark contrast to the evidence presented. Officer Arruda stated under oath that Mr. Vesey went into the office to grab him the invalid family court order they had. He then went on to testify that Mr. Mello grabbed the document out of Mr. Vesey's hand and then tore it up. Referring to WHMS Main Lobby Video at 8:34 am, Mr. Vesey comes out with the document extended in his hand to Mr. Mello. The document got ripped when Officer Arruda aggressively grabbed the document out of Mr. Mello's hands. Contrary to his sworn testimony, the video evidence demonstrates a different story. Also, In Officer Arruda's Police Narrative in which he stated under oath he had with him for reference, the written statement from that day about the court order is entirely different from what he testified to under oath. The narrative he states, and I quote "Mr. Vesey brought out a copy of the Family Court Order and presented it to Josh. Josh took the paperwork out of Mr. Vesey's hand and started to rip up the document before I grabbed it away from him." He had his narrative with him on the stand and still told a different scenario than what he wrote the day of the incident. The video being suppressed allowed for the false

statements to remain un-objected to, because of the ineffective assistance of counsel that the defenses lawyer provided for Mr. Mello and the prosecutorial misconduct.

2. Furthermore, Officer Arruda's claims, made under oath, of adhering to the school's masking policy, in apparent support of the plaintiff, doesn't align with the video evidence, where he can be seen without a mask throughout the incident and thereafter. Officer Arruda volunteered to give this information while under oath and being an officer, he is held to a higher standard of conduct. Providing false statements to the courts is illegal.

3. He even says under oath that when he walked into the school, Mr. Mello and Mr. Vesey were in a standoff and at odds with each other. Again, if the suppressed video had been played, it shows that when Officer Arruda walks in Mr. Mello is standing by the bench across from the office, and Officer Arruda walks by him and starts to speak with Mr. Gustafson. His lies bring into question the validity of any of his statements.

4. Officer Arruda referenced an expunged case which is also a violation of Mr. Mello's rights, and the assault and illegal arrest followed within minutes. His actions not only demonstrate his gross inaccuracy about the events that took place but also underscores a violation of the law and discrimination against the plaintiff.

5. Subsequently, shortly following the controversial statement, 'I remember you now' the School Resource Officers (SROs) swiftly proceeded to forcefully apprehend and detain Mr. Mello, during which Officer Arruda employed aggressive tactics, including placing his arm around the plaintiff's neck and utilizing disproportionate physical force to bring him to the ground. From the time Officer Rocchio put hands on Mr. Mello at 8:42 am and 39 seconds only 7 seconds passed until the SRO's had gotten Mr. Mello to the ground at

the WHMS Main Lobby Video time of 8:42 am and 46 seconds. The intensity of the force utilized was such that immediate medical attention was required, leading to Mr. Mello's urgent transfer to a hospital before his eventual booking at the police station. Officer Arruda deliberately misrepresented the severity of the assault against Mr. Mello, downplaying the aggressive tactics employed. Misleading the courts not only violated Mr. Mello's rights by providing false testimony under oath but also resorted to excessive physical measures against a parent attempting to collect his child, an action well within his legal rights.

6. After Mr. Mello was handcuffed, the SRO's walked him out to the police cruiser. Under oath Officer Arruda said there was no problem walking him out. When they get him to the police cruiser Officer Rocchio smashes Mr. Mello off the hood of the car so hard his feet come off the ground. Officer Arruda does not mention this incident but goes on to talk about how there was a problem in the rear of the car (it was the front of the car). Officer Rocchio had Mr. Mello on the bumper, pressing his knees into the car, it was painful to Mr. Mello and when he voiced that Officer Rocchio ended up taking Mr. Mello aggressively to the ground. The video from Western Hills Middle school shows at 8:45 am and 29 seconds the two SRO's walking a handcuffed Mr. Mello to the cruiser. At 8:45 am and 45 seconds Officer Rocchio smashes a handcuffed Mr. Mello on the hood of the police cruiser so hard that both his feet come off the ground. At 8:46 am and 55 seconds the SROs toss Mr. Mello to the ground.

