1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**Joshua Mello and Rachel Ware, Plaintiffs**
v.
**Edward Arruda and John Rocchio, Defendants**
Case Nos.: 1:2023-cv-00479 & 1:2023-cv-00480

**MOTION TO COMPEL DISCOVERY RESPONSE**

NOW COME the Plaintiffs, Joshua Mello and Rachel Ware, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iii)-(iv), and respectfully move this Court for an order compelling Defendants to provide complete and non-evasive responses to Plaintiffs' interrogatories, request for admissions and production of documents. The plaintiffs are seeking more responsive and/or amended answers, responses, and additional responsive materials, in compliance with the Federal Rules of Civil Procedure. In support of this motion, Plaintiffs state as follows:

**INTRODUCTION**

The discovery process is intended to ensure the fair and transparent exchange of information relevant to the claims and defenses in litigation. In this case, Defendants have consistently obstructed discovery by providing evasive, non-responsive, and boilerplate objections to nearly every interrogatory, including the request for admissions and production of documents. These responses, which fail to comply with the Federal Rules of Civil Procedure, have severely prejudiced Plaintiffs' ability to litigate claims related to constitutional violations, including:

- Excessive use of force under *Graham v. Connor*, 490 U.S. 386 (1989);
- Procedural accountability and transparency;

- Municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Check claims in lawsuit
- The Color of Law under 18 USC 242 Deprivation of rights
- Police Misconduct Provision, 34 U.S.C. § 12601.
- The 42 USC § 1983

Defendants' pattern of bad faith is unacceptable. Their refusal to provide substantive responses not only hinders Plaintiffs' ability to build their case but also undermines the integrity of the judicial process. Below, Plaintiffs highlight specific examples of improper objections that typify Defendants' conduct, while noting that these are not isolated instances; the same issues permeate nearly all of Defendants' discovery responses, including the requests for admissions and production of documents.

**LEGAL STANDARD**

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of any non-privileged matter relevant to a claim or defense, provided it is proportional to the case's needs. The discovery rules—encompassing interrogatories, requests for admissions, and requests for production—require responses that are specific, good-faith, and avoid boilerplate objections. Noncompliance or incomplete responses may be remedied through a motion to compel under Rule 37(a)(3)(B).

**Interrogatories** (Rule 33): A party may serve up to 25 interrogatories, including logically related subparts, as clarified in *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 443 (C.D. Cal. 1998). Responses and objections must be specific, as mandated by Rule 33(b)(4), and courts routinely

reject vague or evasive objections (e.g., *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014)).

**Requests for Admissions** (Rule 36): Parties may serve requests to admit facts or the genuineness of documents. Responses must either admit, deny, or provide a detailed explanation after a reasonable inquiry, as per Rule 36(a)(4). Evasive denials or blanket objections unsupported by reasoning violate Rule 36(a)(5) (*United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009)). Sanctions under Rule 37(c)(2) may apply to unreasonably denied facts later proven true (*Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981)).

**Requests for Production** (Rule 34): Rule 34(a)(1) permits requests for documents, electronically stored information (ESI), or tangible items within a party's control. Responses must specify whether the requested materials will be produced or objected to, with objections stated with specificity (Rule 34(b)(2)(B)-(C)). Courts require privilege claims to be supported by a detailed privilege log (*Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005)). Noncompliance or vague objections may lead to compulsion (*Cahill v. Dart*, 2016 WL 7034139, at *2 (N.D. Ill. Dec. 2, 2016)).

Collectively, the Federal Rules aim to ensure discovery is conducted fairly and efficiently, avoiding evasion or unnecessary delay. Courts stress the proportionality requirement under Rule 26(b)(1), balancing relevance against the burden of production (*Aguilar v. Immigration & Customs Enf't Div.*, 255 F.R.D. 350, 356 (S.D.N.Y. 2008)).

