# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSHUA MELLO and RACHEL WARE,
*Plaintiffs,*

vs.

JOHN ROCCHIO and
EDWARD ARRUDA
*Defendants*

C.A. No. 1:23-cv-00480-JJM-PAS;
1:23-cv-000479-JJM-PAS

## DEFENDANT, EDWARD ARRUDA'S RESPONSE TO PLAINTIFFS' INTERROGATORIES

1.  Identify all persons who know about the facts in Plaintiff's Complaint, including their names, addresses, and what they know.

**RESPONSE**: **Objection. Defendant objects based on relevance and privacy to the introduction of personal identifying factors in the form of personal addresses. Notwithstanding and without waiving the objection, the below individuals know about the facts in Plaintiff's Complaint:**

**Edward Arruda; 5 Garfield Avenue, Cranston, RI 02920; After Vice Principal Derek Gustafson texted me to request that I respond to Western Middle School on October 21, 2021 and I was one of the officers who assisted taking Plaintiff, Joshua Mello into custody. I also spoke with Plaintiff's daughter's mother, Tonya Morena on the phone and received permission from Ms. Morena for Plaintiff to pick up his daughter from school before dismissal.**

**John Rocchio; 5 Garfield Avenue, Cranston, RI 02920; SRO Rocchio was present at Western Hills Middle School on October 21, 2021, and took Plaintiff, Joshua Mello into custody.**

**Christina Carlson; 400 Phenix Avenue, Cranston, RI 02920; Ms. Carlson let Plaintiff Mello into Western Hills Middle School, saw on ASPEN that there was a legal document related to Plaintiff's daughter, informed Plaintiff Mello of the document, and witnessed Plaintiff Mello's behavior leading to his arrest. Ms. Carlson also provided a Witness Statement as a result of the incident.**

**Derek Gustafson; 400 Phenix Avenue, Cranston, RI 02920; Vice Principal Gustafson witnessed the situation between Principal Vesey and Plaintiff Mello. When it became volatile, Vice Principal Gustafson texted SRO Rocchio and I to respond quickly to Western Hills Middle School before he called me. Vice Principal Gustafson also witnessed the continued situation between Plaintiff, Principal Vesey,**

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

SRO Rocchio, and I. Vice Principal Gustafson also provided a Witness Statement as a result of this incident.

Bernadette Raposa; 400 Phenix Avenue, Cranston, RI 02920; Ms. Raposa witnessed Plaintiff Mello yelling at Vice Principal Gustafson. Ms. Raposa also witnessed a police officer asking Plaintiff Mello to calm down. Ms. Raposa also provided a Witness Statement as a result of the incident.

Timothy Vesey; 400 Phenix Avenue, Cranston, RI 02920; On October 21, 2021, Principal Vesey was made aware that Plaintiff Mello was causing an issue at the front counter of the school related to picking up his daughter. Principal Vesey was made aware that the school had a court order that stated if either parent wanted to pick up Plaintiff Mello's daughter during the school day, either parent needed permission from the other parent. Principal Vesey was the individual who spoke to Plaintiff and tried to explain the situation and put the school on lock down when the situation did not de-escalate. Principal Vesey also called Plaintiff's daughter's mother where she eventually gave permission to allow Plaintiff Mello take Plaintiff Mello's daughter from school. Principal Vesey also witnessed Plaintiff's arrest. Principal Vesey also provided a Witness Statement as a result of the incident.

Robert J. Willette; 400 Phenix Avenue, Cranston, RI 02920; Mr. Willette observed the altercation between Plaintiff Mello and Principal Vesey. Mr. Willette also provided a Witness Statement as a result of the incident.

Denise Ann Williams; 400 Phenix Avenue, Cranston, RI 02920; Ms. Williams witnessed the situation between Principal Vesey and Plaintiff Mello. Ms. Williams also witnessed Plaintiff Mello's arrest. In addition, Ms. Williams provided a Witness Statement as a result of the incident.

John Worthington; 400 Phenix Avenue, Cranston, RI 02920; Mr. Worthington witnessed the situation between Plaintiff Mello and Principal Vesey. In addition, Mr. Worthington provided a Witness Statement as a result of the incident.

Sergeant Jeffrey Chapman; 5 Garfield Avenue, Cranston, RI 02920; Sgt. Chapman arrived on scene on Western Hills Middle School on October 21, 2021.

Officer Christine Dempsey; 5 Garfield Avenue, Cranston, RI 02920; Officer Demsey arrived at Western Hills Middle School after Plaintiff Mello was in custody. She brought Plaintiff Mello to Roger Williams Medical Center and then to Cranston Police Department on October 21, 2021.

School Resource Officer Matthew Davis; 5 Garfield Avenue, Cranston, RI 02920; SRO Davis arrived on scene at Western Hills Middle School after Plaintiff Mello was in custody.

In addition, please see Defendants' Response to Plaintiff's Request for Production of Documents, Response No. 1, Bates numbered documents, Defendants- RFP-000001 through 000010, Defendants-RFP-000036 through 000045.

2. Describe in detail your version of events described in Plaintiff's Complaint.

**RESPONSE:** On 10/21/21 at approximately 8:28 A.M., I received a text message from Derek Gustafson, Dean of Students at WHMS, asking me if I could head over because of a parent issue. I informed him that SRO Rocchio was working. Derek responded that he just spoke to him. I contacted SRO Rocchio and informed him that I would meet him there. Upon my arrival at WHMS, I walked into the main hallway and observed a male subject who appeared to be upset. I asked him what was going on. He replied, "nothing at all, these assholes won't give me my kid." I asked him what his name was, he replied, "It's Josh, that's all you're getting." At that point, Derek and WHMS Principal, Tim Vesey walked up to us in the hallway. Mr. Vesey explained to me that the parent was there to take his daughter out of school because she spilled something on her pants. The issue was that there was a Family Court Order in place. Josh interrupted him saying "there's no court order, it's f***ing bull shit, it's false information."

Mr. Vesey brought a copy of the Family Court Order and presented it to Josh. Josh took the paperwork out of Mr. Vesey's hand and started to rip up the document before I grabbed it away from him. I advised Josh that he was being loud and tumultuous, and was close to being placed under arrest due to the fact that the rest of the school could hear him. He told me he didn't care because he wants his daughter now. It was approximately 8:36 A.M. when Mr. Vesey put the school on Lockdown/Shelter in Place due to Josh being loud and belligerent.

I picked up the ripped paperwork and advised Josh to relaz and we'd work through this together once we get all the information. Josh told me that he didn't have to do anything I said. Josh stated he was getting "his better half," who was sitting in the car, to prove that the school didn't know what they were talking about. Josh walked through the doors and yelled for a female who was sitting in the vehicle, parked in the fire lane. The female walked towards the school, with her cell phone out video taping me. I acknowledged her recording me and explained to her how Josh was ascting out of line. The female was later identified to me as Plaintiff Rachel Ware, Josh's girlfriend.

The office staff had contacted the mother of the student on the phone. I spoke to Ms. Tonya Morena and asked if it was ok for Josh to take their daughter out of school to change her clothes. She stated that she would allow it to keep the peace in the school. It was at this time I learned that "Josh" was Joshua Mello, who was arrested for disorderly conduct at Peter's Elementary in 2019, for being belligerent to the school staff.

I walked back into the hallway and observed SRO Rocchio had arrived. SRO Rocchio was attempting to calm Josh Mello down with negative results. I mentioned the incident at Peter's School to him. Josh and Rachel denied the incident to me. I advised him that Tonya was allowing him to take their daughter home to clean up. Josh yelled, "I don't need

3

permission to take my kid out of school." I tried several times to explain that he was allowed to take his daughter but didn't like the fact that the decision wasn't his. It was at that point we realized that Josh was not going to calm down or listen to us, even though his child was going to be signed out to them.

