UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**Joshua Mello and Rachel Ware, Plaintiffs**
V.                          Case Nos.: 1:2023-cv-00479 & 1:2023-cv-00480
**Edward Arruda and John Rocchio, Defendants**

**PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e)**

**INTRODUCTION**

Plaintiff's Joshua Mello and Rachel Ware, respectfully moves this Honorable Court to reconsider its ruling pursuant to Federal Rule of Civil Procedure 59(e) on the grounds of (1) newly discovered evidence, (2) unfairness in the hearing process, (3) the court's failure to consider material legal points, and (4) legal and factual errors that warrant reconsideration.

The evidence discovered in the course of litigation, including police department records, internal emails, document inconsistencies, and forensic analysis, directly substantiates the claims of police misconduct, document tampering, and evidence spoliation. The court's consolidation of motions unfairly burdened Plaintiffs, preventing a full and fair opportunity to present arguments. Additionally, the court overlooked material legal points related to due process violations, fraud on the court, and discovery misconduct, which require reconsideration to prevent manifest injustice.

**LEGAL STANDARD**

A motion for reconsideration under Fed. R. Civ. P. 59(e) allows the court to alter or amend its judgment when:

1. There is newly discovered evidence that was previously unavailable.
2. The court committed a clear legal or factual error.
3. There has been an intervening change in the controlling law.
4. Reconsideration is necessary to prevent manifest injustice.

See Templet v. HydroChem Inc., 367 F.3d 473, 478 (5th Cir. 2004); Schultz v. Ashcroft, 174 F. Supp. 2d 1277, 1284 (D. Kan. 2001).

Here, reconsideration is appropriate because the newly discovered evidence was unavailable before the court's ruling, and its omission materially affects the case outcome. Additionally, factual and legal errors—including the failure to address critical evidence and misapplication of case law—require correction to prevent an unjust result.

**NEWLY DISCOVERED EVIDENCE**

Plaintiffs have obtained new evidence that directly supports claims of police misconduct, document falsification that is the PDF in question containing 7 hybrid documents, and due process violations. On January 29, 2025 Plaintiff Ware received a response to an APRA request from the Cranston Police Department which was a PDF of a blank property form. In addition to that, on February 3rd, Plaintiff Ware was dropping off an official court document to the Cranston Police Records Department. While she was there Captain Robertson, head of the records department, learned she was there and came out to speak with her. He provided new information about the property form. This information justifies reconsideration under Rule 59(e).

A. Captain Robertson's Admission

On February 3, 2025, at the Cranston Police Station, Captain Robertson confirmed in an impromptu conversation that:

- The official Cranston Police Department Property Form contains a faded police crest in the middle of the document.
- Property forms are handwritten, and officers do not type directly onto the form.
- Typed information is limited to labels, which are placed on the evidence bag and property form to match them together with barcodes.
- The property forms are carbon forms in which information is transferred when written on between pages.

These statements directly contradict the property form produced in discovery as Exhibit A (Mello) PDF, which:

1. Lacks the police crest, despite Robertson's confirmation that it should be present. (See Exhibit C)
2. Appears to be typed directly onto the form. Signatures are handwritten.
3. Does not contain a typed label matching an evidence bag with a barcode.

These discrepancies strongly suggest that the document did not adhere to the established standards prior to its submission in discovery, raising questions about its authenticity.

**Multiple Forensic Analysis Confirms Digital Tampering of Police Records**

A detailed forensic examination of the Cranston Police Department Property Form revealed strong evidence of digital manipulation, including:

**1. Missing Police Crest – Confirmed by Spectral Analysis**

- The police crest is missing, even though Captain Robertson confirmed that it should be faint but present. (See Exhibit C)
- Spectral analysis reveals inconsistent noise distribution in areas where the crest should appear, suggesting digital removal.

### 2. Document Formatting Violations – Confirmed by Error Level Analysis (ELA)

- The original form should be handwritten, but ELA shows digital alterations inconsistent with a scanned, handwritten document.
- The text exhibits unnatural compression artifacts, suggesting digital tampering.

