**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**JOSHUA MELLO and RACHEL WARE,**
    **Plaintiffs,**

**v.**                          **C.A. No. 1:23-cv-00479-JJM-PAS**
                                **(consolidated with 1:23-cv-00480-JJM-PAS)**

**JOHN ROCCHIO, and EDWARD ARRUDA,**
    **Defendants.**

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO MOTION TO DISQUALIFY COUNSEL**

---

## I. INTRODUCTION

Defendants' Objection is built on distortion, denial, and misdirection. Instead of addressing the conflicts and misconduct identified in Plaintiffs' Motion to Disqualify, Attorney Julia K. Scott-Benevides muddies the record, denies allegations never made, and misstates both facts and law. While disqualification is disfavored, courts will order it where necessary to preserve the integrity and appearance of fairness in judicial proceedings, which outweighs a party's preference for counsel. *(See, e.g., First Circuit authority and the Court's inherent power.)*

Disqualification is not a tactic. It is necessary where counsel has intentionally and repeatedly:

1. Misrepresents Plaintiffs' allegations to the Court;

2. Substituted counsel-authored interrogatory answers for sworn party testimony, acting as an unsworn witness;

3. Relied on unreviewed deposition transcripts despite Rule 30(e) to secure tactical advantage;

1

4.  Produces irregular Cranston Police Department evidence records;

5.  Minimized and mischaracterized the pleadings as "only excessive force," contrary to the record;

6.  Denies conflicts while transcripts and filings contradict her own statements; and

7.  Sits silently while the City improperly injected itself into a State PCR proceeding, while simultaneously representing the City in these federal actions.

Plaintiffs also note that before this case even began in earnest, they raised concerns about Attorney Scott-Benevides' conduct and requested that she be removed based on her actions at the PCR proceeding. The Court declined, finding at the time that her conduct did not warrant removal. That decision, however, does not erase the reality that misconduct was identified before discovery even started, and that it has since escalated and repeated throughout these proceedings. If Plaintiffs were denied a safeguard against biased representation at the outset, then the Court bears a heightened duty now to address the full pattern of misconduct that has unfolded.

The Objection fails to rebut the facts. Instead, it proves why disqualification is required. These are not isolated missteps. They are the cornerstones of a coordinated litigation playbook: (1) narrow the case by mischaracterizing claims; (2) control the evidence by scripting discovery and leveraging unreviewed transcripts; and (3) blur conflicts by shifting narratives about who represents whom. That intentional, repeated pattern prejudices pro se litigants and undermines the integrity of these proceedings.

Counsel's "Only Excessive Force" Misrepresentation. Defendants' Objection leans on a false premise: that "only excessive force" remains across both cases. That is wrong as a matter of record and law. In Case 480, a partial Heck dismissal narrowed claims. In Case 479, Defendants

2

filed answers—not a motion to dismiss—and no order ever dismissed any claims or defendants. Consolidation under Rule 42(a)(2)[1] did not merge the cases or import 480's partial dismissal into 479. See Hall v. Hall, 138 S. Ct. 1118, 1125–27 (2018) (consolidation does not merge suits; each retains its own identity). Counsel's repeated insistence that "only excessive force" survives is an intentional, repeated misstatement of the docket to truncate discovery and motion practice—precisely the type of misconduct that warrants disqualification.

Furthermore Plaintiffs expressly incorporate and reassert all prior arguments, filings, and evidentiary references raised in connection with earlier motions regarding Attorney Scott-Benevides. Nothing contained herein should be read to waive, narrow, or abandon any prior statement, objection, or argument. Plaintiffs restate them fully here to preserve the record for review and to ensure that the cumulative pattern of misconduct is properly considered in its entirety.

## II. ARGUMENT

### A. Improper City Involvement in PCR and Catalano's Selective Recusal

Post-conviction relief in Rhode Island is a State proceeding handled by the Attorney General, not municipalities (R.I. Gen. Laws § 10-9.1-1 et seq.). Yet the City of Cranston, through City Prosecutor Steven Catalano and City Solicitor, appeared at Mello's PCR hearing. Attorney Scott-Benevides was present as well, while representing Catalano and the City in this litigation. Their presence had no lawful role and was calculated to sideline Mello's statutory rights.

---

[1] See also Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496–97 (1933) (consolidation is a procedural device; actions retain separate identity absent an order to the contrary); accord Hall v. Hall, 138 S. Ct. at 1125–27

Defendants quibble that Scott-Benevides did not "represent the City" in PCR. Plaintiffs never alleged she filed a formal appearance there. The conflict arises from her simultaneous representation of Catalano and the City in federal litigation while present at the PCR hearing. By intentionally remaining silent as the City injected itself into a State proceeding, Scott-Benevides ratified the conflict and exacerbated the appearance of impropriety.

Catalano later recused himself from representing the City against Plaintiff Ware, even though he had already been dismissed as a defendant. Yet he never recused himself from representing the City against Plaintiff Mello. This selective recusal is telling: if there was "no issue," there would be no reason to step back in Ware's case but not Mello's. This selective recusal is not coincidence; it reflects a deliberate effort to manage the conflict when convenient, while pressing the advantage against Mello. Their own conduct confirms that the conflict was real.

### B. Clarifying Plaintiffs' Allegations and Transcript Contradiction

Defendants repeatedly deny that Plaintiffs claimed Scott-Benevides represented the City in PCR or represented Solicitor Millea. Plaintiffs never alleged either. Plaintiffs' filings are clear: Scott-Benevides represented Steven Catalano in this federal litigation, and she was present at Mello's PCR while those interests improperly interjected into a State matter. Scott-benieves would  represent the city by proxy by representing multiple city officials.

Defendants' attempt to reframe Plaintiffs' Motion into allegations never made — and then deny those strawmen — is a misrepresentation. This is not confusion—it is a repeated, intentional reframing designed to avoid the conflict actually raised.

Worse, in her own filing Scott-Benevides claims she "addressed the Court" during Mello's PCR hearing. The transcript disproves this. Nowhere is she recorded speaking. Counsel cannot create participation that the record itself disproves.

**B-1. Record Control: Consolidation Did Not Erase Live Claims in 479**

No Dismissal in 479. In No. 1:23-cv-00479, Defendants answered the complaint; they did not move under Rule 12 to dismiss any claim or party, and no order ever dismissed those claims. The docket is dispositive: there is nothing that eliminates Plaintiffs' unlawful arrest, retaliation, due process, defamation, and related §1983 claims pleaded at ECF 1 (pp. 3, 7, 10–12, 19–24).

Consolidation Does Not Merge or Transfer Dismissals. The cases were consolidated under Rule 42(a)(2) for convenience. That procedure does not merge actions, does not combine pleadings, and does not wholesale transfer orders from one docket to another unless the Court expressly says so. Hall v. Hall, 138 S. Ct. at 1125–27. The April 14, 2025 text order (addressing 480) never purports to dismiss anything in 479.

Despite this, Defense counsel repeatedly tells the Court that "only excessive force" remains over both dockets. That is a material misrepresentation of the record. It is not "argument"; it is an attempt to erase claims by assertion, in violation of Rule 3.3 (candor) and Rule 11(b) (factual contentions must have evidentiary support). When the core premise of counsel's Objection depends on a false consolidation effect, the conflict ceases to be theoretical—it is operational and prejudicial. This is a further, independent ground for disqualification.

## C. Mischaracterization of Plaintiffs' Claims

Defendants insist that "only excessive force" remains pending, citing an April 14, 2025 text order:

> "[The Court] has already dismissed without prejudice all section 1983 claims that are Heck-barred by Plaintiff Mello's criminal convictions, leaving pending only the claims of excessive force, which are not Heck-barred."

This is inaccurate for three reasons:

1. Magistrate Sullivan acknowledged the ambiguity. In her July 23, 2025 R&R, (ECF #126 pg 1-3) she wrote that the Court's dismissal "did not clarify one way or the other whether Plaintiff Ware's factual allegations are sufficient to state a plausible claim." She further admitted it "appears more likely that Plaintiff Ware's claims based on her status as a witness may well have been intended to be dismissed. (ECF #126 pg 6)" This demonstrates the Court itself recognized that its orders had not fully clarified what claims remain.

2. The Heck ruling applied only to Case 480. Nothing was dismissed in Case 479 (ECF 1), where Mello is the sole plaintiff. Thus, Defendants' blanket statement that "only excessive force" remains is unsupported by any ruling in 479.

3. Plaintiffs' 479 Complaint pleads multiple claims. See ECF 1 pages 3,7,10-12,19-24. The November 15, 2023 complaint alleges unlawful arrest, retaliation, due process violations, defamation, misconduct, and excessive force. None of these claims were dismissed in 479.

Defendants' position collapses under Hall v. Hall and the actual dockets. The Heck narrowing in 480 cannot be bootstrapped into 479, where no dismissal was sought or granted. Plaintiffs' 479 complaint continues to plead multiple §1983 and related tort claims (ECF 1 at 3, 7, 10–12, 19–24).

The "only excessive force" refrain is therefore knowingly false and repeated. It narrows discovery, skews motion practice, and obstructs adjudication of preserved claims. That is not zealous advocacy; it is a calculated misstatement of the record that violates counsel's duty of candor (Rule 3.3) and warrants disqualification or, at minimum, send us all to mediation for settlement discussions and/or issue a curative order expressly confirming the live claims in 479 and precluding further mischaracterization.

## D. Attorney-drafted Interrogatories and Counsel as Unsworn Witness

The Court itself ordered supplemental interrogatory responses from Rocchio and Arruda. That order proves the original answers were inadequate. The supplemented responses still bore the hallmarks of attorney-drafted advocacy, with legalistic boilerplate and Graham-style "objective reasonableness" framing.