**5. Causes of Action**

**First Cause of Action: Violation of Constitutional and Statutory Rights under 18 USC § 242, and RI General Laws**

17

The defendants in their official capacity as a state government employee, willfully, knowingly and unlawfully deprived the plaintiff of his constitutionally guaranteed rights to due process and a fair trial, as protected by the Fifth and Fourteenth Amendments of the United States Constitution. By intentionally providing misleading and false testimony under oath, the defendants violated 18 U.S. Code § 242, which expressly prohibits the deprivation of any person's rights or privileges protected by the Constitution or laws of the United States. Furthermore, 42 USC § 1983 establishes a mechanism for individuals to seek legal remedies for violations of their constitutional and statutory rights by state officials.

Additionally, the defendants perjury and subornation of perjury during the trial contravened federal law under 18 U.S. Code § 1621 and 18 U.S. Code § 1623. These actions led to a miscarriage of justice, flagrantly infringing upon the plaintiff's rights and resulting in severe damage. At the local level, the defendants also violated RI General Law 11-33-1, which prohibits perjury in any form, and in doing so are subject to RI General Law 11-33-2, which prescribes penalties for perjury and subornation of perjury, including imprisonment of up to twenty (20) years.

**Second Cause of Action: Breach of Rhode Island State Constitutional Protections and Statutory Rights**

In addition to the violations of federal law, the defendant's actions also flagrantly disregarded the plaintiff's rights as enshrined in the Rhode Island State Constitution. By deliberately providing false testimony, the defendants violated Article I, Section 2 of the RI Constitution, which guarantees every individual the right to due process and equal protection

under the law. Their orchestrated deception during the trial directly infringed upon the plaintiff's entitlement to a fair and impartial trial, thus violating his rights under the state constitution.

## 6. Claims for Relief:

The Joshua Mello and Rachel Ware, the plaintiffs have suffered significant financial and emotional damages as a direct consequence of the defendant's violations of 18 USC § 242 Deprivation of rights under the color of law, along with 18 U.S. Code § 1621 - Perjury which are violations of the plaintiff, Mr. Mello's rights as guaranteed by the United States Constitution. Leading to a gross miscarriage of justice. The immeasurable pain and suffering, coupled with the emotional distress resulting from the continual deprivation and neglect of rights, weighs heavily on our well-being. False accusations propagated within the local community have led to the brink of closure for our small family business. Additionally, the unlawful arrest at my daughter's middle school has left us without a stable living situation, and we have become homeless. The repetitive and deliberate violations of my rights by the school administration and resource officers have left an indelible mark on our psyche, leading to overwhelming anxiety whenever we encounter the Cranston city authorities responsible for impeding my due process. We have been prevented from essential moments in my daughter's academic journey, including parent-teacher conferences, her inaugural school dance, and her first and only band concert due to the illegal no trespass order the Cranston School Department and the Cranston Police have on me and my wife. No judge has ever found it warranted to have a no trespass order regardless of being asked by the city prosecutor to impose one. The city and the school department decided to place them anyways. The enduring repercussions of these rights violations on my child's well-being transcend the present, manifesting in academic struggles and behavioral issues. The profound impact on our family unit remains incomprehensible, and the anguish of witnessing

false testimonies under oath has been deeply distressing. My experience highlights the alarming ease with which rights can be violated, underscoring the challenging journey of seeking accountability for these violations.

## 7. Prayer for Relief

The plaintiffs hereby seek the following relief from the court: appropriate compensatory damages, punitive damages, injunctive relief, and any other remedy that the court deems just and necessary to rectify the injustice perpetrated against the plaintiff.

1.  Compensatory Damages: The plaintiffs seek compensation for the harm, injuries, and damages suffered as a direct result of the defendant's actions, which violated his constitutional rights and led to a wrongful conviction and an unjust legal proceeding. This compensation aims to address the tangible and intangible losses experienced by the plaintiff's, including any financial, emotional, or reputational damages incurred.

2.  Punitive Damages: Considering the egregious nature of the violations, the plaintiffs seek punitive damages to deter similar misconduct in the future and to hold the defendants accountable for their intentional and malicious actions. These damages aim to punish the defendants for their willful disregard of the plaintiff's rights and to serve as a deterrent against future violations of the law.