**ARGUMENT**

**1. Recurring Boilerplate Objections Demonstrate Bad Faith**

Defendants have employed identical or substantially similar objections across multiple interrogatories, using terms such as "vague," "confusing," and "lacks context" without specific justification. These generic objections violate Rule 33(b)(4), which requires objections to be stated with specificity. Courts have held that boilerplate objections are insufficient and tantamount to a failure to respond. See *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) ("An objection that does not explain why the interrogatory is objectionable is tantamount to no objection at all."). The repeated use of such objections demonstrates a clear intent to obstruct the discovery process.

**2. Failure to Engage with Plaintiff's Claims**

Defendants' objections consistently ignore the relevance of the interrogatories to key claims in this case, such as Police Misconduct Provision, 34 U.S.C. § 12601, excessive use of force under *Graham v. Connor* and municipal liability under *Monell v. Dep't of Soc. Servs.* Discovery is meant to resolve disputed facts, yet Defendants evade questions designed to clarify departmental policies, training, and their own actions. This pattern of obstruction prevents Plaintiffs from effectively litigating their claims and understanding the full scope of Defendants' conduct.

**Examples:**

**Interrogatory 12 (Arruda):**

- **Question:** Identify investigations or audits concerning the October 21, 2021, incident.
- **Objection:** Proportionality, relevance, and confusion.

- ○ **Impropriety:** The request seeks to determine if proper investigations were conducted and whether departmental standards comply with federal civil rights law. The objections lack merit, as the request is specific and within the scope of discovery.

**Interrogatory 14 (Rocchio)**

- **Question:** Identify any training you received related to handling incidents involving parents or guardians on school property.
- **Objection:** Vague and overly broad. Refers to training records but does not provide details.
- **Impropriety:**

The request is clear and relevant to evaluating Defendant's preparedness and compliance with departmental procedures. Referring to records without providing details is evasive and insufficient under Rule 33.

**3. Evasion of Direct Questions**

Defendants refuse to clarify their own prior testimony, undermining Plaintiffs' ability to assess the reasonableness of force and departmental compliance.

**Examples:**

**Interrogatory 14 (Arruda):**

- ○ **Question:** Explain the "head to head" takedown technique.
- ○ **Objection:** Confusing, speculative, and multi-part.

- **Impropriety:** Defendant's testimony should be clear to them. This refusal to clarify obstructs discovery of critical facts related to the use of force. In part under Rule 33 a multi part question is permitted when it is relevant to the same subject.

**Interrogatory 16 (Arruda)**

- **Question**: Clarified the meaning of Defendant's statement, "I knew we were being videotaped and how that would look," and asked whether Cranston Police Department protocol addresses officer behavior when being recorded.
- **Objection**: Confusing, vague, lacks context, assumes facts in dispute.
- **Impropriety**:
  - The question directly ties to Defendant's own testimony, making the objections of vagueness or lack of context baseless.
  - Relevance is clear under Monell and Graham frameworks.

**Interrogatory 21 (Rocchio)**

**Question:** Explain the rationale for any use of force you applied during the incident.

**Objection:** Vague, overly broad, and assumes facts not in evidence. Provides a general statement about safety concerns.

**Impropriety:**

The request is specific and central to the excessive force claim. The objection lacks merit, and the general statement about safety concerns fails to provide a detailed explanation of the rationale for the use of force.

**4. Improper Use of Multi-Part Objections**

Defendants object to interrogatories as "multi-part" when the subparts are logically related to the primary question. **Rule 33(a)(1)** permits related subparts to be counted as a single interrogatory.

- *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 443 (C.D. Cal. 1998): Subparts related to the primary question count as one interrogatory.
- *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997): Subparts are not separate interrogatories if they are logically related.

**Examples:**

**Interrogatory 16 (Arruda):**

- **Question:** Clarify the meaning of Defendant's statement regarding being videotaped and whether departmental policy addresses officer behavior when recorded.
- **Objection:** Vague, lacks context, assumes facts in dispute.
- **Impropriety:** The subparts are logically related to the same issue of officer conduct and transparency.