Rachel and Joshua were near the front entrance door when they demanded to stand 6 feet away from them. Rocchio advised her that the didn't have to, but they could leave on their own. Officer Rocchio attempted to grab Joshua's wrist to take him into custody. Joshua began to resist with Rachel in the middle of us. I attempted to grab Joshua's arm but was not able due to Rachel Ware being in the way. I was able to get my arms around the back of Joshua's head, forcing him out of the main building, away from kids and staff. Myself and SRO Rocchio was able to wrestle him out of the main hallway and into an area between the two doors, while resisting the entire time, tucking his arms under his body. SRO Rocchio was able to get one arm free placing Joshua into handcuffs. As I called for a beat car and a supervisor, Joshua was attempting to spin away from SRO Rocchio while on the floor. I walked over and assisted getting Joshua back to his feet.

While escorting Joshua to the front of the building, he continued to verbally assault SRO Rocchio. Once we were in front of my cruiser, Joshua was pushing his weight back at Rocchio, at which time SRO Rocchio pushed Joshua onto the hood of my cruiser. At one point SRO Rocchio pulled him away from the cruiser and sat him down as Officer Dempsey was pulling up. Joshua was placed into the back of Officer Dempsey's cruiser. Joshua had a rug burn on the side of his forehead which CFD treated, ultimately transporting him to Roger Williams where Joshua refused treatment.

   In addition, please see Defendants' response to Plaintiffs' Request for Production of Documents, Response No. 1; Bates numbered documents, Defendants- RFP- 000006 through 000007.

   3. List all communications between you and any other person about the allegations in Plaintiff's Complaint.

**RESPONSE**: **Objection. Defendant objects based on the Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after finding of innocence, unfounded, not sustained, and/or exonerated. Defendant objects to the extent that the information Plaintiff seeks are privileged pursuant to attorney client privilege and/or work product doctrine. Defendant objects to the extent that this interrogatory seeks information Defendant objects to the extent that this request is vague and lacks specificity as to the type of "communications" is seeks. Notwithstanding and without waiving the objections, I recall having conversations between my superiors at Cranston Police Department and other involved Cranston Police Officers related to Plaintiff Mello's arrest, his criminal trial, the complaint that Plaintiffs made against Officer Rocchio and I at the Cranston Police Department, as well as the**

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

**aftermath of Plaintiff's criminal trial. However, I cannot remember the specific details of each communication and/or when each communication occurred.**

4.  List and describe all documents related to the allegations in Plaintiff's Complaint.

**RESPONSE: See Defendants' response to Plaintiff's Request for Production of Documents, Response No. 1, Bates numbered documents, Defendants-RFP-000001 through 000137.**

5.  Identify all insurance policies that might cover the claims in this lawsuit, including the insurer's name, policy number, and coverage details.

**RESPONSE: None. The City of Cranston is self-insured.**

6.  Describe your training and experience, including any training in the use of force, as mandated by Rhode Island General Laws § 42-28.2-8 (Law Enforcement Officers' Bill of Rights).

**RESPONSE: Objection. Defendant objects to the extent that this request is confusing as to "those required under Rhode Island General Laws § 42- 28.2-8." Notwithstanding and without waiving the objection, see Bates numbered documents, Response No. 27, Bates numbered Defendants-RFP- 000138 through 000141 and Defendants-RFP-000147 through 000234.**

7.  Describe the policies and procedures in effect that the time of the incident regarding the use of force, including those required under § 42-28.6-3 (Police Officer Standards and Training).

**RESPONSE: Objection. Defendant objects to the extent that this request is confusing as to "those required under Rhode Island General Laws § 42- 28.2-8." Notwithstanding and without waiving the objection, see Bates numbered documents, Response No. 27, Bates numbered Defendants-RFP- 000138 through 000141 and Defendants-RFP-000237 through 000245.**

8.  List any complaints or disciplinary actions against you related to the use of force as required to be documented under Rhode Island General Laws § 42-28.6-3 (Police Officer Standards and Training).

**RESPONSE: Objection. Defendant objects based on the Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after finding of innocence, unfounded, not sustained, and/or exonerated. Notwithstanding and without waiving the objection, there have not been any complaints made against me that have been sustained. As such, I have not had any disciplinary action taken against me related to the use of force.**

9.  Describe any communications that you had with other officers or supervisors regarding the incident before, during, and after it occurred.

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

**RESPONSE**: Objection. Defendant objects based on the Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after finding of innocence, unfounded, not sustained, and/or exonerated. Defendant objects to the extent that this interrogatory is vague and confusing as it includes no limitation as to time after the incident. Notwithstanding and without waiving the objection, I communicated with Officer Rocchio before the incident, during the incident, and after it occurred. I also communicated with my supervisors and the other Cranston Police Officers involved in Plaintiff's arrest after his arrest.

10. Describe any medical treatment you received related to the incident.

**RESPONSE**: Objection. Defendant objects based on relevance and privacy according to the personal privileged and confidential healthcare records of the Defendant. Notwithstanding and without waiving the objection, none.

_____
Edward Arruda

**STATE OF RHODE ISLAND**
**COUNTY OF** *Providence*

*Subscribed and sworn to before me on this* *19* *day of* *August* *of 2024*



_____
NOTARY PUBLIC
My Commission Expires *11/23/27*

Defendants

6

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

Edward Arruda and John Rocchio
By their Attorneys,
As to the objections,

*/s/ Julia K. Scott- Benevides*
Julia K. Scott- Benevides (#10408)
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
marc@desistolaw.com
julia@desistolaw.com

<u>CERTIFICATION</u>

I hereby certify that the within document has been electronically filed with the Court on the 19th day of August, 2024, and is available for viewing and downloading from the ECF system.

I further certify that a true and accurate copy of the within was emailed and mailed, postage prepaid, to:

Joshua Mello                          Rachel Ware
57 Rolfe Square, Unit 10113           57 Rolfe Square, Unit 10113
Cranston, RI 02910                    Cranston, RI 02910
kskustomsrideons@gmail.com            kskustomsrideons@gmail.com

*/s/ Julia K. Scott- Benevides*

7

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSHUA MELLO and RACHEL WARE,<br>*Plaintiffs,*<br><br>vs.<br><br>DEREK GUSTAFSON, TIMOTHY VESEY,<br>STEVEN CATALANO, JOHN ROCCHIO and<br>EDWARD ARRUDA<br>*Defendants* | C.A. No. 1:23-cv-00480-JJM-PAS;<br>1:23-cv-00479-JJM-PAS |

## DEFENDANT, EDWARD ARRUDA'S RESPONSE TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

***These interrogatories exceed the limit of interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure. Moreover, the subparts contained in Interrogatory Nos. 14, 15, 20, 21, 22, 24, and 25 exceed the twenty-five (25) interrogatories allowed by Rule 33. Since Plaintiffs have not received permission from the Court as required under Rule 33 to propound additional interrogatories, Defendant has provided objections to Interrogatory Nos. 22, 23, 24, and 25, to preserve his objections, but did not provide responses to Interrogatory Nos. 22, 23, 24, and 25 since Interrogatories Nos. 22, 23, 24, and 25 go above the twenty-five (25) interrogatories permitted by the Federal Rules of Civil Procedure.***

11.     Please provide a list and description of any disciplinary actions against Cranston Police Department officers involved in the October 21, 2021, incident, as well as any subsequent investigations involving Plaintiffs. This request includes closed and prior investigations, as the information is relevant to potential patterns of behavior or accountability practices within the department as permitted by *Monell v. Dept. of Soc. Servs.* for establishing liability through policies or customs of misconduct.

**RESPONSE: Objection. Defendant objects based on proportionality and relevance. Defendant objects to the confusing nature of this interrogatory. Defendant objects based on the form of this interrogatory. Notwithstanding and without waiving the objections, I was not disciplined as a result of the October 21, 2021, or any subsequent investigations involving the Plaintiff. I am unaware that any other Cranston Police Department officers were disciplined as a result of the October 21, 2021 incident, or any subsequent investigations involving Plaintiffs.**

12.     Identify and internal or external investigations, audits, or reviews conducted by the Cranston Police Department or any other governmental entity regarding the events of October 21, 2021, or the allegations in the Plaintiffs' complaint. Such information is critical under *Graham v. Connor* to access departmental standards and scope of any review conducted, as these details may impact determinations of liability and damages.