### 3. Suspicious Metadata and Hybrid PDF Structure

- The PDF document is a hybrid—it was scanned but then had digital text added later, which is not standard for official Cranston police property forms.
- The presence of inconsistent text formatting and spacing further indicates document manipulation.

**Overview of Forensic Findings**

Plaintiffs analysis focused on two key techniques—Spectral Analysis and Error Level Analysis (ELA)—to assess potential digital manipulation in the documents.




**Spectral Analysis (See Exhibit A)**

The spectral analysis compares two side-by-side frequency analyses:

- Cranston Property Form (left) versus Exhibit A Mello (right)
- Both images exhibit a central cross-pattern representing the document's frequency distribution, which should normally be consistent in an unaltered document.
- Key Observations in Exhibit A:
    - A slightly uneven distribution around the central cross.
    - A less uniform noise pattern.

These deviations suggest that the Exhibit A document has undergone digital manipulation.

**Error Level Analysis (ELA) (See Exhibit B)**

ELA examines compression artifacts to reveal inconsistencies:




- Cranston Property Form (left) shows uniform error levels, especially in the header and footer areas, indicating consistent compression typical of an authentic document.
- Exhibit A (right), however, displays irregular compression artifacts:
    - Darker, inconsistent areas where official markings (like the crest) are expected.
    - Anomalies in both header and footer regions, implying that some content might have been removed or modified.

Such variations are strong indicators of deliberate digital alterations.

**Additional Indicators of Document Manipulation**

Beyond spectral and ELA findings, several other suspicious patterns and elements reinforce the conclusion of systematic document tampering:

1. **Suspicious Patterns:**
   - An unusually high concentration of images on certain pages (e.g., 20 images on page 1 and 10 on page 2) is atypical for standard PDF documents.
   - Irregular distribution of images across pages suggests potential use of overlays or other masking techniques to alter original content. (See Exhibit D, a complete forensic summary)
2. **Suspicious Elements:**
   - All pages contain text standardized to an identical length (37 characters), hinting at artificial manipulation.
   - The presence of very small images (e.g., 16×20 or 24×16 pixels) is not typical in genuine documents.
   - A consistent base resolution (1275×1650) across images points to the use of a template.
   - Large overlays on later pages indicate possible complete page replacements.
3. **Document Manipulation Indicators:**
   - Extreme variation in Laplacian values implies multiple rounds of compression, suggesting the document was edited several times.
   - Inconsistent image quality on the same page, along with signs of content masking or replacement, further supports the likelihood of tampering.
4. **Hidden Content and Compression History:**
   - Least Significant Bit (LSB) analysis shows unusual bit patterns and discrepancies in the zero/one ratios, which could be indicative of steganographic content or other digital manipulation artifacts.
   - The evidence of multiple compression levels hints at images coming from different sources or being edited during several sessions.
5. **Content Removal and Replacement:**
   - **Cleanup Phase:** The appearance of small images (e.g., 16×20, 24×16, 32×16 pixels) is typical of tools used to erase or mask content, coupled with mid-range compression artifacts.
   - **Major Replacement:** Large overlays (sizes such as 1776×2916 and 1776×2848) suggest complete page replacements—most notably on pages 6 and 7. These pages show the highest compression artifacts, and the standardized text length across pages reinforces the likelihood of deliberate manipulation.

The combined evidence from spectral inconsistencies and irregular error level artifacts strongly indicates deliberate digital manipulation. The modifications are particularly evident in areas where official markings would typically be present. Overall, these findings provide compelling

support for the conclusion that the original document was systematically altered through multiple editing processes, overlay techniques, and content replacement strategies.