By intentionally substituting counsel's narrative for party testimony, Scott-Benevides crossed the line into unsworn witness advocacy, contrary to Rule 33.

## E. Weaponizing Unreviewed Deposition Transcripts

Defendants argue Rule 30(e) requires deponents to request review. That reading ignores the heightened duty of fairness when litigating against pro se parties. Plaintiffs were never afforded the opportunity for Rule 30(e) review, yet Scott-Benevides rushed to rely on uncorrected

transcripts to seek sanctions. Courts recognize that deposition testimony is not "final" until Rule 30(e) rights are honored. This was not neutrality — it was a tactical weaponization of omission. The repeated reliance on unreviewed transcripts is a tactical pattern, not a one-off oversight.

## F. Production of a Non-Conforming Evidence-Destruction Record

The CPD destruction record is facially irregular—no crest, hybrid typed/handwritten—and was produced notwithstanding a pending appeal. A prior "no spoliation" finding does not license continued reliance on an unauthenticated, irregular document. At minimum, the record should be excluded absent custodian authentication under Rules 803(6)/902(11). That does not excuse producing a non-conforming, irregular record. Counsel's certification under Rule 26(g) requires more than dumping questionable documents into discovery.

## G. Defendants' Pattern of Misrepresentation Is an Intentional Litigation Strategy

The record reveals a consistent, intentional, and coordinated pattern: manufacture strawmen, deny what Plaintiffs never alleged, invent participation disproven by transcripts, and restate the case as "only excessive force" to control the scope of proof.

- Misstating Plaintiffs' allegations (e.g., pretending Plaintiffs alleged Scott-Benevides represented Millea or the City in PCR).
- Claiming participation disproven by transcripts.
- Denying representation of the City while filings show the opposite.
- Mischaracterizing the scope of Plaintiffs' claims.

This is not advocacy; it is obstruction. Rule 3.3 requires candor. A professional law firm cannot repeatedly misstate the record without consequence. This repeat-player strategy violates

counsel's duty of candor (Rule 3.3) and is prejudicial to the administration of justice (Rule 8.4(d)). The Court should not permit this strategy to continue; it is intentional, repeated, and corrosive to the integrity of these proceedings.

Plaintiffs' concerns are not new. They warned the Court at the outset, after the PCR incident, that Attorney Scott-Benevides' conduct posed a risk to fairness. The Court's decision not to remove her then has only allowed the misconduct to deepen and repeat. The question now is not whether early misconduct could be dismissed as harmless, but whether a documented, intentional pattern of misrepresentation, obstruction, and conflict can continue unchecked. Plaintiffs respectfully submit that fairness requires intervention at this stage.

## III. CONCLUSION

Defendants' Objection collapses under the weight of the record. Their arguments rest on misrepresentations, contradictions, and selective quotations. Plaintiffs' allegations are not confusing — they are clear, documented, and supported by transcripts, pleadings, and Defendants' own filings.

Immediate Curative Relief Needed. Because counsel's "only excessive force" narrative is contrary to the dockets and has already infected motion practice and case management, Plaintiffs respectfully request an express order confirming that (1) no claims or defendants were dismissed in 479, (2) consolidation did not merge the cases or import 480's partial dismissal into 479, and (3) Defendants are precluded from representing that "only excessive force" remains across both dockets. The Court should further take judicial notice of the 479 and 480 dockets and the absence of any dismissal order in 479.

This Court should not reward misconduct. To preserve fairness and restore integrity, Plaintiffs respectfully request that the Court:

1. Grant Plaintiffs' Motion to Disqualify Attorney Julia K. Scott-Benevides and her firm; Strike tainted filings and irregular discovery;

2. Alternatively, impose targeted remedies addressing the intentional, repeated tactics identified herein:

    (a) Order Rule 30(e) review/errata and preclude reliance on deposition transcripts until completed;

    (b) Require verified, party-sworn supplemental interrogatories (Rule 33) and strike any counsel-authored narrative answers;

    (c) Enter an order clarifying that claims preserved in 479 remain live, and precluding further "only excessive force" arguments;

    (d) Take judicial notice of the 479/480 dockets and confirm on the record that no dismissal order exists in 479;

    (e) Enter an order under Rule 42(a) clarifying that consolidation did not merge the actions, did not combine pleadings, and did not transfer dismissals from 480 to 479 absent express order;

    (f) Preclude any further filings by Defendants representing that "only excessive force" remains in both cases and require that future references to claim-scope cite the specific docket and ECF number relied upon.

3. Impose sanctions under Rule 26(g), Rule 37, 28 U.S.C. § 1927, and the Court's inherent authority; and

4. Direct the parties into good-faith settlement discussions, rather than prolong litigation tainted by counsel's misconduct.

Dated: September 16, 2025

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware
57 Rolfe Square, Unit 10113
Cranston, RI 02910
kskustomsrideons@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th of September 2025, a copy of the foregoing PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO MOTION TO DISQUALIFY COUNSEL was served via the e-filing system and via email to:

Julia K. Scott-Benevides
DeSisto Law LLC
(401) 272-4442
julia@desistolaw.com

/s/ Joshua Mello
/s/ Rachel Ware

# Exhibit A: 3RD DIVISION DISTRICT COURT
STATE OF RHODE ISLAND VERSUS JOSHUA MELLO
CASE NUMBER 31-2021-08448
DECEMBER 18, 2023, Transcript

1               **3RD DIVISION DISTRICT COURT**

2      **STATE OF RHODE ISLAND VERSUS JOSHUA MELLO**

3            **CASE NUMBER 31-2021-08448**

4                **DECEMBER 18, 2023**

5

1

# TABLE OF CONTENTS

2

3

4    LIST OF PARTICIPANTS ................................................................................................. 3

5    TRANSCRIPT ................................................................................................................... 4

6

1                         **LIST OF PARTICIPANTS**

2

3

4    Judge James J. Caruolo

5    Attorney Christopher Millea

6    Joshua Mello

7    (<mark>Male</mark>)

8    (<mark>Female</mark>)

9

**TRANSCRIPT**

| | | |
|---|---|---|
| 4 | Judge Caruolo: | Mr. Millea, are you ready on the Joshua Mello matter? |
| 6 | Attorney Millea: | I believe so, Judge. Yes. |
| 8 | Judge Caruolo: | Is Joshua Mello in the courtroom? Come on up, sir. Counsel, would |
| 9 | | you identify yourself for the record? |
| 11 | Attorney Millea: | Good morning, Your Honor. Christopher Millea on behalf of the City |
| 12 | | of Cranston. |
| 14 | Judge Caruolo: | Thank you. Sir, may I have your name, please? |
| 16 | Joshua Mello: | Joshua Mello, Your Honor. |
| 18 | Judge Caruolo: | All right, so this is a motion for post-conviction relief filed pro se. Is |
| 19 | | that correct? |
| 21 | Joshua Mello: | That is correct, Your Honor. |
| 23 | Judge Caruolo: | All right. |
| 25 | Attorney Millea: | Judge, I-, I-, I'm not sure – I'll just lay out procedurally. I'm not sure |
| 26 | | why this is here. Mr. Mello was, was convicted in this Court, properly |
| 27 | | convicted. He properly filed a – an appeal of the Superior Court. It |
| 28 | | was handled by the Attorney General's. Uh, by agreement with the |

1                             Attorney General, Mr. Mello asked that the matter be remanded back

2                             to District Court. And at that point, (it's set 1:14) here. So the

3                             conviction – uh, upon conviction and, and not doing anything

4                             (unintelligible 1:20) 5 days, it ripened into a conviction. So he's

5                             filing...

6

7    Judge Caruolo:    So he took an appeal.

8

9    Attorney Millea:    He took an appeal and it came back.

10

11    Judge Caruolo:    But it was a timely appeal.

12

13    Attorney Millea:    But it also was a timely come back. So you have to do something with

14                             it once it comes here.

15

16    Judge Caruolo:    Okay.

17

18    Attorney Millea:    He, he filed for post-conviction. It has nothing to do with the City, so

19                             to speak. Uh, he apparently was before Judge McCaffrey last week.

20

21    Judge Caruolo:    Yeah.

22

23    Attorney Millea:    There's an order in which he was supposed to be at least interviewed

24                             by the Public Defender's Office to see if he qualifies for counsel. On

25                             behalf of the City, I'm not sure – uh, I'm gonna be having

26                             conversation with Mr. Catalano (unintelligible 1:59) with the

27                             members of Attorney General's Department representing the City