3.  Injunctive Relief: The plaintiffs seek injunctive relief to prevent the defendant from further engaging in similar unconstitutional practices or from continuing any actions that may further infringe upon the plaintiff's rights. Injunctive relief may include court orders mandating specific actions to rectify the unjust situation or prevent future occurrences of similar violations. Also, the removal of the illegal no trespass order on Mr. Mello and his wife for the Briggs Building and the Western Hills Middle School.

4. Declaratory Relief: The plaintiffs seek a declaratory judgment from the court affirming that the defendant's actions were in violation of the plaintiff's constitutional rights and state laws. This declaration serves to establish the legal rights of the parties involved and may provide clarity on the legal implications of the defendant's misconduct.

5. Attorney Fees and Costs: The plaintiffs request the reimbursement of reasonable attorney fees and legal costs incurred in pursuing the lawsuit, even being a Pro Se Litigant's, similar fees should be awarded to compensate. This reimbursement serves to alleviate the financial burden placed on the plaintiff's in seeking justice and holding the defendant accountable for their unlawful actions.

6. The plaintiffs respectfully request that the defendant issue a public apology to the plaintiff's daughter, who has borne the brunt of the distress inflicted by their actions. The defendant's egregious conduct has resulted in enduring emotional trauma and irreversible harm to the child, and an open apology serves as a vital step toward facilitating the healing process for the young individual. Furthermore, the plaintiff, Joshua Mello, also requests an open apology for the deprivation of his constitutionally guaranteed rights, acknowledging the profound impact of the defendant's actions on his well-being and the enduring repercussions resulting from the violations perpetrated against him. An open acknowledgment of the harm caused, along with a sincere expression of remorse, would represent a meaningful gesture toward rectifying the harm inflicted upon the plaintiff and his family.

As the plaintiff's proceeds pro se in this civil lawsuit, the precise valuation of the damages incurred due to the defendant's numerous civil rights violations remains unknown. In an effort to

provide a starting point for the assessment of damages, the plaintiff proposes the following initial figures for consideration:

- Derek Gustafson: $8 million

- Steven Catalano: $10 million

- Timothy Vesey: $6 million

- Officer John Rocchio: $6 million

- Officer Edward Arruda: $6 million

It is imperative to note that while the proposed figures serve as a preliminary estimation, they by no means encapsulate the full extent of the emotional and psychological harm inflicted upon the plaintiffs and their family. The loss of irreplaceable time with the plaintiff's child, coupled with the enduring emotional distress endured by both the child and the family over an extended period, transcends monetary valuation and underscores the profound impact of the defendants' actions on the well-being of the plaintiffs.

## 8. Demand for Jury Trial

We believe that the complexity and importance of the issues involved in this case warrant a trial by jury to ensure a fair and impartial judgment. Should the court find it applicable and within our rights as the plaintiffs, we respectfully request that this matter be presented before a jury of our peers to ensure that the facts and evidence are thoroughly considered, and that justice is served in accordance with the laws of our state and country.

## 9. Closing Statement

In summation, this civil lawsuit unveils a disturbing pattern of misconduct by all Defendants, who, in their official capacity, violated the constitutional and statutory rights of Joshua Mello. The defendant's perjury, deception, and abuse of authority not only transgress

federal laws, such as 18 USC § 242 and 18 U.S. Code §§ 1621, 1623, but also flouted Rhode

Island state laws, including RI General Laws 11-33-1 and 11-33-2, resulting in a blatant

infringement of the plaintiff's right to a fair trial and due process.

The defendant's actions, contrary to the Rhode Island Constitution, have left an indelible

mark on the plaintiff's life, causing immeasurable harm to their well-being, family, and small

business. Seeking appropriate compensatory and punitive damages, injunctive relief, and a public

apology, the plaintiff's aims to rectify the severe injustice perpetrated against Mr. Mello.

As this case unfolds, the court is implored to acknowledge the gravity of the defendant's

transgressions, provide remedies that go beyond monetary compensation, and send a clear

message that such violations of constitutional and statutory rights will not be tolerated in our

legal system.

Respectfully submitted,

_____  1/31/2024

Joshua Mello
57 Rolfe Square, Unit 10113
Cranston, RI 02910
401-426-0778
kskustomsrideons@gmail.com


_____  1/31/24

Rachel Ware
57 Rolfe Square, Unit 10113
Cranston, RI 02910
401-426-0778
kskustomsrideons@gmail.com