**Interrogatory 20 (Arruda)**

- **Question:** Would use of force have differed if the subject was female? Provide related policies or training.
- **Objection:** Relevance, proportionality, vagueness, speculation, and multi-part nature.
- **Impropriety:** The question addresses equal protection concerns under civil rights law, making it directly relevant to assessing potential bias. While hypothetical, the request is

necessary to evaluate adherence to training and policies, which is both relevant and proportional under *Monell*.

**5. Pattern Demonstrating Bad Faith Conduct**

The repeated use of boilerplate objections, refusal to clarify testimony, improper invocation of privileges, and objections to multi-part questions demonstrate a clear pattern of bad faith. This conduct seemingly intentionally frustrates, disrupts, and delays the discovery process and violates Rule 37. Courts have held that such behavior warrants intervention. See *Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *2 (S.D.N.Y. May 23, 2016)* (rejecting generalized objections as insufficient).

The defendants' pattern continues with the handling of the request for admissions demonstrates a clear pattern of bad faith conduct aimed at obstructing the discovery process. Their responses frequently consisted of evasive denials, incomplete answers, and improper objections that defy the principles of transparency required by the Federal Rules of Civil Procedure. For instance, several admissions were met with blanket denials despite overwhelming evidence provided during discovery, including documented emails and official records supporting the truth of the matters asserted.

Moreover, the defendants routinely objected on vague and irrelevant grounds, asserting claims of ambiguity where none reasonably existed. This tactic appeared designed to avoid admitting facts that are central to the claims and defenses in the case. In several instances, the defendants provided responses that were intentionally misleading, offering partial admissions coupled with disclaimers intended to minimize their culpability. This approach has prolonged the litigation

unnecessarily, increased legal expenses, and frustrated efforts to establish an accurate factual record.

Additionally, the defendants' refusal to admit facts that should have been undisputed reflects an attempt to burden the plaintiffs with unnecessary motions and further discovery efforts. Their conduct has not only delayed the proceedings but also violated the duty of good faith and fair dealing expected during the discovery process. The consistent pattern of obstruction, coupled with the refusal to engage meaningfully with the requests for admissions, highlights a deliberate effort to hinder the resolution of this case on its merits. Please see the exhibits provided for examples.

The Plaintiffs have repeatedly requested insurance policies from the Defendants, though it should have been given to Plaintiffs without being requested, first through the initial Request for Production of Documents and subsequently via a good faith letter sent on September 16, 2024, the request examples are below. Even during the Discovery Conference with Judge Almond, the Judge specifically questioned Attorney Scott-Benevides regarding the lack of provided documentation and referenced the Cranston Police Department Collective Bargaining Agreement, which may contain relevant information. Furthermore, if the City of Cranston is self-insured, there should still be documentation explaining the structure of its self-insurance and how it provides coverage for its employees. Additionally, the Defendants may have other applicable liability insurance policies, such as auto insurance, yet these too have been denied or excluded from disclosure. It is unreasonable to suggest that the Defendants operate without any form of liability insurance.

As pro se litigants, we are increasingly frustrated by the unprofessional handling of this lawsuit by opposing counsel. Below are specific responses provided by the Defendants:

**Request for Production No. 5:**

**Provide copies of all insurance policies mentioned in your answer to Interrogatory No. 5.**

*(Interrogatory No. 5: Identify all insurance policies that might cover the claims in this lawsuit, including the insurer's name, policy number, and coverage details.)*

**Response:** As provided in Defendants Arruda's and Rocchio's response to Plaintiff's Interrogatories, the City of Cranston is self-insured.

**Request for Production No. 15:**

**Provide any and all liability insurance policies held by John Rocchio and Edward Arruda.**

**Response:** None.

**Request for Production No. 16:**

**Provide any and all insurance policies held by the City of Cranston and the Cranston Police Department for their employees.**

**Response:** None. The City of Cranston is self-insured.

After the Discovery Conference with Judge Almond, the Plaintiffs were provided with a single page from the Cranston Police Department Collective Bargaining Agreement containing a section titled "Legal Assistance and Indemnification." However, this document lacks critical details such as the date it was ratified, whether it is the most current agreement, or any clear identifiers other than the Defendants' label asserting it pertains to the Cranston Police Department.