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

**RESPONSE**: **Objection. Defendant objects based on proportionality and relevance. Defendant objects to the confusing nature of this interrogatory. Defendant objects based on the form of this interrogatory. Notwithstanding and without waiving the objections, I am only aware of the investigation related to Plaintiffs' complaints made to the Cranston Police Department's Office of Professional Standards, C.A. No. 2023-12-IA, which was attached to Defendants' Response to Plaintiffs' Request for Production of Documents, Bates numbered documents, Defendants-RFP-000075 through 000137. Otherwise, I am not aware of any other internal or external investigations, audits, or reviews conducted by the Cranston Police Department or any other governmental entity regarding the events of October 21, 2021.**

13.    State whether officer Edward Arruda knows any of the following individuals: Leanne D'Allesandro Ciccarelli, Damian Ciccarelli, Joe Ciccarelli, Angelo Ciccarelli, Janet Antonelli, Tonya Morena, or Crystal Gervais. If so, please describe the nature, context, and duration of these relationships. This request seeks information to assess potential biases or conflicts of interest, which may be pertinent to civil rights claims under *Monell* regarding accountability within the department.

**RESPONSE**: **Objection. Defendant objects based on proportionality and relevance. Defendant objects to the vague, ambiguous, and confusing nature of this interrogatory, specifically, the terms "know," "nature," "context," and "relationships" are vague, ambiguous, and confusing. Defendant objects to the term "relationships" as it assumes facts that may be in dispute.  Defendant objects to the form of this interrogatory. Notwithstanding and without waiving the objections, I do not know and/or have had so-called "relationships" with Damian Ciccarelli, Joe Ciccarelli, Angelo Ciccarelli, or Crystal Gervais. Moreover, I am not social friends, but I have encountered the following individuals:**

**Leanne D'Allesandro Ciccarelli: Ms. D'Allesandro Ciccarelli is employed at my dentist's office, Ocean State Dental Group as a receptionist. I see Ms. D'Allesandro whenever I go get my teeth cleaned or need other dental work. I am unsure of how long she has been employed at Ocean State Dental Group, but I have been going to my dentist's office for around twenty (20) years. Ms. Allesandro Ciccarelli and I are Facebook friends, but we have no communication outside of her scheduling my dental appointments and I see her when I attend my dental appointments.**

**Janet Antonelli: Ms. Antonelli was the Principal at George Peters Elementary School who started in the 2019-2020 school year while I was assigned to that school as a School Resource Officer. Ms. Antonelli and I worked together from the 2019 - 2020 school year until I was assigned to Cranston West High School resource officer in 2020.  I have not spoken to Ms. Antonelli since I was assigned to Cranston West High School.**

2

**Tonya Morena: Ms. Morena is Plaintiff Mello's daughter's mother. I spoke with Ms. Morena on October 21, 2021 during the incident with Plaintiff Mello and Plaintiff Ware.**

14.     Please describe in detail the meaning of "I grabbed Mr. Mello, I put him head to head and I slowly descended to the floor, I took him down," specifically clarifying what "head to head" refers to, the technique used, and how you executed a "slow descent" while restraining Mr. Mello. Additionally, describe any standard Cranston Police Department procedures or training techniques followed during this action. This clarification is essential under *Graham v. Connor* to determine if reasonable force standards were met.

**RESPONSE: Objection. Defendant objects to the confusing nature of this interrogatory. Defendant objects to the multi-part nature of this interrogatory. Defendant objects to the form of this interrogatory as it seeks information that calls for speculation. Defendant objects to this interrogatory as it seeks information regarding facts that may be in dispute. Defendant objects based on the vague and confusing nature of this interrogatory as it does not provide any context or information regarding the quote, "I grabbed Mr. Mello, I put him head to head and I slowly descended to the floor. I took him down." Notwithstanding and without waiving the objection, since the interrogatory fails to provide any context or information regarding the statement, "I grabbed Mr. Mello, I put him head to head and I slowly descended to the floor, I took him down," I am unable to describe and/or clarify any part of the statement. Also, without context or information regarding the statement, "I grabbed Mr. Mello, I put him head to head and I slowly descended to the floor, I took him down," I am unable to describe any Cranston Police Department procedures or training following during this action.**

15.     During the November 15, 2022 trial, you testified that you initially took Mr. Mello to the ground "head to head" but later ended up near his feet. Please provide a detailed explanation of how this transition occurred. The information is pertinent to assessing use of force techniques in compliance with *Graham v. Connor* standards on reasonableness.

**RESPONSE: Objection. Defendant objects to the confusing nature of this interrogatory since there is no context or further information regarding the phrase "you testified that you initially took Mr. Mello to the ground 'head to head' but later ended up near his feet." Defendant objects to the extent that that this interrogatory seeks information regarding facts that may be in dispute. Defendant objects to the form of this interrogatory as it calls for speculation. Notwithstanding and without waiving the objections, since there is no information or context regarding the phrase "you initially took Mr. Mello to the ground 'head to head' but later ended up near his feet," I am unable to provide a detailed explanation of how any transition occurred.**

16.     In your testimony on November 15, 2022, you stated, "Mr. Mello threw out 'I can't breathe,' so I got off him. Not that I was on his back, but I was on his shoulders. I wasn't I knew we were being videotaped and how it would look, so I got off of him." Please explain the meaning of "I knew we were being videotaped and how that would look," and specify whether it is Cranston Police Department protocol to modify officer behavior based on awareness of being

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

recorded. This inquiry addresses developmental practices related to transparency and public accountability under *Monell*.

**RESPONSE: Objection. Defendant objects based on relevance and proportionality. Defendant objects to the confusing nature of this interrogatory since there is no context or further information regarding the statement, "Mr. Mello threw out 'I can't breathe,' so I got off him. Not that I was on his back, but I was on his shoulders. I wasn't I knew we were being videotaped and how that would look." Defendant objects to the extent that this interrogatory may assume facts that are in dispute. Defendant objects to the form of this interrogatory as it calls for speculation. Not withstanding and without waiving the objection, since this interrogatory fails to provide any information or context regarding the statement, "Mr. Mello threw out 'I can't breathe,' so I got off him. Not that I was on his back, but I was on his shoulders. I wasn't I knew we were being videotaped and how that would look," I am unable to explain the meaning of "'I knew we were being videotaped and how that would look." However, I have no knowledge of a Cranston Police Department "protocol to modify officer behavior based on awareness of being recorded."**

17.    During the trial, Mr. Catalano asked, "You weren't on his neck, were you?" and subsequently followed with, "So, was this some type of George Floyd situation?" Please explain why you believe this analogy was made regarding your actions, as this may clarify public perceptions of Cranston Police Department's use-of-force protocols.

**RESPONSE: Objection. Defendant objects based on relevance and proportionality. Defendant objects to the vague and confusing nature of this interrogatory. Defendant objects to the form of this interrogatory as it calls for speculation. Defendant objects to the extent that this interrogatory seeks information related to facts that may be in dispute. Based on the wholly speculative nature of this interrogatory, I cannot provide a complete response regarding Mr. Catalano's reasoning for making any such analogy referred to in this interrogatory.**

18.    In a statement to Captain Parker from the Office of Professional Standards, you indicated that another person handled knives found on Mr. Mello. Please confirm whether this remains your understanding, and if you recollection has changed, explain any involvement you had with these knives. This question relates to assessing factual consistency in officer statements, critical to departmental accountability under *Monell*.

**RESPONSE: Objection. Defendant objects based on relevance and proportionality. Defendant objects to the extent that this interrogatory is vague and confusing. Defendant objects to the extent that this interrogatory seeks information related to facts that may be in dispute. Defendant objects to the form of this request. Defendant objects to the extent that this interrogatory seeks information that calls for speculation. Defendant objects to the multi-part nature of this interrogatory. Defendant objects to the extent that this interrogatory assumes facts that may be in dispute. Notwithstanding and without waiving the objections, without specific information related to the "statement to Captain Parker from Officer of Professional Standards," I am unable to determine specific "statement"**

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

**that the interrogatory is referring to, and I am further unable to provide a complete
response to this interrogatory. However, I did not have any involvement with any knives
that were related to the incident that took place on October 21, 2021.**

19.     Please confirm whether you reviewed the surveillance video from Western Hills School
on the morning of October 21, 2021. If so, please describe your purpose for reviewing the video
and any observations made. Understanding the information available to officers post-incident is
relevant to evaluating the completeness of internal reviews in compliance with federal civil
rights standards.