In the context of digital forensic analysis, a hybrid document refers to a file that has been partially altered or fabricated, combining both authentic and manipulated elements in a way that obscures its true origins and integrity. These documents are often modified using advanced digital editing tools, allowing falsified content—such as altered text, missing or replaced images, or digitally added elements—to blend seamlessly with legitimate components. This method is commonly employed to create deceptive yet convincing forgeries, making detection difficult without forensic examination. In this case, forensic analysis of Exhibit A (Mello) PDF has revealed indicators of hybrid manipulation, strongly suggesting that the document has been digitally altered to misrepresent or conceal critical information.

Furthermore, Plaintiffs present additional evidence regarding discrepancies in the property forms produced in response to the APRA requests. Two APRA-requested property forms were originally scanned and created on a Konica Minolta 808 scanner by Captain Robertson. However, the third APRA response—consisting of only page 1 of the discovery document labeled Exhibit A (Mello)— was not scanned but was instead directly created as a PDF from an HP 1998 computer.

Additionally, the Exhibit A (Mello)PDF, provided to the Plaintiffs during discovery, originates from the same police department but was digitally created for the first time on November 18, 2024 using a Konica Minolta C458 scanner, which does not match the original Konica Minolta 808 used for the other forms or the HP Computer. Nevermind that the Property Tracking form, and the creation date of the PDF was on November 18, 2024 when this evidence originates being in the custody of the Cranston Police Department since October 21, 2021.

The Mello property form presents multiple inconsistencies. This type of form is traditionally a carbon sheet that should not be typed on directly, yet Mello's form appears to contain both typed text on the actual form and handwritten entries. Moreover, the official crest, which Captain Robertson confirmed should appear faint, is entirely missing from this document, which was later confirmed in an email and in person on February 3, 2025. These irregularities raise serious concerns about the authenticity and integrity of the evidence presented. As stated in the previous hearing, these documents need to be viewed in the digital format, something the Plaintiffs were unable to do during the hearings for several motions on January 24, 2025. Previously when the Plaintiffs had a discovery conference it was done via zoom with the ability to screen share and discuss the documents. That was not the case with this court date. Without the ability to show the digital file, the Plaintiffs were handicapped unable to fully argue and present the information to the courts.

**The Court Erred in Misapplying Heck v. Humphrey and Overlooking Actionable Police Misconduct Claims**

It is well-established that police misconduct, including falsification of evidence and tampering with records, is actionable under 42 U.S.C. § 1983, even if a conviction remains intact. Courts have consistently ruled that such misconduct constitutes a separate constitutional violation, independent of the validity of the conviction itself.

**Case Law Supporting This Argument:**

- *McDonough v. Smith, 588 U.S. 8 (2019)*: The Supreme Court held that a fabricated evidence claim is not automatically Heck-barred, as the harm caused by police misconduct is distinct from the conviction.
- *Whitmore v. Harrington, 204 F.3d 784 (8th Cir. 2000)*: The court ruled that falsification of evidence constitutes a due process violation and is actionable under § 1983, even if the conviction remains valid.
- *Taylor v. Meacham, 82 F.3d 1556 (10th Cir. 1996)*: Established that claims of illegal police conduct do not necessarily imply the invalidity of a conviction, and therefore, are not barred by Heck.
- *Nelson v. Campbell, 541 U.S. 637 (2004)*: The Supreme Court clarified that Heck only bars § 1983 claims if success in the civil suit would necessarily invalidate the conviction.

In contrast, **Heck v. Humphrey, 512 U.S. 477 (1994),** only applies when a § 1983 claim would require overturning the underlying conviction to succeed. Here, that is not the case. The claims regarding discovery misconduct, document tampering, and evidence spoliation do not challenge the conviction itself but instead raise serious due process concerns.

**The Court's Failure to Recognize Due Process Violations Under Brady v. Maryland**

The court erroneously assumed that the document tampering and spoliation issues were only relevant to the PCR case. However, these claims are distinct constitutional violations under Brady v. Maryland, 373 U.S. 83 (1963), which requires the disclosure of exculpatory and material evidence. The court failed to address the implications of altered and destroyed evidence as part of police misconduct, which is a recognized due process violation.