28                             because I believe his, his claim at least is in part against his attorney

| | | |
|---|---|---|
| 1 | | but I don't know (if 2:09) also Mr. Mello has, uh, taken it upon |
| 2 | | himself to file a couple of 1983 claims in federal court. |
| 3 | | |
| 4 | Judge Caruolo: | Okay. |
| 5 | | |
| 6 | Attorney Millea: | Uh, and those are being handled by, uh, uh, by the City through Mr. |
| 7 | | (DeSisto's 2:22) office. So I'm just not sure why we're here. I'm not |
| 8 | | tryin' to belabor it. According to Judge McCaffrey's order, he is going |
| 9 | | to be giving, uh, an evidentiary hearing... |
| 10 | | |
| 11 | Judge Caruolo: | Uh, Sheriff. |
| 12 | | |
| 13 | Attorney Millea: | ...(unintelligible 2:33). |
| 14 | | |
| 15 | Judge Caruolo: | Pardon me. |
| 16 | | |
| 17 | | (2:34 to 2:45 unrelated to this case) |
| 18 | | |
| 19 | Judge Caruolo: | I'm sorry, Mr. Millea. |
| 20 | | |
| 21 | Attorney Millea: | No, that's okay, Your Honor. Thank you. So according to Judge |
| 22 | | McCaffrey's order, it is going to be for a hearing of some sort. I, I |
| 23 | | just (unintelligible 2:54)... |
| 24 | | |
| 25 | Judge Caruolo: | Before Judge McCaffrey? |
| 26 | | |
| 27 | Attorney Millea: | That's according to this order that she issued last week. |
| 28 | | |

| | | |
|---|---|---|
| 1 | Judge Caruolo: | All right, so as of today, Mr. Mello was supposed to interview with |
| 2 | | the PD's office. |
| 3 | | |
| 4 | Attorney Millea: | That's, that's, that's all I think it's here for, yeah. |
| 5 | | |
| 6 | Judge Caruolo: | Is that your understanding, Mr. Mello? |
| 7 | | |
| 8 | Joshua Mello: | Uh, negative, Your Honor. Last, uh, I was here, I had already |
| 9 | | interviewed. There was a notice from the public defender said that I |
| 10 | | was in conflict. I sh-, was coming... |
| 11 | | |
| 12 | Judge Caruolo: | Okay. |
| 13 | | |
| 14 | Joshua Mello: | ...here to get a (==approved== 3:16) lawyer. |
| 15 | | |
| 16 | Judge Caruolo: | Okay. |
| 17 | | |
| 18 | Joshua Mello: | As of the last, I understood, uh... |
| 19 | | |
| 20 | Judge Caruolo: | Court-appointed counsel? |
| 21 | | |
| 22 | Joshua Mello: | Correct, Your Honor. |
| 23 | | |
| 24 | Judge Caruolo: | All right. Lemme just see. Have your – has your office submitted a |
| 25 | | conflict letter to the Court yet? |
| 26 | | |
| 27 | (==Male==): | There should be one in the portal, Your Honor. |
| 28 | | |

| | | |
|---|---|---|
| 1 | Judge Caruolo: | Is there one in the portal? I don't know what he's talkin' about. |
| 2 | | Usually I get them physically. |
| 3 | | |
| 4 | (Female): | For a, uh, attorney (for 3:34) PD? |
| 5 | | |
| 6 | Judge Caruolo: | Conflict letter. |
| 7 | | |
| 8 | (Female): | Conflict letter. |
| 9 | | |
| 10 | Judge Caruolo: | You need to provide those physically to the Court so we can look in |
| 11 | | the file. It's not enough to just file it in the portal. |
| 12 | | |
| 13 | (Male): | I may have filed it at a earlier date. I believe this, uh, this has been on |
| 14 | | before. |
| 15 | | |
| 16 | (Male): | Judge, if I can, uh – perhaps I can help the Court. |
| 17 | | |
| 18 | Judge Caruolo: | I have a... |
| 19 | | |
| 20 | (Male): | ...since yours... |
| 21 | | |
| 22 | Judge Caruolo: | One m-, one moment. |
| 23 | | |
| 24 | (Male): | ...yours (unintelligible 3:56)... |
| 25 | | |
| 26 | Judge Caruolo: | I have a, I have a conflict letter. |
| 27 | | |
| 28 | (Male): | Okay. |

1

2    Judge Caruolo:    It's dated December 6, so we're all set.

3

4    (Male):    Yeah.

5

6    Judge Caruolo:    Uh, lemme check to see if Court – has a court-appointed attorney
7                      contacted you yet, sir?

8

9    Joshua Mello:    Uh, negative, Your Honor. I was under the, uh, understanding that that
10                     was supposed to have, uh, been done and I was supposed to, uh, meet
11                     with them today, not have, uh, the City here, uh, represented by...

12

13   Judge Caruolo:    Well, the City, the City has every right to be here just as you do.

14

15   Joshua Mello:    (Unintelligible 4:18) Catalano (when I) (unintelligible 4:19)
16                     prosecutorial misconduct case against him not only with the, uh,
17                     federal court but with the disciplinary committee (unintelligible 4:25).

18

19   Judge Caruolo:    All right.

20

21   Joshua Mello:    And in part, the reason why (unintelligible 4:27)...

22

23   Judge Caruolo:    All right, Mr. Mello. Mr. Mello. I asked a very simple question.

24

25   Joshua Mello:    Oh, I (thought 4:31)...

26

27   Judge Caruolo:    Have you been contacted by court-appointed counsel yet?

28

| | | |
|---|---|---|
| 1 | Joshua Mello: | I have not. |
| 2 | | |
| 3 | Judge Caruolo: | All right. So before you start addressing the Court, I wanna make sure |
| 4 | | that you're represented by an attorney so that you don't say something |
| 5 | | that's not in your best interest. Do you know if anybody's been |
| 6 | | appointed yet? |
| 7 | | |
| 8 | (Female): | No, there are several attorneys but, um, I was just looking at that and, |
| 9 | | uh, lemme see. Okay, looks like, uh, on November 28, Denise G-U-E- |
| 10 | | R-T-I-N has possibly been appointed. |
| 11 | | |
| 12 | Judge Caruolo: | All right, so the conflict letter's dated December 6. |
| 13 | | |
| 14 | (Female): | The attorney's name is Justin James Lisi. Oh, that would be – there |
| 15 | | was a conflict though (unintelligible 5:27) public defender. |
| 16 | | |
| 17 | Judge Caruolo: | So they submitted a conflict letter with... |
| 18 | | |
| 19 | (Female): | Right. |
| 20 | | |
| 21 | Judge Caruolo: | ...this Defendant and he needs court-appointed counsel. |
| 22 | | |
| 23 | (Female): | Right. I understand. |
| 24 | | |
| 25 | Judge Caruolo: | All right, so I'll give him a new date for the clerk's office to assign... |
| 26 | | |
| 27 | (Female): | And I'll (unintelligible 5:40) fax it over to (Kim 5:41). |
| 28 | | |

| | | |
|---|---|---|
| 1 | Judge Caruolo: | Okay. Mr. Mello... |
| 2 | | |
| 3 | (Female): | Uh, 'cause I don't know if it was faxed over. |
| 4 | | |
| 5 | Judge Caruolo: | ...Mr. Mello, sir? |
| 6 | | |
| 7 | Joshua Mello: | Yes, Your Honor. |
| 8 | | |
| 9 | Judge Caruolo: | You are entitled to court-appointed counsel. I'm gonna give ya a new |
| 10 | | date so that the clerk's office can appoint the next attorney on the list |
| 11 | | who handles post-conviction relief matters. I'll push it out because of |
| 12 | | the holiday. I can give ya the 8th or the 22nd. Which date is better for |
| 13 | | you, sir? |
| 14 | | |
| 15 | Joshua Mello: | The, uh, 8th will be fine, Your Honor. Thank you. |
| 16 | | |
| 17 | Judge Caruolo: | Reassigned 1/8/24 for court-appointed counsel to be assigned. |
| 18 | | |
| 19 | (Male): | Quick question, Your Honor. Will that be in this courtroom? |
| 20 | | |
| 21 | Judge Caruolo: | I guess so. It's been in front of Judge McCaffrey, it's here now. I'll |
| 22 | | keep it here so that we know who his attorney is and then procedurally |
| 23 | | it can be, um – a decision can be made as to whether or not his post- |
| 24 | | conviction relief request is heard here initially or not. |
| 25 | | |
| 26 | (Male): | Right. She was the... |
| 27 | | |
| 28 | Joshua Mello: | Thank you. |

1

2  (Male):              ...she was the trial judge, Your Honor.

3

4  Judge Caruolo:     If she was the trial judge, i-, it may be properly before her.

5

6  (Male):              Okay, so...

7

8  Judge Caruolo:     Okay?

9

10 (Male):              ...(2B 6:47) 1/8/24. Thank you.

11

12 Judge Caruolo:     Okay.

13

14 Attorney Millea:   Thank you, Your Honor.

15

16 Judge Caruolo:     All right, sir? See the clerk. She'll give you a note. And, um, sir, just,

17                     uh, if ya see a telephone number come in on your phone, I know

18                     sometimes the spam – I'm gonna ask ya to answer it. It could be the

19                     attorney tryin' to get in touch with you. Okay?

20

21 Joshua Mello:      Yes, sir. Uh, thank you.

22

23

24 /ad

Exhibit B
July 23, 2025 R&R

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSHUA MELLO and RACHEL WARE,      :
      Plaintiffs,                                   :
                                                :
        v.                                              :          C.A. No. 23-480JJM
                                                :
DEREK GUSTAFSON, et al.,                    :
      Defendants.                                  :
_____ :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      Now pending before the Court in this case only[1] is Defendants' motion for judgment on

the pleadings challenging the claims of *pro se* Plaintiff Rachel Ware pursuant to Fed. R. Civ. P.

12(c).  ECF No. 108.  This motion is based on the dearth of factual allegations supporting a

plausible claim with respect to Plaintiff Ware, which was one of the arguments Defendants

originally included in their Fed. R. Civ. P. 12(b)(6) motion to dismiss the Amended Complaint

that they filed on February 8, 2024.  ECF No. 24-1 at 1-2, 4 ("Plaintiff Ware does not make any

factual allegations or provide a factual explanation of any nature for how any of the claims relate

to her in the Amended Complaint.").  The Court granted that motion to dismiss without

prejudice, holding that only the "specific allegations of excessive force against Officers Edward

Arruda and John Rocchio" remain in issue, but not clarifying one way or the other whether

_____

[1] This motion is pending only in 23-cv-480JJM, although the case is consolidated with Mello v. Arruda, 23-cv-479JJM.  The Court notes that Plaintiffs' opposition to the pending motion raises an issue that affects only 23-cv-479JJM: they ask the Court to clarify whether the Court's Heck ruling (ECF No. 34) – that Plaintiff Mello's claims that necessarily imply the invalidity of his convictions that have not been overturned are Heck barred – applies to his claims in 23-cv-479JJM.  See ECF No. 110 at 5.  In response to this request, I am providing informal clarification based on my interpretation that the Heck-barred claims in both 23-cv-479JJM and 23-cv-480JJM were dismissed without prejudice.  This clarification is not intended as a dispositive ruling on whether the Heck-barred claims in 23-cv-479JJM are dismissed.  If Plaintiffs wish to contest the issue, they should file a motion to clarify the scope of claims in 23-cv-479JJM within thirty days of the issuance of this clarification.