We, as Plaintiffs, find this response to be insufficient and unacceptable. It fails to meet reasonable discovery standards or provide the transparency necessary for proper case evaluation.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. Order Defendants to provide full and complete responses to all Discovery.
2. Reject Defendants' objections regarding vagueness, multi-part questions, and relevance.
3. Grant any further relief the Court deems just and proper.

**CERTIFICATION OF GOOD FAITH EFFORT**

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, we hereby certify that we made a good faith efforts to resolve this discovery dispute. On September 16, 2024, we sent a good faith letter to Julia Scott-Benevides. Esq., identifying the deficiencies in their discovery responses and requested a response by October 1, 2024. We still did not receive adequate responses in the documents sent. We continue to get push back such as repeated boilerplate objections, refusal to clarify testimony, improper invocation of privileges, and objections to multi-part questions demonstrate a clear pattern of bad faith.

In keeping with our good faith efforts we sent another "Good Faith Letter" on December 13, 2024, requesting the original Exhibit A (Mello) PDF due to several identified irregularities that require clarification. The response received on December 14 was dismissive and inadequately failed to address the majority of our questions and concerns raised about the documents/PDF. We followed up, expressing our concerns about the lack of a comprehensive reply. On December 15, we received a slightly more detailed response; however, it still did not fully address our inquiries.

Instead, we were informed that the defendant's counsel is unclear about which questions remain unanswered. For example, we specifically asked: "We know that the PDF document was created on a Konica Minolta bizhub C458 printer/scanner on November 18, 2024, but who actually scanned and created the PDF?" We also requested: "Please provide the original document from which the PDF was scanned or created, in its entirety."  Attorney Scott-Benevides stated in summary that in order to get what we asked for in the good faith letter we must put in a motion to compel as we did not state we wanted the originals in our request for production of documents. In good faith we as Plaintiffs were told to discuss concerns with the Defendants lawyers and now they are telling us to compel the courts as they won't answer. How is this working together? This document being tampered with should raise to a certain level of concern especially if it was supplied from the police department this way. Providing things continue this manner, it would be futile for us to send additional good faith letters requesting to address the questions and concerns we have.

We are simply attempting to address a discovery document, certified as true by the defendant's counsel, that presents significant integrity issues, both visually and within its metadata and OCR analysis, of which we've conducted forensic analysis on several forensic platforms. for example but not limited to, X1 Search part of the X1 Discovery platform and Autopsy Forensic tool kit. As pro se litigants, we are observing a litany of instances of misconduct at the law enforcement level, which appears to continue with at, minimum the continuous bad faith practices that arise at the onset with the attorney's appearance during the PCR with the city solicitor and prosecutor who was at that time a defendant in another 1983 claim. These actions and other noted alarming concerns all which if left unaddressed will continue to hinder our ability to properly proceed in a fair and balanced manner. These actions are holding up this litigation and discovery process. To

quote Einstein, "Insanity is doing the same thing over and over again and expecting different results." and as Plaintiffs we refuse to be insane and request the court to compel Discovery.

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware
Pro Se Plaintiffs
57 Rolfe Square, Unit 10113
Cranston, RI 02910
401.426.0778

**Exhibits:**

1. Defendants' Discovery Responses (A-D Interrogatories, E-H Admits, I-J Production of Documents)
2. Good Faith Letter(s), and emails (K-M)
3. Documents with integrity issues. (N-O)

**CERTIFICATION**

I certify that a true and accurate copy of the within was emailed and mailed, postage prepaid, to on the 19th day of December 2024:

Julia K. Scott-Benevides
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
julia@desistolaw.com

/s/ Joshua Mello
/s/ Rachel Ware