**RESPONSE: Objection. Defendant objects based on relevance and proportionality.
Defendant objects to the extent that this interrogatory is vague and confusing. Defendant
objects to the form of this interrogatory.  Notwithstanding and without waiving the
objections, I reviewed the surveillance video from Western Hills Middle School that was
taken on October 21, 2021. I remember reviewing the video with a Western Hills Middle
School Administrator, but I cannot remember what observations are made.**

20.     If Mr. Mello's actions had mirrored those of a female counterpart during the same
incident, would the physical engagement, include any use of force, have remained consistent.
Provide any related Cranston Police Department policies or training guidelines regarding
engagement based on gender. This question pertains to potential biases in the application of force
and relates to equal protection concerns under civil rights law.

**RESPONSE: Objection. Defendant objects based on relevancy and proportionality.
Defendant objects based on the confusing nature of this interrogatory. Defendant objects to
the multi-part nature of this interrogatory. Defendant objects to the extent that this
interrogatory assumes facts that may be in dispute. Defendant objects to the form of this
interrogatory as it seeks information that calls for speculation. Notwithstanding and
without waiving the objection, due to the highly speculative nature of this interrogatory, I
cannot reasonably provide a response.**

21.     After receiving the child's mother's permission for release, under what legal authority did
the Cranston Police Department prevent Mr. Mello from accessing his child? Please identify
applicable policies and protocols that guide decisions on restricting a parent's access to a child
during a situation, as these relate to accessing departmental decision-making and adherence to
procedural justice standards under *Monell*.

**RESPONSE: Objection. Defendant objects based on relevancy and proportionality.
Defendant objects based on the confusing nature of this interrogatory. Defendant objects to
the multi-part nature of this interrogatory. Defendant objects to the form of this
interrogatory as it seeks information that calls for speculation. Defendant  objects to the
extent that this interrogatory calls for a legal conclusion that is outside the scope of
discovery. Defendant objects to the extent that this interrogatory assumes facts that may be
in dispute. Notwithstanding and without waiving the objection, to my knowledge, since
Plaintiff Mello's belligerent and irate behavior did not de-escalate after he was told that his
daughter's mother was going to "allow him" to take his daughter, Principal Vesey told**

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

Plaintiff that he could take his daughter once he calmed down for the safety of Plaintiff Mello's daughter. Officer Rocchio and myself repeated that several times to Plaintiff.

22.    In your interview with Captain Parker, you stated that you relied on a school administrator's representation that a court document was valid without reviewing it yourself. Please explain why Mr. Mello's on-site challenge to this document did not prompt further verification. Additionally, provide any CPD policies or training on assessing the validity of legal documents in situations where an individual disputes them, in line with protocols under *Monell* regarding accountability and adherence to proper procedural review.

**RESPONSE: Objection. Defendant objects based on relevancy and proportionality. Defendant objects based on the form of this interrogatory seeks information that calls for speculation. Defendant objects to the extent that this interrogatory seeks information that may be in dispute. Defendant objects to the confusing nature of this interrogatory as this interrogatory seeks information regarding a statement that I made to Captain Parker without any context or further information regarding that statement.**

23.    Identify who with in the Cranston Police Department is responsible for classifying reports as either 'first report' or 'supplemental report,' and explain any policies or procedures that govern this classification. If no policy exists, please state that clearly.

**RESPONSE: Objection. Defendant objects based on relevance and proportionality. Defendant objects to the vague and confusing nature of this interrogatory. Defendant objects to the extent that based on the multi-part nature of Interrogatory Nos. 14, 16, and 20, this interrogatory exceeds the number of allowed interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure.**

24.    Explain why Officer Arruda, who was the first responding officer on October 21, 2021, labeled his report as a 'supplemental report,' while Officer Rocchio, who arrived later, labeled his report as the 'first report.' Include in your responses any instructions or directives provided to either officer regarding the classification of their reports.

**RESPONSE: Objection. Defendant objects based on relevance and proportionality. Defendant objects to the vague and confusing nature of this interrogatory. Defendant objects to the multi-part nature of this interrogatory. Defendant objects to the extent that based on the multi-part nature of Interrogatory Nos. 14, 16, and 20, this interrogatory exceeds the number of allowed interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure.**

25.    Explain in detail the rationale behind labeling Officer Rocchio's report as the 'Officers First Report' and Officer Arruda's report as the 'Officers Supplemental Report,' despite Officer Arruda's position as the first responder to the scene and his prolonged presence at the incident on October 21, 2021. Describe any Cranston Police protocols or procedures that support this labeling decision.

6

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

**RESPONSE:** Objection. Defendant objects based on the Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after finding of innocence, unfounded, not sustained, and/or exonerated. Defendant objects to the extent that this interrogatory is vague and confusing as it includes no limitation as to time after the incident. Notwithstanding and without waiving the objection, I communicated with Officer Rocchio before the incident, during the incident, and after it occurred. I also communicated with my supervisors and the other Cranston Police Officers involved in Plaintiff's arrest after his arrest.

10. Describe any medical treatment you received related to the incident.

**RESPONSE:** Objection. Defendant objects based on relevance and privacy according to the personal privileged and confidential healthcare records of the Defendant. Notwithstanding and without waiving the objection, none.

Edward Arruda

**STATE OF RHODE ISLAND**
**COUNTY OF** _Providence_

*Subscribed and sworn to before me on this* 27 *day of* November *of 20*24

NOTARY PUBLIC
My Commission Expires

MARK R. CAMPOPIANO
NOTARY PUBLIC
ID - 48155
MY COMMISSION EXPIRES
08/19/2028

Defendants

6

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

<u>CERTIFICATION</u>

I further certify that a true and accurate copy of the within was emailed and mailed, postage prepaid on the 28th day of November, 2024 to:

Joshua Mello                                Rachel Ware
57 Rolfe Square, Unit 10113          57 Rolfe Square, Unit 10113
Cranston, RI 02910                       Cranston, RI 02910
kskustomsrideons@gmail.com      kskustomsrideons@gmail.com


*/s/ Julia K. Scott- Benevides*

9

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSHUA MELLO and RACHEL WARE,
          *Plaintiffs,*

          vs.                                          C.A. No. 1:23-cv-00480-JJM-PAS;
                                                              1:23-cv-000479-JJM-PAS
JOHN ROCCHIO and
EDWARD ARRUDA
          *Defendants*

## DEFENDANT, JOHN ROCCHIO'S RESPONSE TO PLAINTIFFS' INTERROGATORIES

1. Identify all persons who know about the facts in Plaintiff's Complaint, including their names, addresses, and what they know.

**RESPONSE: Objection. Defendant objects based on relevance and privacy to the introduction of personal identifying factors in the form of personal addresses. Notwithstanding and without waiving the objection, the below individuals know about the facts in Plaintiff's Complaint:**

> **John Rocchio; 5 Garfield Avenue, Cranston, RI 02920; I responded to Western Hills Middle School on October 21, 2021. SRO Rocchio and I took Plaintiff, Joshua Mello into custody as a result of his behavior at the Western Hills Middle School.**

> **Edward Arruda; 5 Garfield Avenue, Cranston, RI 02920; SRO Arruda was present at Western Hills Middle School on October 21, 2021, and assisted me in taking Plaintiff, Joshua Mello into custody.**

> **Christina Carlson; 400 Phenix Avenue, Cranston, RI 02920; Ms. Carlson let Plaintiff Mello into Western Hills Middle School, saw on ASPEN that there was a legal document related to Plaintiff's daughter, informed Plaintiff Mello of the document, and witnessed Plaintiff Mello's behavior leading to his arrest. Ms. Carlson also provided a Witness Statement as a result of the incident.**

> **Derek Gustafson; 400 Phenix Avenue, Cranston, RI 02920; Vice Principal Gustafson witnessed the situation between Principal Vesey and Plaintiff Mello. When it became volatile, Vice Principal Gustafson texted SRO Arruda and I to respond quickly to Western Hills Middle School before he called me. Vice Principal Gustafson also witnessed the continued situation between Plaintiff, Principal Vesey, SRO Arruda and I. Vice Principal Gustafson also provided a Witness Statement as a result of this incident.**

Bernadette Raposa; 400 Phenix Avenue, Cranston, RI 02920; Ms. Raposa witnessed Plaintiff Mello yelling at Vice Principal Gustafson. Ms. Raposa also witnessed a police officer asking Plaintiff Mello to calm down.