Additionally, police misconduct extends beyond excessive force and includes fabrication of evidence, obstruction of justice, and fraudulent concealment of material evidence. The failure to acknowledge these violations is a misapplication of Heck v. Humphrey and deprives the Plaintiffs of their constitutional protections.

**Requests for Reconsideration:**

1. Recognize that the claims of discovery misconduct, new evidence about the document tampering, and fraud are not Heck-barred because they do not directly challenge the validity of the conviction.

2. Address the Defendants' fraudulent and deceptive conduct in discovery as an independent due process violation.
3. Reconsider the wrongful dismissal of the document tampering claim and permit an independent forensic analysis to determine the extent of evidence manipulation.
    - If necessary, the court should appoint an independent forensic expert or allow Plaintiff to obtain one at Defendants' expense to ensure an impartial investigation into the altered hybrid documents.

The court's failure to acknowledge police misconduct, discovery violations, and fraudulent evidence tampering constitutes a fundamental misapplication of governing case law. The Plaintiff respectfully requests reconsideration of these claims and an opportunity to present new evidence to substantiate the allegations of document tampering and fraud.

**Pattern of Misconduct and Tampering Undermines the Integrity of This Case**

This federal civil rights lawsuit primarily concerns police misconduct and the use of excessive force. However, a persistent issue remains: Defendants' counsel, Julia Scott-Benivedes and the court continually overlook the documented misconduct that forms a critical part of our complaint.

During discovery, we obtained clear evidence from Attorney Scott-Benivedes further substantiating our claims of police misconduct within the Cranston Police Department and among the officers involved. Despite this, these serious violations remain overlooked and intentionally unaddressed.

One of the most egregious examples being contested at the moment, is the tampered/hybrid document at the center of this motion, which raises serious due process concerns. In addition to this, we uncovered multiple instances of misconduct during discovery, including:

- Officer Rocchio's Email Admission – Discovery produced emails in which Officer Rocchio admitted he never informed Mello that he was subject to a no-trespass order. Yet, four months later, Mello was arrested based on these same no-trespass orders—despite the fact that both the Cranston Police Department (CPD) and the Cranston Law Department knew Mello had never been formally served.
- Leaked and Altered Police Report – A PDF file from Officers Rocchio's email to Officer Arruda, which was obtained during discovery, matches exactly the version leaked to WPRI, an unapproved police report. When the report was finalized two days after the leak, it was altered and Officer Rocchio's statement that he went to the cell block to notify Mello of the two no trespass orders was removed even after the unapproved report was notated with "NFTR" meaning nothing further to report.
- Destruction of Mello's Property in Violation of Cranston Police Department Policy – Discovery also revealed a Cranston Property Form documenting the confiscation of

> Mello's work tools/knives at the time of the incident. This form confirms that the evidence was destroyed, which is a direct violation of Cranston Police Department policies and procedures. At the time of destruction, Mello had an active appeals case in superior court, which should have prevented the destruction of any evidence. Nonetheless, CPD unlawfully destroyed it.

These actions collectively reinforce our claims of widespread police misconduct, procedural violations, and bad faith handling of evidence.

We have acted in good faith by repeatedly bringing these serious issues to the attention of Defendants' counsel, yet they continue to go unaddressed and ignored. The court must not allow this pattern of misconduct, which is intertwined and part of this Federal Civil Rights lawsuit, to be overlooked, particularly the document (hybrid) tampering at the center of this motion, which raises fundamental due process and evidentiary integrity concerns.

## UNFAIRNESS IN THE HEARING PROCESS PREVENTED A FULL AND FAIR OPPORTUNITY TO PRESENT ARGUMENTS

The court's decision to consolidate four separate motions into a single hearing placed an undue burden on the pro se Plaintiffs, effectively preventing a full and fair opportunity to present their arguments. Unlike represented litigants, pro se plaintiffs do not have the benefit of legal counsel to navigate multiple complex legal arguments simultaneously, making the court's approach particularly prejudicial in this case.