Plaintiff Ware's factual allegations are sufficient to state a plausible claim in light of that ruling. ECF No. 34 at 2.  Meanwhile, shortly after Defendants moved to dismiss but before the Court ruled on that motion, Defendants filed an Answer to the Amended Complaint denying the "allegations related to excessive force on Plaintiff, Joshua Mello . . . on October 21, 2021."  ECF No. 26 at 1.

With the pleadings closed, Defendants now renew their challenge to the sufficiency of Plaintiff Ware's factual allegations pursuant to Fed. R. Civ. P. 12(c).  ECF No. 108.  Plaintiffs vigorously object and ask the Court to consider additional factual allegations presented in their opposition that are not asserted in the operative pleading.  ECF No. 110.

## I.    <u>Standard of Review</u>

When considering a motion for judgment on the pleadings, the Court "take[s] the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant."  <u>Kando v. R.I. State Bd. of Elections</u>, 880 F.3d 53, 58 (1st Cir. 2018).  Facts drawn from documents "fairly incorporated" in the pleadings and facts "susceptible to judicial notice" may also be considered.  <u>Id.</u> (internal quotation marks omitted).  This standard requires the Court to "separate wheat from chaff;" that is, to separate "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  <u>Id.</u> (internal quotation marks omitted).  The motion should be granted only if "the properly considered facts conclusively establish that the movant is entitled to the relief sought."  <u>Id.</u> "Withal, any new facts contained in the answer, to which no responsive pleading by the plaintiff is required, are deemed denied."  <u>Id.</u>

The Federal Rules of Civil Procedure have no time limit for the filing of a Rule 12(c) motion; such a motion may be filed at any time after the pleadings are closed but within such

time so as not to delay trial. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). However, Fed. R. Civ. P. 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) . . . a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense . . . that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2) (emphasis added). The exception in Fed. R. Civ. P. 12(h)(2) provides, however, that the defense of failure to state a claim "may be raised . . . by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2). "Although a Rule 12(c) motion is one of the exceptions permitted by Rule 12(h)(2), that simply means that a party may pursue a Rule 12(b) motion followed by a 12(c) motion without violating the prohibition on successive Rule 12 motions." Resea Project APS v. Restoring Integrity to the Oceans, Inc., Case No. SA-21-CV-1132-JKP, 2023 WL 2569440, at *3 (W.D. Tex. Mar. 17, 2023). That is, as long as the Court's ruling on the 12(b) motion did not expressly reject the argument presented in the 12(c) motion, the Court may consider it.

## II.   **Background**

This case is based on an incident that occurred on October 21, 2021, at the Cranston middle school attended by Plaintiff Mello's daughter. Mello v. Arruda, C.A. No. 23-479JJM, 23-480JJM, 2025 WL 847823, at *2 (D.R.I. Mar. 18, 2025). On that day, Plaintiff Mello, accompanied by Plaintiff Ware, went to the school and school officials responded with concerns arising from a Family Court Order regarding whether Plaintiff Mello was barred from removing his daughter from school. Id. Plaintiff Mello's reaction resulted in an imbroglio that culminated in two Cranston police officers arresting him through the use of what he alleges was excessive force causing him physical injury. Id. As alleged by Plaintiffs, Plaintiff Mello was taken down to the floor by officers in the school lobby and vestibule. ECF No. 20 at 13, 16. After a struggle during which knive(s) were removed from his person, Plaintiff Mello was handcuffed and

3

walked by officers to a police vehicle and one of the officers allegedly "smashe[d] Mr. Mello off the hood of the car so hard his feet c[a]me off the ground."  ECF No. 20 at 13, 16-17.

The Amended Complaint's dearth of allegations regarding Plaintiff Ware may be briefly summarized.  The pleading begins with an "Introduction" that summarizes the case as based on the allegation that "Defendants are accused of willfully and knowingly violating the plaintiff Joshua Mello's rights"; there is no mention of Plaintiff Ware.  ECF No. 20 at 1 (emphasis added); see id. at 13-14, 16-17.  The Amended Complaint identifies Plaintiff Mello as "Victim/Whistleblower," but Plaintiff Ware only as "Whistleblower."  Id. at 2.  Plaintiff Ware is mentioned only once in the factual section of the Amended Complaint, in connection with one of the Heck-barred claims: "Officer Rocchio's assertion [during trial] of attempting to de-escalate . . . and providing time for Rachel to calm Josh down does not align with the evidence."  Id. at 14.  Otherwise, she appears only in the "Claims for Relief" section of the Amended Complaint, which alleges that both Plaintiffs  have suffered "significant financial and emotional damages."  Id. at 19.  In its "Closing Statement," the Amended Complaint reconfirms that it is based on violations of the "constitutional and statutory rights of Joshua Mello," as well as that the aim of the case is "to rectify the severe injustice perpetrated against Mr. Mello."  Id. at 22-23 (emphasis added).  In her opposition to Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss her claims, Plaintiff Ware confirmed that she is just a "whistleblower" and that she is "coming forward . . . because [she] witnessed a miscarriage of justice against [her] husband."  ECF No. 28 at 4 (emphasis added); id. at 5 (Plaintiff Ware's involvement in the case is "essential due to the profound emotional pain she endured as a result of witnessing the misconduct perpetrated against her husband.") (emphasis added).

Consistently, this Court's recent determination imposing sanctions for intentional noncompliance with discovery orders held that "Plaintiff Ware['s] . . . only involvement in the incident is her presence; she has not alleged any physical injury." Mello v. Arruda, C.A. No. 23-479JJM, C.A. No. 23-480JJM, 2025 WL 1225220, at *3 (D.R.I. Apr. 28, 2025), adopted, 2025 WL 1433383 (D.R.I. May 19, 2025). In another ruling, expressly deploying *pro se* leniency, the Court summarized the Amended Complaint as claiming that "Plaintiff Mello was the victim of excessive force used by the two arresting police officers and that Plaintiff Ware experienced emotional distress by her proximity to this violent and unprovoked physical assault on her husband in her presence." Mello v. Arruda, C.A. No. 23-479JJM, C.A. No. 23-480JJM, 2025 WL 847823, at *2 (D.R.I. Mar. 18, 2025). The Court expressly declined to find, even when viewed most favorably to Plaintiff Ware, that "the Ware claim states a viable cause of action." Id. at n.3.

For the first time in their opposition to the motion for judgment on the pleadings, Plaintiff Ware relies on facts that are entirely missing from the Amended Complaint. Specifically, she now contends that she was "in the middle of the altercation" and that the Police Officer Defendants made "direct, non-consensual physical contact with her" and she "likely felt threatened." ECF No. 110 at 3-4. She also now alleges that she was "pushed aside by Officer Arruda" and "pulled out of the way . . . moments before they took . . . Mello to the ground." Id. (internal quotation marks omitted). That is, she is claiming that the Police Officer Defendants had incidental physical contact with her although she was not injured and that this contact is confirmed by video evidence submitted by Plaintiffs in support of their pending motion for summary judgment. Id.

## III.  Analysis and Recommendation

5

The Court begins by considering Plaintiffs' argument that the motion is "procedurally improper based on its timing . . . [because] [t]he case is currently in the dispositive motions phase."  ECF No. 110 at 1.  This is not correct: the motion for judgment on the pleadings is a dispositive motion, the deadline for the filing of dispositive motions was June 5, 2025, and the motion was filed a month before the deadline.  Text Order of May 8, 2025; ECF No. 108.

Next, the Court examines whether this Fed. R. Civ. P. 12(c) motion is barred by the Court's ruling on the Fed. R. Civ. P. 12(b)(6) motion.  I find that it is not.  For starters, seriatim motions based on the failure to state a claim, first pursuant to Fed. R. Civ. P. 12(b)(6), and then, after the pleadings are closed, pursuant to Fed. R. Civ. P. 12(c), are expressly permitted by the Rule.  Thus, the pending motion may be deemed to be barred only if the Court expressly considered the sufficiency of the Ware claims and ruled that there are facts sufficient to make them plausible.[2]  Review of the Order makes clear that did not happen.  Indeed, when the Order's ruling – "dismiss[ing] all claims . . . except for the specific allegations of excessive force against Officers Edward Arruda and John Rocchio" – is  read in light of the language used in the Amended Complaint, which clearly provides that only Plaintiff Mello alleges that he is the "Victim" of excessive force, it appears more likely that Plaintiff Ware's claims based on her status as a witness may well have been intended to be dismissed.  See ECF Nos. 34 at 2; 20 at 2.  Nevertheless, because this was not expressly stated in the Court's Order, and mindful of Plaintiffs' *pro se* status, I will analyze Defendants' arguments as properly asserted pursuant to Fed. R. Civ. P. 12(c).

---

[2] If the Court somehow finds that it did consider the sufficiency of the Ware claims and ruled that there are facts sufficient to make them plausible, it may still consider Defendants' argument, albeit as a motion for reconsideration because the matters previously raised in the Fed. R. Civ. P. 12(b)(6) motion were decided "either explicitly or by necessary implication."  Higgins v. Huhtamaki, Inc., 1:21-cv-00369-JCN, 2024 WL 4008257, at *3 (D. Me. Aug. 30, 2024) (internal quotation marks omitted); see also Kimmel & Silverman, P.C. v. Porro, 969 F. Supp. 2d 46, 49-50 (D. Mass. 2013).