Timothy Vesey; 400 Phenix Avenue, Cranston, RI 02920; On October 21, 2021, Principal Vesey was made aware that Plaintiff Mello was causing an issue at the front counter of the school related to picking up his daughter. Principal Vesey was made aware that the school had a court order that stated if either parent wanted to pick up Plaintiff Mello's daughter during the school day, either parent needed permission from the other parent. Principal Vesey was the individual who spoke to Plaintiff and tried to explain the situation and put the school on lock down when the situation did not de-escalate. Principal Vesey also called Plaintiff's daughter's mother where she eventually gave permission to allow Plaintiff Mello take Plaintiff Mello's daughter from school. Principal Vesey also witnessed Plaintiff's arrest. Ms. Raposa also provided a Witness Statement as a result of the incident.

Robert J. Willette; 400 Phenix Avenue, Cranston, RI 02920; Mr. Willette observed the altercation between Plaintiff Mello and Principal Vesey. Mr. Willette also provided a Witness Statement as a result of the incident.

Denise Ann Williams; 400 Phenix Avenue, Cranston, RI 02920; Ms. Williams witnessed the situation between Principal Vesey and Plaintiff Mello. Ms. Williams also witnessed Plaintiff Mello's arrest.

John Worthington; 400 Phenix Avenue, Cranston, RI 02920; Mr. Worthington witnessed the situation between Plaintiff Mello and Principal Vesey. In addition, Mr. Worthington provided a Witness Statement as a result of the incident.

Sergeant Jeffrey Chapman; 5 Garfield Avenue, Cranston, RI 02920; Sgt. Chapman arrived on scene on Western Hills Middle School on October 21, 2021.

Officer Christine Dempsey; 5 Garfield Avenue, Cranston, RI 02920; Officer Demsey arrived at Western Hills Middle School after Plaintiff Mello was in custody. She brought Plaintiff Mello to Roger Williams Medical Center and then to Cranston Police Department on October 21, 2021.

School Resource Officer Matthew Davis; 5 Garfield Avenue, Cranston, RI 02920; SRO Davis arrived on scene at Western Hills Middle School after Plaintiff Mello was in custody.

In addition, please see Defendants' Response to Plaintiff's Request for Production of Documents, Response No. 1, Bates numbered documents, Defendants- RFP-000001 through 000010, Defendants-RFP-000036 through 000045.

2. Describe in detail your version of events described in Plaintiff's Complaint.

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

**RESPONSE:** Around 8:29 A.M. I was contacted by the Assistant Principal at Western Hills Middle School, requesting that I respond to the school. A few moments later, I spoke with SRO Arruda who informed me that he had been contacted and was responding there as well.

Upon arrival, I entered the school and observed two parties, later identified as Joshua Mello and Rachel Ware in the lobby of the school, outside of the main office. I observed Plaintiff Mello to be irate and pacing near the entrance to the main office and Principal's office. He appeared to be recording the incident on a cell phone while he paced around the lobby. He was speaking loudly and over the school's administrators who were near the office door. After obtaining a face mask from the school, I tried speaking with Plaintiff Mello and Ware to determine what the issue was. Upon doing so, Plaintiff Mello began to raise his voice and talk over me, waiving his arm and pointing his finger at me and the administrators as well. I was able to ascertain that Mello was angry over a child custody issue involving his daughter. I approached them to attempt to learn more about the issue. While attempting to speak with them they both started to explain that the school had an invalid court order. Plaintiff Mello began to become irater and more aggressive. As an attempt to de-escalate, I requested his name so we could speak on a personal level. He only identified himself to me as "Josh" and then added that was all I was getting. Plaintiff Ware did attempt to explain further but Plaintiff Mello continued to get louder. At one point during this altercation, Plaintiff Mello moved close to me to obtain my badge number from my uniform shirt. I did verbally provide him with my name and badge number. While speaking with him I explained to him that he was being loud and disturbing the school and that his actions qualified as disorderly conduct. Every time I attempted to speak to Plaintiff Mello he began to talk over me and refused to listen to me. He continued to become more aggressive and belligerent in his actions. During this time, a student entered the building and had to be ushered by and into the building.

Officer Arruda approach where we were standing to explain to Plaintiff Mello that the school had received verbal approval from his daughter's biological mother and that he and Plaintiff Ware could take his daughter from the school. Mr. Vesey did indicate that he would allow him to take his daughter once he calmed down. He apparently became more irate about the use of the word "allow." Yelling that we were not allowing him to do anything. We attempted to calm him down so that his daughter could be brought down. These numerous attempts to calm him were unsuccessful. While this was occurring I observed two belt clips, which I believed to be part of pocket knives, in his front pocket. Plaintiff Mello began back towards the doorway while Plaintiff Ware attempted to speak to him. Plaintiff Ware continued to talk with Plaintiff Mello and moved him towards the doorway. She turned and began to plea with us to allow her to calm Plaintiff Mello down, turning her back to us and then him. Plaintiff Mello kept mentioning that he wanted me to back up six feet, abut I stated that I was not going to and that he could leave the building. At one point Plaintiff Mello began pointing at me and began to move which is when Plaintiff Ware put her hands on his chest to keep him from coming towards me. While she again tried to speak with him and had her back to me, Plaintiff Mello used his left hand to grab Plaintiff Ware's right shoulder, in attempt to move her out of his way. Due to Plaintiff Mello's loud and tumultuous behavior, his increased belligerence and actions, as well as the fact I believed him to be in possession of two knives, I determined that I was going to take

3

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

him into custody. I was unable to do this at this time because Plaintiff Ware was positioned between us. I continued to keep myself in between Plaintiff Mello and the school lobby, while allowing him the access to exit the building. Plaintiff Ware moved to her right, which allowed me the opportunity to grab Plaintiff Mello's right wrist to take him into custody. When I grabbed onto his arm, he began to pull away from me as Plaintiff Ware began to grab onto Plaintiff Mello's midsection. SRO Arruda began to assist me taking him into custody. As we were doing this, Plaintiff Mello was taken to the ground in between the doors to the schools.

Once on the ground, Plaintiff Mello continued to resist by placing his hands and arms under his body. I continued to give him verbal commands to place his hands behind his back, but he did not comply. As this was occurring, administrators had to prevent another parent from entering the building. I was eventually able to take control of his left arm and place a handcuff on his wrist. Once this occurred I was able to take control of wright wrist and place him in handcuffs. Once cuffed, Plaintiff Mello continued to be defiant. I moved him onto his side to remove the knives from his pocket as SRO Arruda called for an officer to respond to assist with transporting Plaintiff Mello. While I did this, Plaintiff Mello was kicking his legs and started moving around on his side. These two knives were ultimately removed from his pocket. I was able to see that there was another knife located between the waistband of his pants and waist, with the belt clip to his knife being concealed behind his belt. As I attempted to seize this knife, he continued to kick his legs, turning himself around on his side. Plaintiff Mello began attempting to stand up, at which I took him back to the ground. He was able to brace himself by placing his foot against the wall. He was yelling at me to get off of him and to let him go. He continued to kick his legs, at which time I grabbed hold of his legs and arms and waited for him to calm down. I was able to secure all three knives in my pants pocket. SRO Arruda and I were able to lift Plaintiff Mello to his feet before escorting him outside of the building.