### A. The Consolidation of Four Motions Created an Undue Burden

Federal courts have recognized that pro se litigants are entitled to procedural fairness and must not be placed at a distinct disadvantage due to their lack of legal representation. By forcing Plaintiffs to argue four separate motions in a single hearing, the court effectively:

1. Overwhelmed the pro se Plaintiffs, limiting their ability to effectively address each motion.
2. Rushed the proceedings, failing to provide adequate time for argument on each substantive issue.
3. Impaired the Plaintiffs' ability to respond to Defendants' counterarguments, as time constraints did not allow for thorough rebuttals.

It is well established that pro se litigants must be afforded a meaningful opportunity to be heard. See Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (noting that courts must take special care in ensuring that pro se litigants are not unfairly disadvantaged by procedural rulings). The failure to provide adequate time to address four separate legal issues in one hearing deprived Plaintiffs of their right to fully advocate for their claims.

### B. Rushed Proceedings Prevented Proper Consideration of Material Issues

The hearing was not structured in a manner that allowed the Plaintiffs to properly articulate and defend the arguments set forth in their motions. The sheer volume of legal and factual issues requiring attention, including constitutional claims, discovery misconduct, and due process violations, necessitated a more thorough and deliberate hearing process.

By rushing the proceedings, the court:

1. **Prevented a complete factual record from being presented**—critical evidence, including forensic findings, using the digital version of the documents, to provide the courts with the findings.
2. Cut short necessary legal arguments, particularly those related to due process violations, fraud on the court, and spoliation of evidence.
3. Failed to ensure that pro se Plaintiffs had an opportunity to clarify or respond to questions from the court, as would typically be afforded to represented litigants.

In Mathews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court established that due process requires a full and fair hearing where litigants have an opportunity to present their case and respond to opposing arguments. The rushed nature of these proceedings fell below the fundamental fairness required by due process and compromised Plaintiffs' ability to have their motions properly heard and adjudicated.

### C. Pro Se Plaintiffs Must Be Afforded Procedural Fairness

Courts have recognized that pro se litigants require additional procedural safeguards to ensure fairness in judicial proceedings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding that courts must construe pro se filings liberally and ensure fair proceedings).

Given the complexity of the legal and factual issues at stake, Plaintiffs should have been granted:

- Separate hearings for each motion to allow proper presentation and argument.
- Sufficient time to argue each motion fully, rather than being rushed through multiple arguments in a single session.
- The ability to adequately respond to the court's and Defendants' questions without being constrained by an unfairly condensed timeframe.

The court's failure to afford these procedural safeguards constitutes clear error and requires reconsideration under Rule 59(e) to ensure that Plaintiffs' constitutional and statutory claims receive the fair adjudication they deserve.

### RELIEF REQUESTED

Plaintiffs respectfully request that the Court:

1. Order Defendants to produce and present the original signed and an unaltered document from October 21, 2021. Any related documents that would clarify its authenticity. Also who created the document at the Cranston Police Station and sent it over to Juila Scott-Benevides.

2. Plaintiff's request a Court Appointed independent digital forensics expert to review the documents at the Defendants expense.

3. Grant reconsideration under Rule 59(e) based on newly discovered evidence and legal/factual errors.

4. Address the overlooked legal claims, including fraud on the court, spoliation, and due process violations.

WHEREFORE, Plaintiff prays that the Court amend its prior ruling, correct legal errors, and ensure a full and fair adjudication of the claims.

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware
Pro Se Plaintiffs
57 Rolfe Square, Unit 10113
Cranston, RI 02910
401.426.0778

Case 1:23-cv-00480-JJM-PAS    Document 76    Filed 02/12/25    Page 12 of 12 PageID #: 988

12

**CERTIFICATION**

I certify that a true and accurate copy of the within was e-filed, on the 12th day of February 2025:

Julia K. Scott-Benevides
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
julia@desistolaw.com

/s/ Joshua Mello
/s/ Rachel Ware