Plaintiff Ware's principal claim appears to allege that she is a "whistleblower" because she observed the incident, took a video of it on her phone, and has assisted Plaintiff Mello in stating his claim of excessive force.[3]  ECF No. 20 at 2.  Standing alone, such an allegation that she is a "whistleblower" fails to state a viable claim because there is no allegation that her rights were violated resulting in injury to her based on her status as a whistleblower.  ECF No. 20 at 2.  Thus, to the extent to which Plaintiff Ware is asserting a § 1983 "whistleblower" claim, without more, her claim should be dismissed.

What remains is bystander liability.  This claim requires the Court to consider whether a legally viable § 1983 claim (which is what Plaintiff Ware purports to state) can be asserted by a person who is a bystander/observer of an incident during which a family member's constitutional rights are violated.  Starting with the Supreme Court's rulings, the cases are clear that the answer is no.  See, e.g., Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); Harmon v. City of Arlington, 16 F.4th 1159, 1168 (5th Cir. 2021) (no constitutional right to be free from witnessing police action; "[b]ystander excessive force claims can only succeed when the officer directs the force toward the bystander – that is to say, when the bystander is not really a bystander"); Edwards v. Oliver, No. 3:17-cv-01208-M-BT, 2019 WL 4603794 at *15 (N.D. Tex. Aug. 12, 2019) ("[T]here is no cognizable 'bystander' claim under § 1983"; "[claimant] fails to state a § 1983-municipal-liability claim . . . on that basis"), adopted, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019); Carter v. Jess, 179 F. Supp. 2d 534, 540 (D. Md.

---

[3] The Court notes that the Amended Complaint omits the facts that Plaintiff Ware videoed the scene on her phone and has actively participated in the litigation of this case.  The Court draws them from her statements during hearings and in discovery filings.  To the extent that they are material to a viable claim, the pleading must be amended to add them.

2001) ("[A]lthough emotional damages are available under § 1983, a claim of infliction of emotional distress [under state tort law] cannot form the basis of a § 1983 action because there is no constitutionally protected interest at stake").

Focusing on the facts that are omitted from the Amended Complaint, but are included in Plaintiffs' opposition to the motion (which they claim are supported by their filings in connection with their motion for summary judgment), the Court finds that it remains conceivable that Plaintiff Ware can state a viable federal law claim pursuant to § 1983.  See, e.g., Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000) (constitutional tort claims asserted by injured persons who were not intended targets of police conduct are considered according to substantive due process norms); Williams v. City of Athens, Case No. 5:21-cv-0510-LCB, 2025 WL 1490061, at *4-5 (N.D. Ala. May 23, 2025) (§ 1983 claim failed at summary judgment phase after court reviewed video, determined that contact officer made with person near arrestee was incidental to arrest and not excessive force; even if officer used force it was reasonable, not excessive and de minimis).  As of now, however, the Amended Complaint is utterly devoid of any such allegations.  Similarly, it is conceivable that Plaintiff Ware may have a state law claim[4] for intentional or negligent infliction of emotional distress.  See Gross v. Pare, 185 A.3d 1242, 1245-46 (R.I. 2018) (to impose liability on a defendant for intentional infliction of emotional distress: "(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe") (internal quotation marks omitted); D'Ambra v. United

---

[4] The Court would have supplemental jurisdiction over such a related state law tort claim pursuant to 28 U.S.C. § 1367.

<u>States</u>, 338 A.2d 524, 531 (1975) (parent who suffers no physical impact, but experiences serious emotional harm accompanied by physical symptoms from witnessing death of child due to defendant's negligence, may sue for negligent infliction of emotional distress).  Yet such a claim is not presented in the Amended Complaint.

Constrained by the Court's duty to be lenient to *pro se* litigants like Ms. Ware, my recommendation is that the Court grant the motion for judgment on the pleadings because Plaintiff Ware has failed to state a viable claim, but also that it should afford her an opportunity to file motion for leave to file a Second Amended Complaint within thirty days of the Court's adoption of this recommendation.  This recommendation is made in recognition that Defendants remain free to object to such an amendment at this phase of the case for the reasons set out in Fed. R. Civ. P. 15, including undue prejudice.  If no motion to amend is filed or if a motion is timely filed but denied, all claims asserted by Plaintiff Ware should be dismissed.

## IV.    <u>Conclusion</u>

I recommend that Defendants' motion (ECF No. 108) for judgment on the pleadings as to the claims of Plaintiff Ware be GRANTED, provided that her claims should not be dismissed until she has been afforded an opportunity to move for leave to file a Second Amended Complaint, which must be done within thirty days of the Court's determination of this motion for judgment on the pleadings.  If Plaintiff Ware does not timely file a motion to amend or she timely files a motion to amend, but it is denied, all of her claims should be dismissed with prejudice.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in

a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 23, 2025

# Exhibit C: Complaint 23-cv-000479

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

### for the

District of  Rhode Island

Division

|  |  |
|---|---|
| Joshua Mello | ) Case No. _____ |
| | ) *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) Jury Trial: *(check one)* [X] Yes [ ] No |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
| | ) |
| | ) |
| Officer Edward Arruda | ) |
| | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Joshua Mello |
| Street Address | 57 Rolfe Sq. Unit 10113 |
| City and County | Cranston |
| State and Zip Code | RI  02910 |
| Telephone Number | 401-426-0778 |
| E-mail Address | KSKUSTOMSRIDEONS@gmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

| | |
|---|---|
| Name | Edward Arruda |
| Job or Title *(if known)* | School Resource Officer |
| Street Address | 5 Garfield Ave |
| City and County | Cranston |
| State and Zip Code | RI 02920 |
| Telephone Number | 401-942-2211 |
| E-mail Address *(if known)* | |

**Defendant No. 2**

| | |
|---|---|
| Name | John Rocchio |
| Job or Title *(if known)* | School Resource Office |
| Street Address | 5 Garfield Ave |
| City and County | Cranston |
| State and Zip Code | RI 02920 |
| Telephone Number | 401-942-2211 |
| E-mail Address *(if known)* | |

**Defendant No. 3**

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 4**

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[X] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

18 USC 242 deprevation of Rights under Color of law
34 USC 12601 - Police Misconduct Provision
4th Amendment
6th Amendment
14th Amendment

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

   a.   If the plaintiff is an individual

   The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

   b.   If the plaintiff is a corporation

   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

   and has its principal place of business in the State of *(name)* _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

   a.   If the defendant is an individual

   The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of

   *(foreign nation)* _____

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

---

      b.    If the defendant is a corporation

          The defendant, *(name)* _____, is incorporated under

          the laws of the State of *(name)* _____, and has its

          principal place of business in the State of *(name)* _____.

          Or is incorporated under the laws of *(foreign nation)* _____,

          and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

---

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

*See attached*

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*see attached*

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    11/15/2023

Signature of Plaintiff

Printed Name of Plaintiff    Joshua J. Mello

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____

**In the U.S. District Court**
**District of Rhode Island Court of Providence County**

**Joshua Mello**
**57 Rolfe Square, Unit 10113,**
**Cranston, RI 02910**

**v.**

**SRO Edward Arruda**
**Cranston Police Department**
**5 Garfield Ave,**
**Cranston, RI 02920**

Case No.

COMPLAINT

1. **Introduction**

 In the United States District Court for the District of Rhode Island, the plaintiff, Joshua

Mello, appearing pro se, hereby brings forth this civil action against the defendant

Officer Edward Arruda. The defendant is accused of willfully and knowingly violating the

plaintiff Joshua Mello's rights as guaranteed by the United States Constitution. He

violated the Fourth, Fifth, and Fourteenth Amendments and he violated The Color of

Law under 18 USC 242, Deprivation of rights along with the Police Misconduct

Provision, 34 U.S.C. § 12601. The 42 USC § 1983 establishes a mechanism for

individuals to seek legal remedies for violations of their constitutional and statutory

rights by state officials.

2. **Jurisdiction and Venue**

The United States District Court for the District of Rhode Island is the correct venue to file a civil lawsuit as the federal court has jurisdiction over cases involving federal law, constitutional violations, and civil rights claims.

## 3. Parties

Plaintiff:

Joshua Mello, Victim/Whistleblower
57 Rolfe Square, unit 10113
Cranston, RI 02910

Defendant:
Edward Arruda, School Resource Officer
5 Garfield Ave
Cranston, RI 02920

## 4.Statement of Facts

### Regarding Officer Arruda:

The plaintiff Joshua Mello presents these statements of facts regarding the actions of Officer Edward Arruda that took place on October 21, 2021, at Western Hills Middle School in Cranston, RI. He is responsible for a series of severe transgressions that directly contravened the plaintiff Joshua Mello's rights. Office Arruda violated Mr. Mello's Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution. He also violated The Color of Law under 18 USC 242, Deprivation of rights. Furthermore, 42 USC § 1983 establishes a mechanism for individuals to seek legal remedies for violations of their constitutional and statutory rights by state officials. And to further exacerbate the violation of his civil rights, Officer Arruda violated Article I Section 2 of the RI Constitution.