As we escorted him to the area near the front of SRO Arruda's vehicle. Plaintiff Mello continued to be loud and tumultuous, yelling at me. Once we reached the vehicle, Plaintiff Mello was placed facing it. When I began to do this, Plaintiff Mello pushed his upper back towards me, at which time I forced him forward, onto the hood of the vehicle. I placed my left foot and lower leg around his right leg in a manner to keep him from moving further. He continued to yell and argue while using his legs as leverage against the bumper to push his upper body back towards me. Due to his continuing resistive actions, I pulled him away from the vehicle and forced him to a sitting position on the pavement. Once he was sitting on the ground, I placed my left leg behind his upper body to prevent him from falling backwards further. Officer C. Dempsey arrived on scene and Plaintiff Mello was escorted to her patrol vehicle. Prior to being placed in the rear of her vehicle, I completed a search incident to arrest Plaintiff Mello and no other contraband was located. SRO Davis and Sgt. Chapman arrived on scene as well.

In addition, please see Defendants' response to Plaintiffs' Request for Production of Documents, Response No. 1, Bates numbered documents, Defendants-RFP-000008 through Defendants-000010.

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

   3.  List all communications between you and any other person about the allegations in
Plaintiff's Complaint.

**RESPONSE: Objection. Defendant objects to the extent that this interrogatory seeks
information that are privileged pursuant to attorney client privilege and/or work product
doctrine. Defendant objects to the extent that this request is vague and lacks specificity as
to the type of "communications" Plaintiff seeks. Notwithstanding and without waiving the
objections, I recall having conversations between my superiors at Cranston Police
Department and other involved Cranston Police Officers related to Plaintiff Mello's arrest,
his criminal trial, the complaint that Plaintiffs made against Officer Arruda and I at the
Cranston Police Department, as well as the aftermath of Plaintiff's criminal trial. However,
I cannot remember the specific details of each communication and/or when each
communication occurred.**

   4.  List and describe all documents related to the allegations in Plaintiff's Complaint.

**RESPONSE: See Defendants' response to Plaintiff's Request for Production of Documents,
Response No. 1, Request No. 1, Bates numbered documents, Defendants-RFP-000001
through 000137.**

   5.  Identify all insurance policies that might cover the claims in this lawsuit, including the
insurer's name, policy number, and coverage details.

**RESPONSE: None. The City of Cranston is self-insured.**

   6.  Describe your training and experience, including any training in the use of force, as
mandated by Rhode Island General Laws § 42-28.2-8 (Law Enforcement Officers' Bill of
Rights).

**RESPONSE: Objection. Defendant objects to the extent that this request is confusing as to
"those required under Rhode Island General Laws § 42- 28.2-8." Notwithstanding and
without waiving the objection, see Bates numbered documents, Response No. 22, Bates
numbered Defendants-RFP- 000142 through 000146.**

   7.  Describe the policies and procedures in effect that the time of the incident regarding the
use of force, including those required under § 42-28.6-3 (Police Officer Standards and
Training).

**RESPONSE: Objection. Defendant objects to the extent that this request is confusing as to
"those required under Rhode Island General Laws § 42- 28.2-8." Notwithstanding and
without waiving the objection, see Bates numbered documents, Response No. 27, Bates
numbered Defendants-RFP- 000138 through 000141 and Defendants-RFP-000237 through
000245.**

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

8.  List any complaints or disciplinary actions against you related to the use of force as required to be documented under Rhode Island General Laws § 42-28.6-3 (Police Officer Standards and Training).

**RESPONSE: \* Objection. Defendant objects based on the Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after finding of innocence, unfounded, not sustained, and/or exonerated. Notwithstanding and without waiving the objection, there have not been any complaints made against me that have been sustained. As such, I have not had any disciplinary action taken against me related to the use of force.**

9.  Describe any communications that you had with other officers or supervisors regarding the incident before, during, and after it occurred.

**RESPONSE: Objection. Defendant objects based on the Rhode Island Law Enforcement Officers' Bill of Rights, to providing information on the subject of open investigations, if any, and those that have been closed after finding of innocence, unfounded, not sustained, and/or exonerated. Defendant objects to the extent that this interrogatory is vague and confusing as it includes no limitation as to time after the incident. Notwithstanding and without waiving the objection, I communicated with Officer Arruda before the incident, during the incident, and after it occurred. I also communicated with my supervisors and the other Cranston Police Officers involved in Plaintiff's arrest after his arrest.**

10. Describe any medical treatment you received related to the incident.

**RESPONSE: Objection. Defendant objects based on relevance and privacy according to the personal privileged and confidential healthcare records of the Defendant. Notwithstanding and without waiving the objection, none.**

John Rocchio

**STATE OF RHODE ISLAND**
**COUNTY OF _____**

*Subscribed and sworn to before me on this* 19 *day of* August *of 20* 24.

Maranda Botello
NOTARY PUBLIC
My Commission Expires 10/5/24

Defendants
Edward Arruda and John Rocchio

6

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

By their Attorneys,
As to the objections,

*/s/ Julia K. Scott- Benevides* _____
Julia K. Scott- Benevides (#10408)
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
marc@desistolaw.com
julia@desistolaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on the 19th day of August, 2024, and is available for viewing and downloading from the ECF system.

I further certify that a true and accurate copy of the within was emailed and mailed, postage prepaid, to:

Joshua Mello                          Rachel Ware
57 Rolfe Square, Unit 10113           57 Rolfe Square, Unit 10113
Cranston, RI 02910                    Cranston, RI 02910
kskustomsrideons@gmail.com            kskustomsrideons@gmail.com

*/s/ Julia K. Scott- Benevides* _____

7

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSHUA MELLO and RACHEL WARE,
　　　　　*Plaintiffs,*

vs.

DEREK GUSTAFSON, TIMOTHY VESEY,
STEVEN CATALANO, JOHN ROCCHIO and
EDWARD ARRUDA
　　　　　*Defendants*

C.A. No. 1:23-cv-00480-JJM-PAS;
1:23-cv-00479-JJM-PAS

## DEFENDANT, JOHN ROCCHIO'S RESPONSE TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

*These interrogatories exceed the limit of interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure. Moreover, the subparts contained in Interrogatory Nos. 18, 19, 20, 21, 22, and 25 exceed the twenty-five (25) interrogatories allowed by Rule 33. Since Plaintiffs have not received permission from the Court as required under Rule 33 to propound additional interrogatories, Defendant has provided objections to Interrogatory Nos. 21, 22, 23, 24, and 25, to preserve his objections, but did not provide responses to Interrogatory Nos. 21, 22, 23, 24, and 25 since Interrogatories 21, 22, 23, 24, and 25 go above the twenty-five (25) interrogatories permitted by the Federal Rules of Civil Procedure.*

11.　　　Please provide a list and description of any disciplinary actions against Cranston Police Department officers involved in the October 21, 2021, incident, as well as any subsequent investigations involving Plaintiffs. This request includes closed and prior investigations, as the information is relevant to potential patterns of behavior or accountability practices within the department as permitted by *Monell v. Dept. of Soc. Servs.* for establishing liability through policies or customs of misconduct.

**RESPONSE: Objection. Defendant objects based on proportionality and relevance. Defendant objects to the confusing nature of this interrogatory. Defendant objects based on the form of this interrogatory. Notwithstanding and without waiving the objections, I was not disciplined as a result of the October 21, 2021, or any subsequent investigations involving the Plaintiff. I am unaware of any other Cranston Police Department officers were disciplined as a result of the October 21, 2021 incident, or any subsequent investigations involving Plaintiffs.**

12.　　　Identify and internal or external investigations, audits, or reviews conducted by the Cranston Police Department or any other governmental entity regarding the events of October 21, 2021, or the allegations in the Plaintiffs' complaint. Such information is critical under *Graham v. Connor* to access departmental standards and scope of any review conducted, as these details may impact determinations of liability and damages.