1. During the morning of the arrest, Officer Arruda had a conversation with Tonya Morena, mother of Mr. Mello's daughter, upon coming back to speak with Mr. Mello, he stated "I remember you now, you were arrested at Peters for doing the same thing before." He is referencing an expunged case. Within about two minutes of Officer Arruda sharing this information to Mr. Mello and SRO Rocchio, they employed aggressive tactics, SRO Arruda placed his arm around the plaintiff's neck and utilizing disproportionate physical force to bring him to the ground. "Restraints around the neck can lead to serious physical injury arterial tears, strokes, internal organ damage, and death. There is no such thing as a safe chokehold or carotid hold. It should never be used unless deadly force is warranted." Meadow, Richard. "Types of Excessive Force." https://policebrutalitycenter.org/police-brutality/excessive-force/ Accessed November 12, 2023. This was unreasonable and disproportionate under the circumstances and is deemed excessive. It can be considered an unreasonable seizure which was influenced by a bias of learning of an expunged case where Mr. Mello was arrested at a school. The information provided to SRO Arruda was not from another police officer it was from the mother of Mr. Mello's child. Who had already lied to the school administrators and the police while investigating the family court order.  His actions demonstrate his gross negligence and are an insult to the police department. He is held to a higher standard of professionalism. Which was not demonstrated on October 21, 2021.

2. Shortly following the controversial statement, 'I remember you,' the School Resource Officers (SROs) swiftly proceeded to forcefully apprehend and detain

Mr. Mello, during which Officer Arruda employed aggressive tactics, including placing his arm around the plaintiff's neck and utilizing disproportionate physical force to bring him to the ground. From the time Officer Rocchio put hands on Mr. Mello at 8:42 am and 39 seconds only 7 seconds passed until the SRO's had gotten Mr. Mello to the ground, see WHMS Main Lobby Video time of 8:42 am and 46 seconds. The intensity of the force utilized was such that immediate medical attention was required, leading to Mr. Mello's urgent transfer to the emergency room before his eventual booking at the police station. When an officer uses excessive force during an arrest or detention, it can constitute an unreasonable seizure under the Fourth Amendment. The overly aggressive and intentional actions of SRO Arruda also violated the plaintiff's fifth, and fourteenth amendment rights. Furthermore, to willfully deprive a person of a constitutional right violates 18 USC 242, Deprivation of rights under the Color of Law.

3. Officer Arruda deliberately misrepresented the severity of the assault against Mr. Mello, downplaying the aggressive tactics employed. Misleading the courts not only violated Mr. Mello's rights by providing false testimony under oath but also resorted to excessive physical measures against a parent attempting to collect his child, an action well within his legal rights.

4. After Mr. Mello was handcuffed, the SRO's walked him out to the police cruiser. Under oath Officer Arruda said there was no problem walking him out. When they get him to the police cruiser Officer Rocchio smashes Mr. Mello off the hood of the car so hard his feet come off the ground. Officer Arruda does not mention this incident but goes on to talk about how there was a problem in the rear of the car.

Officer Arruda is just as responsible for the unnecessary use of force because he didn't stop it. Officer Rocchio had Mr. Mello on the bumper, pressing his knees into the car, it was painful for Mr. Mello and when he voiced that Officer Rocchio ended up taking Mr. Mello aggressively to the ground. The video from Western Hills Middle school shows at 8:45:29 am the two SRO's walking a handcuffed Mr. Mello to the cruiser. At 8:45 am and 45 seconds Officer Rocchio smashes a handcuffed Mr. Mello on the hood of the police cruiser so hard that both his feet come off the ground. At 8:46 am and 55 seconds the SROs toss Mr. Mello to the ground. Continuing to show the serious and egregious violations of his rights.

## 5. Causes of Action

Excessive force by law enforcement officers violates several federal laws and constitutional rights.

**1. Fourth Amendment of the U.S. Constitution:** This amendment protects individuals from unreasonable searches and seizures and requires that any warrant for search or arrest be supported by probable cause. The use of excessive force during an arrest can violate the Fourth Amendment's prohibition against unreasonable seizures. SRO Arruda's use of excessive force during the altercation is deemed excessive and disproportionate to the circumstances. Their actions were unwarranted and egregious violations of his rights.

**2. Fifth Amendment of the U.S. Constitution:** This amendment protects individuals from deprivation of life, liberty, or property without due process of law. The use of excessive force leading to injury is a violation of Mr. Mello's right. The excessive force used required him to be taken to the emergency room before being booked at Cranston Police station. In addition, he was already detained in handcuffs and suffered a further assault. An action that Officer Arruda should have stood against Officer Roccio for. His use of excessive force and misconduct is unbecoming of an officer and Officer Arruda is just as guilty.

**3. Fourteenth Amendment of the U.S. Constitution:** This amendment provides for equal protection under the law and prohibits states from depriving any person of life, liberty, or property without due process of law. The Fourteenth Amendment's due process clause is often invoked in cases of alleged police misconduct and excessive force. With the use of excessive and disproportionate measures to detain Mr. Mello, the assaulted on his person after being handcuffed and detained, along with the inaccurate statements about the knife in question, and the questions of concern about the chian of custody.  SRO Rocchio has violated Mr. Mello's rights, depriving him of due process and protection of life, liberty or property.

**4. Title 42, Section 1983 of the U.S. Code:** Commonly referred to as "Section 1983," this federal law allows individuals to seek damages when their constitutional rights are violated by those acting under color of state law. It enables individuals to bring civil lawsuits against state or local government officials, including law enforcement officers, who violate their constitutional rights. The defendants, in their official capacity as state

government employees, willfully, knowingly and unlawfully deprived the plaintiff of his constitutionally guaranteed rights to due process and a fair trial, as protected by the Fifth and Fourteenth Amendments of the United States Constitution.

5. The Police Misconduct Provision, 34 U.S.C. § 12601 makes it illegal for police officers to engage in a pattern of conduct that deprives persons of rights protected by the Constitution, whether or not discrimination occurs.

6. Title 18, Section 242 of the U.S. Code: This statute makes it a federal crime for anyone acting under color of law to willfully deprive a person of a constitutional right. Office Rocchio knowingly and willfully took excessive physical and disproportionate measures that were not suitable for the situation to detain a father who was trying to help his child who was having a feminine emergency. They deprived him of his constitutional right to equal protection under the laws, and they had a bias against him preventing him from getting the equal protection.

These laws serve as important safeguards to protect individuals from the misuse of authority by law enforcement officers and ensure accountability in cases of excessive force or police misconduct.

6. **Claims for Relief:**

The plaintiff has suffered significant financial and emotional damages as a direct consequence of the defendant's willfully and knowingly violating the plaintiff Joshua Mello's rights as guaranteed by the United States Constitution. They violated the Fourth, Fifth, and Fourteenth Amendments, the Color of Law under 18 USC § 242 Deprivation of rights and The Police misconduct Provision, 34 USC § 12601. Leading to a gross

miscarriage of justice. The immeasurable pain and suffering, coupled with the emotional distress resulting from the continual deprivation and neglect of his rights, weighs heavily on his well-being. False accusations propagated within the local community have led to the brink of closure for his small family business. Additionally, the unlawful arrest at Mr. Mello's daughter's middle school has left him without a stable living situation, resulting in his being homeless. The deliberate violations of his rights by the resource officers have left an indelible mark on my psyche, leading to overwhelming anxiety whenever I enter the city of Cranston. Mr. Mello has been prevented from essential moments in his daughter's academic journey, including parent-teacher conferences, her inaugural school dance, and her first and only band concert due to the illegal no trespass order the Cranston School Department and the Cranston Police have on him and my wife. No judge has ever found it warranted to add a no trespass order.  The police department and the school department decided to place them anyways. The enduring repercussions of these rights violations on his child's well-being transcend the present, manifesting in academic struggles and behavioral issues. The profound impact on his family unit remains incomprehensible. The plaintiff's experience highlights the alarming ease with which rights can be violated, underscoring the challenging journey of seeking accountability for these violations.

## 7. Prayer for Relief

The plaintiff hereby seeks the following relief from the court: appropriate compensatory damages, punitive damages, injunctive relief, and any other remedy that the court deems just and necessary to rectify the injustice perpetrated against the plaintiff.

1. Compensatory Damages: The plaintiffs seek compensation for the harm, injuries, and damages suffered as a direct result of the defendant's actions, which violated his constitutional rights. This compensation aims to address the tangible and intangible losses experienced by the plaintiff, including any financial, emotional, or reputational damages incurred.

2. Punitive Damages: Considering the egregious nature of the violations, the plaintiffs seek punitive damages to deter similar misconduct in the future and to hold the defendants accountable for their intentional and malicious actions. These damages aim to punish the defendants for their willful disregard of the plaintiff's rights and to serve as a deterrent against future violations of the law.

3. Injunctive Relief: The plaintiffs seek injunctive relief to prevent the defendants from further engaging in similar unconstitutional practices or from continuing any actions that may further infringe upon the plaintiff's rights. Injunctive relief may include court orders mandating specific actions to rectify the unjust situation or prevent future occurrences of similar violations. Also, the removal of the illegal no trespass order on Joshua Mello and his wife, Rachel Ware, for the Briggs Building and the Western Hills Middle School.

4. Declaratory Relief: The plaintiffs seek a declaratory judgment from the court affirming that the defendant's actions were in violation of the plaintiff's constitutional rights and state laws. This declaration serves to establish the legal rights of the parties involved and may provide clarity on the legal implications of the defendants' misconduct.

5. Attorney Fees and Costs: The plaintiffs request the reimbursement of reasonable attorney fees and legal costs incurred in pursuing the lawsuit, even being a Pro Se Litigant, similar fees should be awarded to compensate. This reimbursement serves to alleviate the financial burden placed on the plaintiff in seeking justice and holding the defendants accountable for their unlawful actions.