Scanned with CamScanner

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

**RESPONSE: Objection. Defendant objects based on proportionality and relevance. Defendant objects to the confusing nature of this interrogatory. Defendant objects based on the form of this interrogatory. Notwithstanding and without waiving the objections, I am only aware of the investigation related to Plaintiffs' complaints made to the Cranston Police Department's Office of Professional Standards, C.A. No. 2023-12-IA, which was attached to Defendants' Response to Plaintiffs' Request for Production of Documents, Bates numbered documents, Defendants-RFP-000075 through 000137. Otherwise, I am not aware of any other internal or external investigations, audits, or reviews conducted by the Cranston Police Department or any other governmental entity regarding the events of October 21, 2021.**

13.    State whether officer John Rocchio knows any of the following individuals: Leanne D'Allesandro Ciccarelli, Damian Ciccarelli, Joe Ciccarelli, Angelo Ciccarelli, Janet Antonelli, Tonya Morena, or Crystal Gervais. If so, please describe the nature, context, and duration of these relationships. This request seeks information to assess potential biases or conflicts of interest, which may be pertinent to civil rights claims under *Monell* regarding accountability within the department.

**RESPONSE: Objection. Defendant objects based on proportionality and relevance. Defendant objects to the vague, ambiguous, and confusing nature of this interrogatory, specifically, the terms "know," "nature," "context," and "relationships" are vague, ambiguous, and confusing. Defendant objects to the term "relationships" as it assumes facts that may be in dispute. Defendant objects to the form of this interrogatory. Notwithstanding and without waiving the objections, I do not know and/or have had so-called "relationships" with Leanne D'Allessandro Ciccarelli, Damian Ciccarelli, Joe Ciccarelli, Angelo Ciccarelli, or Tonya Morena. Moreover, I am not social friends, but I have encountered the following individuals:**

> **Janet Antonelli: Ms. Antonelli was the Principal at George Peters Elementary School who was the principal at George Peters Elementary School when I was assigned there in 2020. Ms. Antonelli and I worked together from on or around January 2020 through June 2022, when she retired. I have not spoken to Ms. Antonelli since her retirement.**

> **Crystal Gervais: I am an Assistant Coach for Cranston Youth Football, and I am formerly a Commissioner for Cranston Youth Football. I have been the Assistant Coach for Ms. Gervais' son who plays football in the Cranston Youth Football program for around seven (7) years. However, I have had limited interaction with Ms. Gervais, and if I do interact with Ms. Gervais, our conversations are limited to discussions regarding her son and the football team he is playing for, which varied each year with age.**

2

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

14.    In your Professional Standards investigation, you mentioned not communicating your intentions to another officer prior to engaging with Mr. Mello. Given that CPD's L.E.A.D.S. and L.O.C.K.U.P. training emphasizes officer communication for coordination and safety, please explain why this protocol was not followed, as this pertains to the adherence to safety and procedural training standards.

**RESPONSE: Objection. Defendant objects based on the vague, ambiguous, and confusing nature of this interrogatory. Defendant objects to the extent that this interrogatory assumes facts that are in dispute. Defendant objects to the form of this interrogatory as it seeks information that calls for speculation. Notwithstanding and without waiving the objection, since this interrogatory fails to provide any context and/or further information regarding the statement "you mentioned not communicating your intentions to another officer prior to engaging Mr. Mello," I reasonably provide a complete response that explain of what I mentioned in my Professional Standards Investigation. In addition, since Cranston Police Department has a "Use of Force" Policy, but L.O.C.K.U.P. and L.E.A.D.S. are additional training and certification received outside of Cranston Police Department, I cannot explain any training called "CPD's L.E.A.D.S. and L.O.C.K.U.P. Training," as there is no training called "CPD's L.E.A.D.S. and L.O.C.K.U.P. Training."**

15.    You also indicated that you did not communicate Mr. Mello's arrest to him before engaging with him physically. Explain why no verbal de-escalation or warning was provided, as per CPD's emphasis on communication and de-escalation in L.E.A.D.S. and L.O.C.K.U.P. training. This is relevant under *Graham* for assessing reasonableness in police conduct.

**RESPONSE: Objection. Defendant objects based on the vague, ambiguous, and confusing nature of this interrogatory. Defendant objects to the extent that this interrogatory assumes facts that are in dispute. Defendant objects to the form of this interrogatory as it seeks information that calls for speculation. Notwithstanding and without waiving the objection, since this interrogatory fails to provide any context and/or further information regarding the statement "you mentioned not communicating your intentions to another officer prior to engaging Mr. Mello," I cannot reasonably explain the protocol that I used. However, I used several techniques that I learned in my L.E.A.D.S. and L.O.C.K.U.P. training during the incident with Plaintiff Mello. As an example, I attempted to communicate with Plaintiff Mello when I asked Plaintiff Mello for his name, in attempt to get on a personal level with him. In response, Plaintiff told me his name was Josh. Yet, each time I tried to speak with Plaintiff Mello, he began talking over me and refused to listen to me. After receiving permission for Plaintiff Mello to take his daughter from his daughter's mother, we also tried several times to calm down Plaintiff Mello, I recall telling him multiple times that "if you calm down, we'll get your daughter. We'll have her come down here. But we're not going to have her come down here if this is how you are acting." Despite our several attempts to calm Plaintiff Mello down, the more upset he became.**

16.    You reported using "surprise tactics" in the incident, despite CPD training protocols promoting de-escalation over surprise. Please explain why you relied on this approach, including

3

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

how it aligns or deviates from CPD's de-escalation standards under L.E.A.D.S. and L.O.C.K.U.P., relevant to evaluating compliance with department protocols.

**RESPONSE: Objection. Defendant objects based on the vague, ambiguous, and confusing nature of this interrogatory. Defendant objects to the extent that this interrogatory assumes facts that are in dispute. Defendant objects to the form of this interrogatory as it seeks information that calls for speculation as to so-called "surprise tactics." Notwithstanding and without waiving the objection, since this interrogatory fails to provide any context and/or further information regarding the phrase "surprise tactics," that I allegedly "reported" using during the incident, I cannot provide any explanation without speculating what report this interrogatory is referring to. Further, as mentioned above, L.E.A.D.S and L.O.C.K.U.P. are additional training and certification that is not provided by Cranston Police Department directly, so I cannot reasonably explain how anything aligns or deviates from "CPD's de-escalation standards under L.E.A.D.S. and L.O.C.K.U.P.," as Cranston Police Department's standards are different than the training and certification that I learned from L.E.A.D.S. and L.O.C.K.U.P.**

17.     During your interview with Captain Parker, you stated, "I wasn't gonna tell him I was gonna arrest him because I just felt that the fight would have been on." Given CPD's training on the use of communication and de-escalation, please clarify how this decision aligns with CPD standards and training on engagement without prior communication.

**RESPONSE: Objection. Defendant objects based on the vague, ambiguous, and confusing nature of this interrogatory. Defendant objects to the extent that this interrogatory assumes facts that are in dispute. Defendant objects to the form of this interrogatory as it seeks information that calls for speculation as to "[d]uring your interview with Captain Parker, you stated, 'I wasn't gonna tell him I was gonna arrest him because I just felt that the fight would have been on.'" Notwithstanding and without waiving the objection, since this interrogatory fails to provide any context and/or further information regarding the statement, " "[d]uring your interview with Captain Parker, you stated, 'I wasn't gonna tell him I was gonna arrest him because I just felt that the fight would have been on," I cannot reasonably provide any clarification without speculating what statement this interrogatory is referring to.**

18.     You indicated in an interview with Captain Parker that your presence was to protect all children, including Mr. Mello's daughter. Specify any information or observations leading to this assessment, given that Mr. Mello showed no aggression toward his daughter. Explain how your decision aligns with CPD protocols for situational assessment and communication in family situations.

**RESPONSE: Objection. Defendant objects to the multi-part nature of this interrogatory. Defendant objects based on the vague, ambiguous, and confusing nature of this interrogatory. Defendant objects to the extent that this interrogatory seeks information regarding facts that may be in dispute. Defendant objects to the form of this interrogatory. Notwithstanding and without waiving the objection, since this interrogatory fails to provide**

4

Scanned with CamScanner

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

any context and/or further information regarding what I allegedly indicated in an interview with Captain Parker, I cannot reasonably provide any information or observations leading up to any "assessment." However, on October 21, 2021, Western Hills Middle School was put into lockdown as a result of Plaintiff Mello's erratic and belligerent behavior while he was inside of the school. It is well-known that lockdowns are a security measure taken to protect students against potential threats inside of the school. As provided above, we told Plaintiff Mello, "[i]f you calm down, we'll get your daughter. We'll have her come down here. But we're not gonna have her come down here if this is how you're acting" as a protection for Plaintiff' Mello's daughter. Based on experience and training, if Plaintiff Mello were to leave with his daughter while he is behaving belligerently and erratically, then there is a concern that there could be an issue between Plaintiff Mello and his daughter when they leave the building.