6. The plaintiffs respectfully request that the defendant issue a public apology to the plaintiff's daughter, who has borne the brunt of the distress inflicted by their actions. The defendant's egregious conduct has resulted in enduring emotional trauma and irreversible harm to the child, and an open apology serves as a vital step toward facilitating the healing process for the young individual. Furthermore, the plaintiff also requests an open apology to Joshua Mello for the deprivation of his constitutionally guaranteed rights, acknowledging the profound impact of the defendants' actions on his well-being and the enduring repercussions resulting from the violations perpetrated against him. An open acknowledgment of the harm caused, along with a sincere expression of remorse, would represent a meaningful gesture toward rectifying the harm inflicted upon the plaintiffs and their family.

As the plaintiff proceeds pro se in this civil lawsuit, the precise valuation of the damages incurred due to the defendants' numerous civil rights violations remains unknown. In an effort to provide a starting point for the assessment of damages, the plaintiff proposes the following initial figures for consideration:

- Officer Edward Arruda: $3.2 million

It is imperative to note that while the proposed figures serve as a preliminary estimation, they by no means encapsulate the full extent of the emotional and psychological harm inflicted upon the plaintiff and their family. The loss of irreplaceable time with the plaintiff's child, coupled with the enduring emotional distress endured by both the child and the family over an extended period, transcends monetary valuation and underscores the profound impact of the defendants' actions on the well-being of the plaintiffs.

8. **Demand for Jury Trial**

I believe that the complexity and importance of the issues involved in this case warrant a trial by jury to ensure a fair and impartial judgment. Should the court find it applicable and within my rights as the plaintiff, I respectfully request that this matter be presented before a jury of my peers to ensure that the facts and evidence are thoroughly considered, and that justice is served in accordance with the laws of our state and country.

9. **Closing Statement**

In this closing statement the plaintiff, Joshua Mello, outlines a series of events involving Officer Edward Arruda at Western Hills Middle School in Cranston, RI. The plaintiff alleges violations of his constitutional rights, including the Fourth, Fifth, and Fourteenth Amendments, as well as violations under the Color of Law statute (18 USC 242) and The Police misconduct Provision, 34 USC § 12601.

The plaintiff argues that Officer Arruda, used aggressive tactics, including placing his arm around the plaintiff's neck, leading to a physical altercation. There is no such thing as a safe chokehold. It should never be used unless deadly force is warranted.

The plaintiff contends that this use of force was unreasonable, disproportionate, and influenced by a biased perception. The plaintiff also accuses Officer Arruda of deliberately misrepresenting the severity of the assault during testimony.

The plaintiff lists multiple causes of action, including violations of the Fourth, Fifth, and Fourteenth Amendments, The Police misconduct Provision, 34 USC § 1260, Title 42, Section 1983 of the U.S. Code, and Title 18, Section 242 of the U.S. Code. The claims for relief detail the financial and emotional damage suffered by the plaintiff, seeking compensation for the alleged violations.

In the prayer for relief, the plaintiff proposes initial figures for consideration as compensation, emphasizing the profound impact on the plaintiff's well-being and family life. The plaintiff also requests a jury trial, asserting that the complexity of the case warrants a fair and impartial judgment by peers. The closing statement aims to provide a comprehensive overview of the alleged violations, the legal basis for the claims, and the damages suffered, concluding with a request for a fair trial and appropriate compensation.

Respectfully submitted,

_____        11/15/2023

Joshua Mello
57 Rolfe Square, Unit 10113
Cranston, RI 02910
401-426-0778
kskustomsrideons@gmail.com

**Supporting Documentation:**

Graham v. Connor, 490 U.S. 386 (1989)
A claim of excessive force by law enforcement during an arrest, stop, or other seizure of an individual is subject to the objective reasonableness standard of the Fourth Amendment, rather than a substantive due process standard under the Fourteenth Amendment. In other words, the facts and circumstances related to the use of force should drive the analysis, rather than any improper intent or motivation by the officer who used force.

This case helped shape police procedures for stops that involve the use of force. An officer cannot justify these actions based on a hunch or by showing that they acted in good faith. Instead, they must carefully articulate facts and events that made their use of force objectively reasonable under the circumstances.

Eric Garner – Excessive Force Resulting in Death
During Garner's arrest for selling illegal cigarettes, officers tackled Garner to the ground. An officer used an illegal choke hold on Garner. Garner could be heard on a video begging for help and saying he could not breathe.

Garner died because of the actions of the officers. The officer who used the illegal chokehold and would not let Garner up was fired.

Kingsley v. Hendrickson, 576 U.S. ___ (2015)
Under 42 U.S.C. 1983, a pretrial detainee need only show that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim.

**In the U.S. District Court**
**District of Rhode Island Court of Providence County**

Joshua Mello
57 Rolfe Square, Unit 10113,
Cranston, RI 02910

v.

SRO John Rocchio
Cranston Police Department
5 Garfield Ave,
Cranston, RI 02920

Case No.

COMPLAINT

1. **Introduction**

In the United States District Court for the District of Rhode Island, the plaintiff, Joshua
Mello, appearing pro se, hereby brings forth this civil action against the defendant
Officer John Rocchio. The defendant is accused of willfully and knowingly violating the
plaintiff Joshua Mello's rights as guaranteed by the United States Constitution. They
violated the Fourth, Fifth, and Fourteenth Amendments and The Color of Law under 18
USC 242, Deprivation of rights. 42 USC § 1983 establishes a mechanism for individuals
to seek legal remedies for violations of their constitutional and statutory rights by state
officials.

2. **Jurisdiction and Venue**

The United States District Court for the District of Rhode Island is the correct venue to file a civil lawsuit as the federal court has jurisdiction over cases involving federal law, constitutional violations, and civil rights claims.

3. **Parties**

Plaintiff:
Joshua Mello, Victim/Whistleblower
57 Rolfe Square, unit 10113
Cranston, RI 02910

Defendant:
John Rocchio, School Resource Officer
5 Garfield Ave
Cranston, RI 02920

4. **Statement of Facts**
**Regarding Officer Rocchio:**

The plaintiff Joshua Mello presents these statements of facts regarding the actions of Officer Rocchio on the morning of October 21,2021. His actions have given rise to several violations of Mr. Mello's rights. SRO Rocchio violated the Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution. He also violated The Color of Law under 18 USC 242, Deprivation of rights, and The Police misconduct Provision, 34 USC § 12601. Furthermore, 42 USC § 1983 establishes a mechanism for individuals to seek legal remedies for violations of their constitutional and statutory rights by state officials.  And to further exacerbate the violation of Joshua Mello's civil rights, Officer Rocchio violated Article I Section 2 of the RI Constitution.

1. Officer Rocchio's use of excessive force during the altercation is deemed excessive and disproportionate to the circumstances, it can be considered an unreasonable seizure, violating the individual's Fourth Amendment rights. SRO Rocchio was present for four minutes when he decided to grab Mr. Mello's wrist and arrest him. No de-escalating took place. Once on the ground he restrained Mr. Mello by kneeling on his neck, and back forcibly, while he was struggling to breathe. He perched on him while he was handcuffed and continued to toss him around the vestibule all while Mr. Mello was expressing his inability to breathe. The force used is deemed excessive or unreasonable under the circumstances and was exceedingly disproportionate to the threat posed. The Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of law. Mr. Mello was not afforded that.

2. Officer Rocchio does not stop with his use of excessive force on Mr. Mello. After the assault and use of excessive force in the vestibule, both SRO's walked a handcuffed Mr. Mello out to the police cruiser. Once at the front of the cruiser Officer Rocchio can be seen slamming Mr. Mello on the hood of the police cruiser, while handcuffed. The force from the officer was so hard that both Mr. Mello's feet lifted off the ground. Subjecting him to being slammed on the hood of Officer Arruda's cruiser while in handcuffs constitutes a blatant violation of Mr. Mello's Constitutional rights under the color of the law. Furthermore, 42 USC § 1983 establishes a mechanism for individuals to seek legal remedies for violations of their constitutional and statutory rights by state officials. There was no objective reasonableness to have treated a detained citizen that way. These

actions are unbecoming of an office of the law and a clear violation of Mr. Mello's rights.

3. A significant disparity emerges between the contents of Officer Rocchio's official police narrative and his sworn testimony during the proceedings. In his police narrative, Officer Rocchio claims to have personally measured and marked the knives for exhibits and under oath he said he brought them to BCI to be logged for evidence. One knife is supposedly longer than the 3 inches allowed in RI but the Gerber manufacturer's specifications, which indicate a precisely 3-inch blade contradicts those claims.

5. **Causes of Action**

Excessive force by law enforcement officers violates several federal laws and constitutional rights.

**1. Fourth Amendment of the U.S. Constitution:** This amendment protects individuals from unreasonable searches and seizures and requires that any warrant for search or arrest be supported by probable cause. The use of excessive force during an arrest can violate the Fourth Amendment's prohibition against unreasonable seizures. SRO Rocchio use of excessive force during the altercation is deemed excessive and disproportionate to the circumstances. Their actions were unwarranted and egregious violations of his rights.

**2. Fifth Amendment of the U.S. Constitution:** This amendment protects individuals from deprivation of life, liberty, or property without due process of law. The use of excessive force leading to injury is a violation of Mr. Mello's right. The excessive force

used required him to be taken to the emergency room before being booked at Cranston Police station. In addition, he was already detained in handcuffs and suffered a further assault.

**3. Fourteenth Amendment of the U.S. Constitution:** This amendment provides for equal protection under the law and prohibits states from depriving any person of life, liberty, or property without due process of law. The Fourteenth Amendment's due process clause is often invoked in cases of alleged police misconduct and excessive force. With the use of excessive force and disproportionate measures to arrest and detain Mr. Mello, then the additional assaulted on his person after being handcuffed and detained, along with the inaccurate statements about the knife in question, SRO Rocchio has violated Mr. Mello's rights, depriving him of due process and protection of life, liberty or property.