19.   You stated that Officer Arruda "took him back, and he went down in the vestibule." Please clarify the phrase "took him back" and describe the actions by both officers in this engagement, indicating how these actions followed or deviated from CPD's protocols for use of force, communication, and suspect control.

**RESPONSE: Objection. Defendant objects to the multipart nature of this interrogatory. Defendant objects based on the vague, ambiguous, and confusing nature of this interrogatory, specifically as to the phrase, "[y]ou stated that Officer Arruda 'took him back, and he went down in the vestibule.'" Defendant objects to the extent that this interrogatory seeks information regarding facts that may be in dispute. Defendant objects to the form of this interrogatory. Notwithstanding and without waiving the objections, without context and further information regarding the phrase, "[y]ou stated that Officer Arruda 'took him back, and he went down in the vestibule,'" I cannot reasonably describe the actions of both officers, and I cannot reasonably indicate how those actions followed or deviated from CPD's protocols for use of force, communication, and suspect control.**

20.   You reportedly removed knives from Mr. Mello, throwing them "out of the way." Describe the steps taken to ensure the knives' security after removal and how this action aligns with CPD protocols for securing weapons during engagements.

**RESPONSE: Objection. Defendant objects to the multipart nature of this interrogatory. Defendant objects based on the vague, ambiguous, and confusing nature of this interrogatory, specifically, as to the phrase, "[y]ou reportedly removed knives from Mr. Mello, throwing them away." Defendant objects to the extent that this interrogatory seeks facts that may be in dispute. Defendant objects to the form of this interrogatory. Notwithstanding and without waiving the objections, while the incident with Plaintiff Mello was occurring, I observed two belt clips, which I believed to be part of pocketknives, in his front pocket. Upon arresting Plaintiff Mello, the two knives were removed from his pocket and placed away from Plaintiff Mello's body. Principal Vesey attempted to grab the knives, and I told him not to, and I was able to put those to two (2) knives into my pocket. I was able to see that there was another knife located between the waistband of his pants and his waist, with the belt clip to this knife being concealed behind his belt. I was able to secure all**

5

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

three (3) knives in my pocket before Officer Arruda and I were able to escort him out of the building. All three knives were brought to Cranston Police Department's Bureau of Criminal Identification ("BCI"), and I turned over the knives to the evidence custodian as provided in Cranston Police Department's General Order 350.20, Bureau of Criminal Investigation, attached as Exhibit A, Bates numbered documents, Rocchio- Interrogatories-000001 through 000014.

Specifically, Section IV: Procedure, (b) Evidence Collection (i) of General order 350.20, provides:

> Any officer impounding evidence shall properly handle, mark, package (if appropriate) and transport all physical evidence to head quarters or any other authorized location as soon as practicable prior to the end of their tour of duty and document evidence in accordance with this policy.

See also, Cranston Police Department Property Form for 21-58022-AR provided in Defendants' Third Supplemental Response to Plaintiffs' Request for Production of Documents, Request No. 1, Bates numbered documents, Defendants- 3rd Supplemental RFP- 000270 through 000277.

21.    In your statement, you justified the use of force based on Mr. Mello's behavior. Explain whether Mr. Mello's requests to assist his child warranted physical engagement and arrest, given his legal right to be involved in his child's situation, and detail any CPD protocols guiding the use of force in this scenario.

**RESPONSE: Objection. Defendant objects to the multipart nature of this interrogatory. Defendant objects based on the vague, ambiguous, and confusing nature of this interrogatory, specifically, as to the phrase, "[i]n your statement, you justified the use of force based on Mr. Mello's behavior." Defendant objects to the form of this Interrogatory as it seeks information that calls for speculation. Defendant objects to the extent that this interrogatory seeks facts that may be in dispute. Notwithstanding and without waiving the objection, although Defendant disagrees with the facts stated in this interrogatory, Defendant's narrative in 21-58022-AR, Bates numbered documents, Defendants- RFP-000008 through 000010, which speaks for itself.**

22.    You described an interpretation of the knife statute that differs from the statutory language. Please explain your interpretation and any CPD training supporting this view. This question is relevant to establishing adherence to proper statutory interpretation.

**RESPONSE: Objection. Defendant objects to the multipart nature of this interrogatory. Defendant objects to the extent that this interrogatory exceeds the amount of interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure. Defendant objects based to the extent that this interrogatory is improper considering Plaintiff Mello was convicted for carrying a prohibited weapon (other than firearm), with regard to the knives that he was carrying on his person on October 21, 2021. Defendant objects based on relevance and proportionality. Defendant objects to the extent that this interrogatory is**

6

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

vague and confusing as it does not provide any context and/or information regarding my "description of an interpretation of the knife statute." Defendant objects to the extent that this interrogatory assumes facts that are in dispute.

23.    Your training emphasizes using verbal techniques for de-escalation, especially in school settings. Describe why you chose only to tell Mr. Mello to "calm down" instead of using more comprehensive de-escalation techniques. This is relevant for assessing adherence to CPD standards for conflict resolution.

**RESPONSE:** Objection. Defendant objects to the vague and confusing nature of this interrogatory. Defendant objects to the extent that this interrogatory exceeds the amount of interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure. Defendant objects to the form of this interrogatory. Defendant objects based on relevance and proportionality.

24.    Do you believe that asking Mr. Mello to regulate his emotions while denying him access to his child aligns with de-escalation techniques, or could it incite further emotional distress? Explain using CPD de-escalation training references.

**RESPONSE:** Objection. Defendant objects to the vague and confusing nature of this interrogatory. Defendant objects to the extent that this interrogatory exceeds the amount of interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure. Defendant objects to the form of this interrogatory. Defendant objects based on relevance and proportionality. Defendant objects to the extent that this interrogatory assumes facts that are in dispute.

25.    Please describe the Cranston Police Department's (CPD) policies and procedures for engaging with parents in family-related matters, including guidelines for handling conflicts, de-escalation, and child custody issues. Additionally, outline CPD's protocols for determining authority over a child when disputes or document discrepancies arise, specifying when parental authority may take precedence or when police authority may supersede. Provide any CPD guidelines or training materials related to family conflicts and parental authority.

**RESPONSE:** Objection. Defendant objects to the vague and confusing nature of this interrogatory. Defendant objects to the extent that this interrogatory exceeds the amount of interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure. Defendant objects to the form of this interrogatory. Defendant objects based on relevance and proportionality. Defendant objects to the extent that this interrogatory assumes facts that are in dispute.

7

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

John Rocchio

**STATE OF RHODE ISLAND**
**COUNTY OF _____ RI _____**

ISADODELIS TEJADA
Notary Public, State of Rhode Island
My Commission Expires May17,2028

*Subscribed and sworn to before me on this* 27 *day of* November *of* 2024

NOTARY PUBLIC
My Commission Expires 5/18/2028

Defendants

Edward Arruda and John Rocchio
By their Attorneys,
As to the objections,

*/s/ Julia K. Scott- Benevides*
Julia K. Scott- Benevides (#10408)
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
julia@desistolaw.com

8

*Mello, et al, v. Derek Gustafson, et al*
*C.A. No. 23-cv-000480-JJM-LDA*

<u>CERTIFICATION</u>

I further certify that a true and accurate copy of the within was emailed and mailed, postage prepaid on the 28th day of November, 2024 to:

Joshua Mello                              Rachel Ware
57 Rolfe Square, Unit 10113              57 Rolfe Square, Unit 10113
Cranston, RI 02910                       Cranston, RI 02910
kskustomsrideons@gmail.com               kskustomsrideons@gmail.com


                                         */s/ Julia K. Scott- Benevides*

9