**4. Title 42, Section 1983 of the U.S. Code:** Commonly referred to as "Section 1983," this federal law allows individuals to seek damages when their constitutional rights are violated by those acting under color of state law. It enables individuals to bring civil lawsuits against state or local government officials, including law enforcement officers, who violate their constitutional rights. The defendants, in their official capacity as state government employees, willfully, knowingly and unlawfully deprived the plaintiff of his constitutionally guaranteed rights to due process and a fair trial, as protected by the Fifth and Fourteenth Amendments of the United States Constitution.

**5.The Police Misconduct Provision, 34 U.S.C. § 12601** makes it illegal for police officers to engage in a pattern of conduct that deprives persons of rights protected by the Constitution, whether or not discrimination occurs.

**6.Title 18, Section 242 of the U.S. Code:** This statute makes it a federal crime for anyone acting under color of law to willfully deprive a person of a constitutional right. Office Rocchio knowingly and willfully took excessive physical and disproportionate measures that were not suitable for the situation to detain a father who was trying to help his child who was having a feminine emergency. They deprived him of his constitutional right to equal protection under the laws, and they had a bias against him preventing him from getting the equal protection.

These laws serve as important safeguards to protect individuals from the misuse of authority by law enforcement officers and ensure accountability in cases of excessive force or police misconduct.

6. **Claims for Relief:**

The plaintiff has suffered significant financial and emotional damages as a direct consequence of the defendant's willfully and knowingly violating the plaintiff Joshua Mello's rights as guaranteed by the United States Constitution. They violated the Fourth, Fifth, and Fourteenth Amendments, the Color of Law under 18 USC § 242 Deprivation of rights and The Police misconduct Provision, 34 USC § 12601. Leading to a gross miscarriage of justice. The immeasurable pain and suffering, coupled with the emotional distress resulting from the continual deprivation and neglect of his rights, weighs heavily on his well-being. False accusations propagated within the local community have led to the brink of closure for his small family business. Additionally, the unlawful arrest at Mr. Mello's daughter's middle school has left him without a stable living situation, resulting in his being homeless. The deliberate violations of his rights by the resource officers have left an indelible mark on my psyche, leading to overwhelming anxiety whenever I

enter the city of Cranston. Mr. Mello has been prevented from essential moments in his daughter's academic journey, including parent-teacher conferences, her inaugural school dance, and her first and only band concert due to the illegal no trespass order the Cranston School Department and the Cranston Police have on him and my wife. No judge has ever found it warranted to add a no trespass order.  The police department and the school department decided to place them anyways. The enduring repercussions of these rights violations on his child's well-being transcend the present, manifesting in academic struggles and behavioral issues. The profound impact on his family unit remains incomprehensible. The plaintiff's experience highlights the alarming ease with which rights can be violated, underscoring the challenging journey of seeking accountability for these violations.


## 7. **Prayer for Relief**

The plaintiff hereby seeks the following relief from the court: appropriate compensatory damages, punitive damages, injunctive relief, and any other remedy that the court deems just and necessary to rectify the injustice perpetrated against the plaintiff.

1. Compensatory Damages: The plaintiffs seek compensation for the harm, injuries, and damages suffered as a direct result of the defendant's actions, which violated his constitutional rights. This compensation aims to address the tangible and intangible losses experienced by the plaintiff, including any financial, emotional, or reputational damages incurred.

2. Punitive Damages: Considering the egregious nature of the violations, the plaintiffs seek punitive damages to deter similar misconduct in the future and to

hold the defendants accountable for their intentional and malicious actions.
These damages aim to punish the defendants for their willful disregard of the
plaintiff's rights and to serve as a deterrent against future violations of the law.

3. Injunctive Relief: The plaintiffs seek injunctive relief to prevent the defendants
   from further engaging in similar unconstitutional practices or from continuing any
   actions that may further infringe upon the plaintiff's rights. Injunctive relief may
   include court orders mandating specific actions to rectify the unjust situation or
   prevent future occurrences of similar violations. Also, the removal of the illegal no
   trespass order on Joshua Mello and his wife, Rachel Ware, for the Briggs
   Building and the Western Hills Middle School.

4. Declaratory Relief: The plaintiffs seek a declaratory judgment from the court
   affirming that the defendant's actions were in violation of the plaintiff's
   constitutional rights and state laws. This declaration serves to establish the legal
   rights of the parties involved and may provide clarity on the legal implications of
   the defendants' misconduct.

5. Attorney Fees and Costs: The plaintiffs request the reimbursement of reasonable
   attorney fees and legal costs incurred in pursuing the lawsuit, even being a Pro
   Se Litigant, similar fees should be awarded to compensate. This reimbursement
   serves to alleviate the financial burden placed on the plaintiff in seeking justice
   and holding the defendants accountable for their unlawful actions.

6. The plaintiffs respectfully request that the defendant issue a public apology to
   the plaintiff's daughter, who has borne the brunt of the distress inflicted by their
   actions. The defendant's egregious conduct has resulted in enduring emotional

trauma and irreversible harm to the child, and an open apology serves as a vital step toward facilitating the healing process for the young individual. Furthermore, the plaintiff also requests an open apology to Joshua Mello for the deprivation of his constitutionally guaranteed rights, acknowledging the profound impact of the defendants' actions on his well-being and the enduring repercussions resulting from the violations perpetrated against him. An open acknowledgment of the harm caused, along with a sincere expression of remorse, would represent a meaningful gesture toward rectifying the harm inflicted upon the plaintiffs and their family.

As the plaintiff proceeds pro se in this civil lawsuit, the precise valuation of the damages incurred due to the defendants' numerous civil rights violations remains unknown. In an effort to provide a starting point for the assessment of damages, the plaintiff proposes the following initial figures for consideration:

- Officer John Rocchio: $3.2 million

It is imperative to note that while the proposed figures serve as a preliminary estimation, they by no means encapsulate the full extent of the emotional and psychological harm inflicted upon the plaintiff and their family. The loss of irreplaceable time with the plaintiff's child, coupled with the enduring emotional distress endured by both the child and the family over an extended period, transcends monetary valuation and underscores the profound impact of the defendants' actions on the well-being of the plaintiffs.

8. **Demand for Jury Trial**

I believe that the complexity and importance of the issues involved in this case warrant a trial by jury to ensure a fair and impartial judgment. Should the court find it applicable and within my rights as the plaintiff, I respectfully request that this matter be presented before a jury of my peers to ensure that the facts and evidence are thoroughly considered, and that justice is served in accordance with the laws of our state and country.

9. **Closing Statement**

In closing, the plaintiff, Joshua Mello, outlines a series of events involving Officer John Rocchio at Western Hills Middle School in Cranston, RI. The plaintiff alleges violations of his constitutional rights, including the Fourth, Fifth, and Fourteenth Amendments, The Police misconduct Provision, 34 USC § 12601, as well as violations under the Color of Law statute (18 USC 242).

The plaintiff argues that Officer Rocchio used aggressive tactics that violated constitutional rights, the use of force was unreasonable, disproportionate, and influenced by a biased perception. There was also specifically a significant disparity between his official police narrative and sworn testimony. The use of excessive force by Officer Rocchio during the arrest and the subsequent treatment of the plaintiff at the police cruiser are emphasized as further violations.

The plaintiff lists multiple causes of action, including violations of the Fourth, Fifth, and Fourteenth Amendments, The Police misconduct Provision, 34 USC § 12601, and Title 18, Section 242 of the U.S. Code and Title 42, Section 1983 of the U.S. Code.

The claims for relief detail the financial and emotional damage suffered by the plaintiff, seeking compensation for the alleged violations.

In the prayer for relief, the plaintiff proposes initial figures for consideration as compensation, emphasizing the profound impact on the plaintiff's well-being and family life. The plaintiff also requests a jury trial, asserting that the complexity of the case warrants a fair and impartial judgment by peers. The closing statement aims to provide a comprehensive overview of the alleged violations, the legal basis for the claims, and the damages suffered, concluding with a request for a fair trial and appropriate compensation.

Respectfully submitted,

_____

Joshua Mello
57 Rolfe Square, Unit 10113
Cranston, RI 02910
401-426-0778
kskustomsrideons@gmail.com

**Supporting Documentation:**

Graham v. Connor, 490 U.S. 386 (1989)
A claim of excessive force by law enforcement during an arrest, stop, or other seizure of

an individual is subject to the objective reasonableness standard of the Fourth

Amendment, rather than a substantive due process standard under the Fourteenth

Amendment. In other words, the facts and circumstances related to the use of force

should drive the analysis, rather than any improper intent or motivation by the officer

who used force.

This case helped shape police procedures for stops that involve the use of force. An

officer cannot justify these actions based on a hunch or by showing that they acted in

good faith. Instead, they must carefully articulate facts and events that made their use of

force objectively reasonable under the circumstances.

Eric Garner – Excessive Force Resulting in Death
During Garner's arrest for selling illegal cigarettes, officers tackled Garner to the ground.

An officer used an illegal choke hold on Garner. Garner could be heard on a video

begging for help and saying he could not breathe.

Garner died because of the actions of the officers. The officer who used the illegal

chokehold and would not let Garner up was fired.

Kingsley v. Hendrickson, 576 U.S. ___ (2015)
Under 42 U.S.C. 1983, a pretrial detainee need only show that the force purposely or

knowingly used against him was objectively unreasonable to prevail on an excessive

force claim.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Mello, Joshua | Officer, Edward Arruda ETAL |

| **(b)** County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | 2023 NOV |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☑ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☑ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:
Mechanism for individuals to seek legal remedies for violation of their constitutional rights by state actors

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ 3.2 million
- CHECK YES only if demanded in complaint:
- JURY DEMAND: ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

| JUDGE | DOCKET NUMBER |
|---|---|

DATE 11/15/2023    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____