**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**JOSHUA MELLO and RACHEL WARE,**
   **Plaintiffs,**

**v.**                          **C.A. No. 1:23-cv-00479-JJM-PAS**
                      **(consolidated with 1:23-cv-00480-JJM-PAS)**

**JOHN ROCCHIO, and EDWARD ARRUDA,**
   **Defendants.**

---

**OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiffs Joshua Mello and Rachel Ware respectfully submit this objection to Magistrate Judge Sullivan's Report and Recommendation ("R&R") (ECF No. 106), which recommends denial of Plaintiffs' Motion for Summary Judgment. The R&R is fundamentally flawed because it intentionally misstates the record, adopts Defendants' narrative over the irrefutable controlling video evidence, and makes credibility determinations that are impermissible at the summary judgment stage.

Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the District Court must conduct a de novo review of the portions of the R&R to which objection is made, and here Plaintiffs object to it in its entirety. At summary judgment, the Court must view the evidence in the light most favorable to the nonmovant, draw all reasonable inferences in that party's favor, and refrain from weighing credibility or adopting argumentative descriptions of the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Tolan v. Cotton, 572 U.S. 650, 657 (2014). Video or

1

documentary evidence may override a party's account only where it "blatantly contradicts" that account such that no reasonable jury could believe it. Scott v. Harris, 550 U.S. 372, 380 (2007).

The R&R departs from these standards in multiple ways. It repeatedly characterizes Plaintiffs' conduct as "irate," "belligerent," or "frightening," despite video evidence showing the contrary; it speculates about the emotional state of school officials; and it minimizes or distorts the degree of force used during Plaintiff Mello's arrest. These are not neutral findings but credibility assessments and argumentative inferences, which are reserved for the jury. See Reeves v. Sanderson Plumbing, 530 U.S. 133, 150 (2000).

Indeed, the R&R's account is not a neutral retelling of the record at all—it is an argumentative narrative that resolves disputed inferences against the Plaintiffs. Rather than describe the video evidence in objective terms, the R&R adopts emotionally charged language, including references to a "protective hand," "fearful" school officials, a "frightening and disturbing scene," an "enraged and belligerent" parent, officers "backing him (without touching)," and a child "protectively escorted … to skirt the incident." (R&R at 11, citing Pls.' Exs. A, B, E; ECF 79-3/102-3). These phrases are not factual descriptions of what the cameras show; they are argumentative inferences and credibility judgments. At the summary judgment stage, the Court is not permitted to draw such inferences against the nonmovant. Tolan, 572 U.S. at 657–60.

Because the errors are pervasive, Plaintiffs object to the R&R in its entirety. While representative examples are provided below, Plaintiffs expressly preserve all objections to the R&R's findings and conclusions. Plaintiffs do not waive any objection by declining to catalog every misstatement individually; the record is simply too replete with inaccuracies to fully detail within the page limits which thusly exceeded even trying to address what we could.

**OBJECTIONS TO THE REPORT AND RECOMMENDATION**

**Objection 1: The R&R Misstates the Scope of Plaintiffs' Claims**

The R&R opens by asserting:

> "These cases allege the unconstitutional use of excessive force in connection with
> and following the arrest of Plaintiff Joshua Mello at a Cranston middle school by the
> Cranston police officers working as school resource officers who are named as
> Defendants – Officer Edward Arruda and Officer John Rocchio." (R&R at 1).

**Record-Corrected Statement.** This is inaccurate and materially incomplete. Plaintiffs'
consolidated actions plead multiple constitutional and state-law claims beyond excessive force.
In Case No. 1:23-cv-00479 (ECF No. 1), where Mr. Mello is the sole plaintiff, the November 15,
2023 complaint asserts claims for unlawful arrest, retaliation, due process violations, defamation,
and misconduct, in addition to excessive force. See ECF 1 at pp. 3, 7, 10–12, 19–24. None of
these claims have ever been dismissed in 479 and are still live.

By contrast, the Heck ruling applied only to Case No. 1:23-cv-00480. No order has dismissed
any claims in 479, and the record is clear that all pleaded causes of action remain pending.
Defendants' and the Magistrate's repeated assertion that "only excessive force" remains is
unsupported by any ruling in 479, and the R&R's adoption of that misstatement is an error.

**Legal Significance.** By intentionally and inaccurately narrowing the scope of the case to
"excessive force only," the R&R disregards entire categories of claims that are properly before
the Court and have never been dismissed. This error distorts the framing of the motion,
prejudices Plaintiffs' right to have all live claims adjudicated, and misleads the reviewing Court

3

as to what is at issue. See *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (error to adopt one party's mischaracterization of the record).

**Requested Disposition.** The Court should reject the R&R's misstatement of the scope of Plaintiffs' claims. The record establishes that Case 479 includes multiple causes of action—unlawful arrest, retaliation, due process violations, defamation, misconduct, and excessive force—all of which remain pending and proven in discovery to be factually accurate like the email from Defendant Rocchio admitting he never told Plaintiff Mello about the alleged No Trespass Order and the knife evidence about the destruction while Plaintiff Mello was in an active appeal. The Court's review should proceed on that basis.

## Objection 2: The R&R Misstates Plaintiff's Conduct Regarding Mask Compliance and Demeanor

**R&R Statement:** The R&R claims that Plaintiff "refused [a mask], threw the proffered mask in the trash and entered the building to sit in the school lobby … he refused [to wait outside] … he began to become irate and belligerent, yelling loudly and using profane language." (R&R at 5–6).

**Record-Controlled Correction:**

- **Entry and demeanor (video):** The Western Hills lobby video shows Plaintiff being admitted at 8:23 a.m., covering his mouth though not wearing a mask. He spoke with Assistant Principal Coutu and Principal Vesey, requesting dismissal of his daughter, and then sat on a bench to wait, making numerous attempts to cover his mouth to abide by the request to wear one. (Video Ex. A, 8:23–8:27 a.m.). The video shows no profanity,

shouting, or belligerence.

- **Response to mask request:** When asked about a mask, Plaintiff stated he would wait outside once he knew his daughter was coming down. This is not a refusal to comply, but a willingness to leave upon assurance his daughter would be dismissed.

**Legal Significance:** The R&R substitutes loaded descriptors ("irate," "belligerent") for what the video objectively depicts. The surveillance footage conclusively demonstrates calm and compliant conduct. Courts may not credit pejorative labels where objective video evidence controls. Scott v. Harris, 550 U.S. 372, 380–81 (2007). Here, no reasonable jury could conclude that Mello was "irate" or "belligerent" when the video plainly shows otherwise.

**Requested Disposition:** The Court should reject the R&R's findings on Plaintiff's lobby conduct and demeanor. The video record forecloses the contrary narrative and establishes that Plaintiff was calm and compliant, entitling Plaintiffs to judgment as a matter of law on this issue.

**Objection 3: The R&R Intentionally Mischaracterizes the Family Court Order**

The R&R intentionally asserts the order "provided that Plaintiff Mello was barred from removing his daughter from school before dismissal without written consent from the child's mother" (R&R at 5–6).

**Record-controlled correction.** The order in fact states:

- *"That the Defendant/Father has every right to pick up the minor child at school and shall be immediately placed on the Cranston Public Schools emergency contact list at the*

*minor child's school."*

- *"That neither party shall pick the minor child up prior to dismissal without written agreement from the other party."*

 (Ex. A, Family Court Order, ¶¶ 1–2).

Thus, the order:

1. Affirmatively grants Plaintiff the right to pick up his daughter and requires his inclusion on the emergency contact list.

2. Applies the early-dismissal restriction equally to both parents.

3. Nevermind that this order was null and void at the time of this incident and Mello was acting in accordance with the only valid court order.

By inaccurately reframing this invalid order as a unilateral bar against Plaintiff, the R&R not only misquotes and distorts its meaning, but also advances a narrative that is directly contrary to the plain language of the order and unsupported by the record. Such a distortion improperly strips Plaintiff of rights the Family Court order expressly conferred, aligns the Court's account with Defendants' litigation position rather than the truth, and undermines the fairness of adjudication—particularly where Plaintiffs, as pro se litigants, are entitled to a neutral and accurate application of the record.

**Legal significance.** Courts must apply orders as written, not paraphrased distortions. The R&R's restatement erases rights expressly conferred on Plaintiff and substitutes a one-sided restriction. *Tolan*, 572 U.S. at 657 (error to credit one party's mischaracterization of record evidence).

**Requested disposition.** The Court should reject the R&R's characterization and adopt the order's actual terms, which confirm Plaintiff's right to pick up his daughter and impose reciprocal restrictions on both parents for early dismissal or better yet let the record reflect that order was void and should not have been followed.

**Objection 4: The R&R Misstates the Timeline and Basis for Police Involvement**

The R&R intentionally portrays Plaintiff as becoming belligerent when the Family Court order was raised, prompting school officials to call the police (R&R at 5–6). This is what is stated, "When school officials raised concerns arising from the Family Court Order on file with the school he began to become irate and belligerent, yelling loudly and using profane language directed at school officials. ECF No. 89-2/114-2 at 90-97. In response to Plaintiff Mello's loud, belligerent and volatile conduct in the school lobby while students and teachers were present, school officials called for assistance from the two Cranston school resource officers, Defendants Arruda and Rocchio; school officials also placed the school on lockdown."

**Record-controlled correction.**

1.  Police were contacted before "order" was discovered. The record shows that Assistant Principal Gustafson contacted the SROs at 8:27 a.m., only four minutes after Plaintiff entered the building and before the office discovered the outdated and invalid Family Court order. In Gustafson's witness statement from 10/21/21 he wrote that he texted the SROs because of "an upset parent refusing to wear a mask." The video evidence, however, shows Plaintiff calmly seated on a bench waiting for his daughter's dismissal; he is not yelling, belligerent, or visibly shaking as Gustafson further claimed during trial testimony. When SRO Arruda entered the lobby, he walked confusingly past Plaintiff

without incident and went directly to Gustafson on the opposite side of the lobby—conduct consistent with a non-threatening situation.

2. These statements in the R&R don't even align with the video timeline and intentionally misrepresent the facts.

3. At Plaintiff Mello's criminal trial on November 2, 2022, Mr. Gustafson testified under oath that he contacted the SRO because of alleged noncompliance with a school directive (mask use). *(Trial Audio Nov. 2, 2022).*

4. The Family Court order was not even referenced until later, after Plaintiff approached the office window after speaking with Mr.Vesey and Mrs.Couto in the lobby—well after the police had already been called. *(Video Ex. A, post–8:27 a.m.; Ex. B).*

**Legal significance.** The R&R's version—that police involvement stemmed from Plaintiff's reaction to the order—is contradicted by the video timeline, contemporaneous texts, and sworn trial testimony. The undisputed record evidence (texts, video, and sworn testimony) establishes that police were contacted before the order was even raised. The R&R's version is contradicted by objective, time-stamped evidence. No reasonable jury could accept the contrary narrative."

**Requested disposition.** The Court should reject the R&R's causal account and adopt the record evidence showing (i) Plaintiff remained calm in the lobby, (ii) the police were called before the order was raised, and (iii) Gustafson himself testified the call was for mask noncompliance.

**Objection 5: The R&R Mischaracterizes Plaintiff's Demeanor at the Time of Police Arrival**

The R&R states that "the two Defendant police officers quickly arrived to observe an agitated, irate parent." (R&R at 6).

**Record-Controlled Correction:** The Western Hills surveillance video shows otherwise. At approximately 8:33 a.m., the first SRO, Arruda, entered the lobby and walked directly past Plaintiff Mello, who was standing quietly by the bench near the exit. Arruda did not engage with Mello but instead proceeded across the room to speak with school staff—conduct consistent with the presence of a non-threatening parent. The second SRO did not arrive until later, after Mello had been waiting nearly twenty minutes for the release of his daughter and after his wife had joined him in the lobby. The record therefore contradicts the R&R's assertion that both officers encountered an "agitated, irate parent" upon arrival.

**Legal Significance:** The R&R substitutes inflammatory descriptors for what the video actually depicts, fabricating demeanor-based conclusions not supported by the evidence. Courts may not inject subjective characterizations where objective video evidence provides the definitive record. Tolan v. Cotton, 572 U.S. 650, 656–57 (2014). Nor may the Court adopt its own narrative unless the video "blatantly contradicts" a party's version of events. Scott v. Harris, 550 U.S. 372, 380 (2007). Here, the surveillance video conclusively demonstrates that Plaintiff was calm and non-confrontational at the time of police arrival. No reasonable jury could adopt the R&R's characterization of "agitated" or "irate" in the face of this objective evidence.

**Requested Disposition:** The Court should reject the R&R's characterization of Plaintiff as "agitated" and "irate" at the time of police arrival. The objective video forecloses that narrative and establishes that Plaintiff was calm and non-threatening when SRO Arruda entered the lobby, entitling Plaintiffs to judgment as a matter of law on this point.

## Objection 6: The R&R's Footnote Mischaracterizes the Family Court Order and Injects Defense Narrative

**The R&R footnote states:**

"Plaintiffs dispute the reasonableness of the school's and subsequently the Defendant police officers' reliance on this Family Court Order because the Family Court had entered a more recent Order that nullified it. Defendants allege, and Plaintiffs do not materially dispute, that the school did not receive the correct Family Court Order until after October 21, 2021." (R&R at n.5).

**Record-controlled correction.**

The Family Court's April 28, 2021 Order (approved May 27, 2021) is clear and controlling: it nullified all prior orders, gave joint custodial rights, imposed no restrictions, and closed the matter. Nowhere does it bar Plaintiff Mello from the school or limit his parental access. The R&R's footnote recasts this binding nullification as a mere "receipt" problem, excusing officials who acted on a void order until someone delivered them a copy. It further injects an invented "bar" against Plaintiff Mello that does not exist in the record. These statements are not factual findings—they are judicial wordsmithing, drawn from Defendants' briefing and elevated into the Court's analysis. Orders are binding upon entry; they do not depend on when a school/party claims it "received" them. Furthermore the officers admittedly never read or confirmed the order though they acted on it.

**Legal significance.**

This mischaracterization has serious constitutional consequences. Parental rights are fundamental liberty interests protected by the Fourteenth Amendment. See *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *Suboh v. D.A.'s Office of Suffolk Dist.*, 298 F.3d 81, 91–95 (1st Cir. 2002); *Hatch v. DCYF*, 274 F.3d 12, 20–24 (1st Cir. 2001). Acting under color of law on the basis of a nullified order deprived Plaintiffs of liberty without due process. Likewise, any seizure or restriction

premised on a void order is per se unreasonable under the Fourth Amendment, just as executing a quashed warrant would be. See *Beier v. City of Lewiston*, 354 F.3d 1058, 1069–72 (9th Cir. 2004). Bureaucratic delay in "receiving" an order cannot cloak unconstitutional conduct in reasonableness. Nor can qualified immunity apply where officials acted without valid legal authority. Further, the school and police department's reliance on stale orders reflects a municipal practice of failing to verify current legal authority, actionable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**Requested disposition.**

The Court should reject the R&R's footnote and the mischaracterizations it contains. Specifically, the Court should:

1. Recognize that the May 2021 Family Court Order nullified all prior restrictions and imposed none thereafter;

2. Hold that reliance on void orders is per se unreasonable and unconstitutional; and

3. Allow Plaintiffs' claims to proceed free from narrative distortions that elevate Defendants' briefing over the actual record.

**Objection 7: The R&R Misstates the Nature of Plaintiff's Prior and Expunged Arrest**

The R&R states that "the child's mother also told [school officials] that Plaintiff Mello had engaged in similar conduct resulting in his arrest at another school." (R&R at 6–7).

**Record-Controlled Correction:** This assertion is not only inaccurate but also prejudicial. Plaintiff Mello was wrongfully arrested at his daughter's school, but it was not for "similar conduct." Tonya Morena, the mother, was allowed by Cranston School officials to alter school

documents without a court order, removing Plaintiff from the Emergency Care Card, which resulted in a restriction during dismissal that was unwarranted and violated his parental rights. Additionally, the source of this statement—a voice speaking by telephone—is unverified hearsay from a person not present at the prior incident. It was nevertheless repeated and adopted in the R&R without evidentiary support. The record contains no admissible evidence substantiating this claim, and the repetition of this narrative serves only to undermine and unfairly paint Plaintiff in a false light.

**Legal Significance:** By crediting an unverified and inaccurate statement, the R&R injects prejudicial material into the record without evidentiary support. Courts may not rely on hearsay or adopt one side's narrative unsupported by admissible evidence at the summary judgment stage. See Tolan v. Cotton, 572 U.S. 650, 656–57 (2014). Because no admissible evidence supports the R&R's characterization, no reasonable jury could rely on this statement to reach any finding relevant to Plaintiffs' claims.

**Requested Disposition:** The Court should reject the R&R's characterization of Plaintiff's prior arrest as "similar conduct at another school" and disregard any reliance on this hearsay statement. Only properly supported and admissible facts in the record may be considered at summary judgment, and this prejudicial hearsay cannot create a genuine dispute of material fact.

## OBJECTIONS TO "VERSION OF EVENTS DEPICTED IN VIDEOS"

### 1. Characterization of Mello's Tone and Demeanor

The Magistrate Judge described the video as showing Mello "loudly, aggressively and belligerently speaking," "yelling over," "becoming enraged," and "shouting."

Video Evidence: Plaintiffs' Exhibit E (cell-phone recording) depicts multiple participants speaking at elevated volume, including Mello, Plaintiff Ware, school officials, and the SROs. While Mello's voice is raised, it is consistent with a parent advocating for his child in an urgent and stressful situation, and is not distinguishable in tone from the generally heightened volume of all other participants. The fact that Plaintiff Mello is the one recording and holding the phone closest to his own voice explains why his tone dominates the audio. The recording does not show him as "enraged" or "belligerent." Those descriptors are interpretive and argumentative, not objective facts discernible from the video.

**Why It Matters**: At summary judgment, the Court's role is to determine whether any genuine factual dispute exists, not to weigh demeanor or inject subjective characterizations. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Here, the video evidence forecloses the R&R's narrative: it shows heightened but ordinary advocacy by a parent, not disorderly conduct. The Supreme Court has held that video overrides testimony only when it "blatantly contradicts" one version so that no reasonable jury could believe it. Scott v. Harris, 550 U.S. 372, 380 (2007). This recording does not "blatantly contradict" Plaintiffs' account; to the contrary, it is entirely consistent with Mello speaking firmly and urgently — but not unlawfully — in response to being denied access to his daughter in an emergency.

Conclusion: Because the video itself does not support the R&R's pejorative labels, no reasonable jury could conclude that Mello's speech was "belligerent" rather than the constitutionally protected advocacy of a concerned parent. The R&R's reliance on subjective descriptors creates a narrative unsupported by the objective evidence and cannot defeat summary judgment.

## 2. Officer's Arrival and Interaction

13

The Magistrate Judge described the video as showing an officer arriving, interacting with Mello, and inserting "a protective hand (without touching either Plaintiff Mello or the school official) between Plaintiff Mello and the school official to whom Plaintiff Mello was talking."

**Video Evidence:** Plaintiffs' Exhibit A (lobby surveillance, no audio) shows Plaintiff Mello seated or standing quietly near a bench for several minutes after speaking with school administrators, waiting for his daughter. When SRO Arruda enters the lobby, he does not engage Mello, but instead walks directly past him and positions himself across the room with school staff. Any later conversation occurs across the lobby, not at close range. Principal Vesey subsequently approaches Mello, with Arruda joining briefly before Vesey departs to retrieve a document. The footage contains no indication of Arruda inserting a "protective hand" or otherwise interceding between Mello and anyone upon entry.

**Why It Matters:** The R&R's account fabricates a physical maneuver that is not present in the video and implies a threat that the objective record does not support. The surveillance footage conclusively demonstrates that Arruda did not view Mello as posing an imminent danger—he passed by without incident and focused on staff, not Mello. Under Scott v. Harris, 550 U.S. 372, 380 (2007), courts may credit video evidence where it forecloses a competing narrative. Here, the video forecloses the R&R's claim of an immediate "protective hand" intervention, because nothing of the sort occurred.

**Conclusion:** Because the video itself shows no protective gesture, no reasonable jury could accept the R&R's account. The Magistrate's narrative is not an interpretation of the evidence but an insertion of facts not in the record. The only conclusion consistent with the objective footage

is that Arruda did not initially treat Mello as threatening or require protective positioning. Accordingly, Plaintiffs are entitled to judgment as a matter of law on this point.

### 3. Entry of Plaintiff Ware

The Magistrate Judge states that "Plaintiff Mello leaves the lobby and returns with Plaintiff Ware; he grabs the phone in her hands and seems to begin filming."

**Video Evidence:** Plaintiffs' Exhibits A (lobby surveillance) and E (cell-phone video with audio) show no such sequence. Mello never leaves and reenters the school. Instead, while standing in the vestibule, Mello motions for Ms. Ware to enter. SRO Arruda initially blocks her but then changes course and permits her entry. At no point does Mello leave the building to bring her in.

**Why It Matters:** The Magistrate's phrasing falsely portrays Mello as repeatedly leaving and reentering, which implies unnecessary volatility and escalation. In reality, the video evidence shows that Mello remained inside the building throughout, waiting for his child. This neutral fact undercuts Defendants' narrative of disruption.

At summary judgment, the Court cannot resolve such disputed factual inferences against the Plaintiffs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may it intentionally substitute a speculative narrative for what the video actually depicts. See *Tolan v. Cotton*, 572 U.S. 650, 657–60 (2014) (error to credit defendants' interpretation of ambiguous video and testimony). The footage does not "blatantly contradict" Plaintiffs' account under *Scott v. Harris*, 550 U.S. 372, 380 (2007); to the contrary, it corroborates that Mello remained inside, further undermining any other claim.

### 4. Alleged "Fearful" School Officials

15

The Magistrate Judge describes school officials as "standing somewhat back and looking fearful."

**Video Evidence:** The record contains no testimony from any school official claiming fear. Neither the silent lobby surveillance (Ex. A) nor the cell-phone recording (Ex. E) provides a basis to infer fear or intimidation. At most, the footage shows staff standing at a distance with neutral body language. Nothing in the record supports the R&R's insertion of "fear."

**Why It Matters:** The Magistrate's characterization creates a narrative of threat without evidentiary support. The law does not permit courts to speculate about subjective states of mind or to inject pejorative descriptors not grounded in testimony or objective fact. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Here, the video forecloses the notion that school staff exhibited fear; no reasonable jury could reach that conclusion from the footage provided.

**Conclusion:** Because the record contains no evidence of "fear" and the video itself shows only neutral posture, the R&R's characterization is unsustainable. The insertion of speculative descriptors does not create a triable issue of fact. The only conclusion consistent with the objective record is that staff did not display fear, and Plaintiffs are entitled to judgment as a matter of law on this point.

## 5. Parental Authority and Truthfulness

"When Plaintiff Mello is told by one of Defendants that his child's mother had been contacted and confirmed that Plaintiff Mello would be "allow[ed]" to take the child, he can be heard

becoming even more enraged and belligerent, shouting over officers, with Plaintiff Ware also speaking loudly."

**Corrected Record:** Plaintiffs' Exhibit E and undisputed facts show that Mello already had full legal authority as a custodial parent to retrieve his daughter. No such "permission" from the child's mother was legally required. The "document" the school and officers relied upon was outdated, never in effect at the middle school, and had no continuing legal force. Mello came to the school because his daughter had called him in an emergency, reporting what he reasonably believed to be a feminine emergency. At no time did Mello misrepresent his rights or act outside the scope of his lawful parental authority. Even after the police and school gained the permission from the unverified voice on the phone to release his daughter, the school and SRO's continued to withhold Mello's daughter, continuing to violate his rights and incite matters.

**Why It Matters:** The R&R's narrative reframes the encounter as if Mello were demanding something unlawful or conditional, when in fact he was exercising well-established constitutional and statutory parental rights. The Supreme Court has long recognized "the fundamental liberty interest of parents in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); see also *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (the "integrity of the family unit has found protection" under the Due Process Clause). These rights include making decisions concerning a child's health, welfare, and immediate care.

By withholding the child until Mello became "calm" even after permission was granted and by invoking an invalid document, school officials and officers escalated the encounter rather than respecting Mello's lawful parental authority. Framing his insistence on exercising those rights as

"belligerent" improperly shifts the narrative away from the clear legal principle that a parent does not need police or school "permission" to provide emergency care for his child.

At summary judgment, this distinction is critical. A reasonable jury could conclude that Mello was not disorderly but was truthfully and lawfully asserting his parental rights. To hold otherwise would allow Defendants to convert a parent's protected exercise of custody into criminalized "defiance." Such a conclusion would contravene *Troxel* and the fundamental principles of family integrity recognized under the Fourteenth Amendment.

### 6. Officers' Escalation and Failure to De-Escalate

The Magistrate Judge states that officers were "trying to calm" Mello and warning him of arrest.

**Video Evidence:** The record demonstrates the opposite. Plaintiffs' Exhibits A and E show that officers did not engage in recognized de-escalation practices. Instead, SRO Arruda aggressively snatched the document from Mello's hand, thereby escalating tension. Later, both SROs closed physical distance after Plaintiffs explicitly requested six feet of space. Their word choices further inflamed the situation.

- **"Calm down"**: Professional de-escalation training universally warns against this phrase. LEADS (Law Enforcement Active De-escalation Strategies) and other programs emphasize that "NEVER say 'Calm down.' These words do not work during a verbal conflict." The phrase is widely recognized as escalating because it dismisses the person's emotions, sounds condescending, invalidates concerns, and typically increases frustration rather than reducing it.

- **"You're allowed"**: Telling Plaintiff that he was "allowed" to take his own daughter, when he already had lawful custodial authority, was equally inflammatory. The phrase implies a power dynamic where officers grant "permission," despite no legal basis for such authority. In this context, it was patronizing, controlling, and aggravated tensions rather than calming them.

Both phrases exemplify escalation language, not de-escalation. LEADS emphasizes positive communication skills that validate concerns and invite collaboration — such as "Help me understand what's happening" or "Let's work through this together." By contrast, the officers' choice of words, combined with aggressive body language and physical encroachment, exacerbated conflict.

**Why It Matters:** By recasting these behaviors as "trying to calm," the R&R inserts a narrative contradicted by objective evidence and by established professional standards. Courts have long recognized that when officers unnecessarily escalate a situation and then respond with force, their conduct can constitute a constitutional violation. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 23 (1st Cir. 2005). Here, the undisputed video, combined with well-established training principles, demonstrates that the officers escalated the encounter both physically and verbally.

**Conclusion:** The undisputed video and professional standards foreclose the R&R's claim that the officers were "trying to calm" Mello. No reasonable jury could interpret the snatching of papers, invasion of space, aggressive positioning, or the use of escalation phrases like "calm down" and "you're allowed" as legitimate de-escalation. The only conclusion consistent with the record is

that the officers heightened tension rather than reducing it, supporting Plaintiffs' entitlement to judgment as a matter of law.

### 7. Escort of Child During Alleged "Lockdown"

The Magistrate Judge described the footage as showing "a child [who] enters and is protectively escorted by school officials through the lobby seemingly in an attempt to quickly skirt and avoid the incident" and characterized the scene as "frightening and disturbing."

**Video Evidence:** Plaintiffs' Exhibits A and E show only a student walking with an adult through the lobby. Whether this movement was "protective" or an attempt to "skirt" the incident is speculative and not evident from the footage. Moreover, the school was allegedly in a lockdown at this time. Under Rhode Island Department of Education (RIDE) protocol, no additional students should have been permitted to enter the building during an active lockdown, particularly if administrators believed the lobby was unsafe. The fact that staff allowed a student to walk directly past Plaintiffs contradicts the R&R's characterization that Mello was creating a "frightening and disturbing" danger.

**Why It Matters:** By inserting subjective and emotionally charged descriptors, the R&R fabricates a narrative unsupported by the record. The Supreme Court has cautioned against precisely this type of fact-finding at summary judgment. Tolan v. Cotton, 572 U.S. 650, 657–60 (2014). Scott v. Harris, 550 U.S. 372, 380 (2007), allows courts to rely on video only where it "blatantly contradicts" one version of events. Here, the video undermines the R&R's account: it shows ordinary movement of a student through the lobby and contemporaneous staff conduct inconsistent with any perception of real danger.

**Conclusion:** The footage conclusively demonstrates that staff did not perceive Mello as creating a "frightening and disturbing" scene, since they permitted a student to enter and walk past him during the supposed lockdown. No reasonable jury could adopt the R&R's narrative in light of this contemporaneous conduct. The only conclusion consistent with the objective evidence is that the Magistrate's characterization is unfounded, and Plaintiffs are entitled to judgment as a matter of law on this point.

### 8. Officers' Proximity and Aggression

The Magistrate Judge described the officers as standing closer to Plaintiffs but "not pushing or visibly crowding him" and later "flanking" and "backing" Mello toward the exit "without touching."

**Video Evidence:** Exhibits A, B, and E contradict that characterization. The footage shows Mello and Ware expressly requesting six feet of space and stepping back to create distance. Rather than honoring this, both officers advanced forward, closing the gap until they stood directly on top of Plaintiffs. SRO Rocchio positioned so close to Ware that he made physical contact with her, preventing her from moving freely.

As to Mello, the record shows SRO Rocchio, without warning, abruptly seized Mello's arm. Instantly, SRO Arruda further escalated by wrapping his arm around Mello's neck/head in a chokehold maneuver and driving him forcefully and aggressively  to the ground. This takedown was fast, hard, and executed without any attempt at de-escalation.

**Why It Matters:** The R&R's finding that officers merely "stood closer" and "backed Mello without touching him" is not supported by the record. The surveillance and cellphone videos

foreclose that narrative: they depict the officers closing distance, denying personal space, and then suddenly applying force. No reasonable jury could interpret these actions as anything but escalation. Where video evidence "blatantly contradicts" the opposing party's account, a court must not adopt that version for purposes of summary judgment. See Scott v. Harris, 550 U.S. 372, 380 (2007).

Further, the R&R's intentional suggestion that no chokehold occurred is not a neutral description of the video. *Tolan v. Cotton*, 572 U.S. 650, 657–60 (2014), prohibits courts from adopting one side's characterization where the evidence allows for competing interpretations. The takedown sequence does not "blatantly contradict" Plaintiffs' account under *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, it supports Plaintiffs' position that force was abrupt, disproportionate, and contrary to accepted SRO training on de-escalation (emphasizing time, distance, and communication).

**Objection 9: Selective and Inconsistent Treatment of Video Clarity (Lobby vs. Exterior Cameras)**

"This video depicts the initiation of the arrest by one officer who grabs Plaintiff Mello's arm and the other officer who leans in and puts an arm over Plaintiff Mello's upper body/shoulder with a hand on his neck/head, bringing him to the ground… Because of the distance between the camera and the incident, the precise events are difficult to discern, except that this video does not clearly display a chokehold." (R&R at 12–13). It then concludes that a separate clip shows Plaintiff's "feet left the ground" at the cruiser hood. (R&R at 13).

**Record-Controlled Correction:** The lobby camera is physically closer to the arrest initiation and provides a clearer view of Officer Arruda's arm placed across Plaintiff Mello's neck/head as

he is driven to the ground by a chokehold. Both the lobby and exterior cameras also contain a zoom feature that allows the footage to be viewed more closely, further clarifying the officer's arm placement in the lobby and the "feet-off-ground" event outside. By contrast, the exterior camera (covering the cruiser-hood incident) is mounted higher and farther away, yet the R&R confidently finds Plaintiff's feet lifted off the ground from that distant angle while dismissing what the closer lobby footage shows. The R&R's invocation of "distance" to discount the lobby camera while crediting the exterior camera is internally inconsistent and evidences a selective, non-neutral treatment of the video record. The interior footage, particularly with zoom, supports the conclusion that Arruda used a neck restraint/chokehold to force Plaintiff to the ground.

**Legal Significance:** Courts may not selectively parse video evidence to favor one side or resolve competing inferences at summary judgment. Tolan v. Cotton, 572 U.S. 650, 657–60 (2014); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Nor may a court disregard what video reasonably shows unless it "blatantly contradicts" a party's account. Scott v. Harris, 550 U.S. 372, 380 (2007). Here, the closer lobby footage—especially when zoomed—supports Plaintiffs' account of a neck restraint; treating it as too "distant" while crediting more distant exterior footage is not neutral factfinding—it is impermissible weighing.

**Requested Disposition:** The Court should reject the R&R's dismissal of the lobby-camera evidence as "too distant," recognize that the interior footage supports a finding that Arruda applied a neck/head restraint in taking Plaintiff to the ground, and evaluate the excessive-force analysis accordingly (together with the exterior clip showing a forceful shove that lifted both feet while handcuffed).

**Objection 10: The R&R Intentionally Mischaracterizes the Use of Force Depicted in the Video**

The R&R states: "It appears to show that, once the three individuals reached the front of the police vehicle, one of Defendant officers abruptly pushed Plaintiff Mello so that he was bending at the waist face down over the vehicle. This video does not clearly display that Plaintiff Mello was '[s]mashed' but it does show that his feet left the ground." (R&R at 13; ECF No. 79-2/102-2 at 1).

**Record-Controlled Correction:** The video shows far more than a "push." Defendant Rocchio, with Plaintiff already handcuffed, abruptly drives Plaintiff into the hood of the cruiser with such force that both of Plaintiff's feet leave the ground simultaneously. To concede that the video depicts a handcuffed arrestee propelled forward hard enough to lift his feet off the ground while minimizing it as not a "smash" is to distort the plain reality of what the video shows. The severity of the force is not altered by wordplay—whether one calls it a "smash," "slam," or "violent shove," the visual evidence is unmistakable: Plaintiff was forcefully driven into the vehicle while fully restrained and compliant.

**Legal Significance:** The Magistrate's characterization is not neutral factfinding but a minimization of force that the objective video evidence plainly depicts. At summary judgment, the question is whether the record leaves any genuine dispute of material fact. Here, it does not. The video conclusively establishes that Rocchio drove Mello into the cruiser with enough force to lift him off his feet while restrained. No reasonable jury could view the footage as a mere "push." See Scott v. Harris, 550 U.S. 372, 380 (2007) (video controls where it plainly depicts the

event). The R&R's wordplay does not change the reality that the video shows excessive force against a handcuffed arrestee.

**Requested Disposition:** The Court should reject the R&R's minimizing characterization. The video evidence forecloses any genuine dispute and establishes that Mello was forcefully driven into the cruiser hood with enough force to lift him off the ground while restrained. Whether described as a "smash" or a "slam," the degree of force is plain from the footage, and Plaintiffs are entitled to judgment as a matter of law on this issue.


## OBJECTION TO R&R ANALYSIS

### Objection 1: The R&R Improperly Weighs Evidence and Misstates the Video Standard

The Magistrate Judge wrote: "In particular, having watched them carefully, I find that the videos on which Plaintiffs rely do not utterly discredit Defendants' version of events." (R&R at 14).

**Record-Controlled Correction:** At summary judgment, the Court's role is not to "find" facts or decide which version of events is more credible. The governing standard requires the Court to determine whether the evidence leaves any genuine dispute of material fact or whether the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The R&R's phrasing — "having watched them carefully, I find…" — demonstrates improper factfinding and credibility assessment.

Further, the R&R misstated the controlling video-evidence standard. Under Scott v. Harris, 550 U.S. 372, 380 (2007), video evidence may override testimony where it so clearly depicts events that no reasonable jury could believe the contrary account. The test is not whether the video

25

"utterly discredits" Defendants' version — a formulation that inverts the burden and stacks the deck against Plaintiffs. The proper inquiry is whether the video evidence forecloses Defendants' account such that no genuine dispute remains. Here, the videos conclusively support Plaintiffs' account: they show Arruda's chokehold takedown and Rocchio's slam into the cruiser hood with enough force to lift Mello's feet. No reasonable jury could view this as mere "guidance" or "slight push."

**Legal Significance:** By "finding" facts and misstating the Scott standard, the R&R impermissibly reframes objective video evidence to favor Defendants, rather than applying Rule 56 neutrally. The result denies Plaintiffs — pro se litigants entitled to fair application of procedural safeguards — the correct summary judgment analysis. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

**Requested Disposition:** The Court should reject the R&R's misapplication of the video standard. The surveillance conclusively depict the chokehold takedown and violent hood slam, foreclosing Defendants' contrary narrative. Plaintiffs are entitled to judgment as a matter of law on these excessive-force claims.

## Objection 2: The R&R Erroneously Conflates Protected Parental Advocacy with Justification for Excessive Force

The R&R intentionally credits Defendants' narrative that Plaintiff Mello's "disorderly conduct was seriously disruptive and frightening, potentially endangering children and staff … and that Plaintiff Mello's aggressive and persistent resistance … justified the extent of the force that Defendants deployed." (R&R at 14).

**Record-controlled correction.**

The record reflects that Plaintiff Mello was present at Western Hills Middle School to seek dismissal of his daughter, whom he reasonably believed was experiencing a private feminine emergency. His efforts to advocate for and assist his child are core parental responsibilities and speech. Any frustration or persistence expressed in that context does not amount to disorderly or criminal conduct. The video evidence shows Plaintiff waiting calmly in the lobby, speaking with staff, and standing near the exit at the time police approached him—not engaged in threatening or violent behavior. These actions, even if inconvenient to school administrators, did not warrant the degree of physical force that Defendants employed during his arrest.

**Legal significance.**

First, speech and advocacy on behalf of one's child, even when firm or unwelcome, are protected activities. Government officials may not recast parental advocacy as "disorderly conduct" to justify adverse action. See *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (the First Amendment protects "a significant amount of verbal criticism and challenge directed at police officers").

Second, the Fourth Amendment prohibits police from using force that is disproportionate to the threat posed. The test is objective reasonableness, considering the severity of the alleged offense, the immediacy of any threat, and the level of resistance. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, the alleged offenses were misdemeanors; the video shows no immediate threat to officers, staff, or students; and Plaintiff did not initiate physical aggression. Under these circumstances, tackling, restraining, or otherwise using violent force cannot be justified as "reasonable."

**Requested disposition.**

The Court should reject the R&R's conclusion that Plaintiff's parental advocacy and speech justified the level of force used. Protected expression and the lawful act of seeking one's child do not create a basis for escalation to physical violence. The video evidence and record establish that Defendants applied force without lawful justification, and under the governing standards of *Graham* and *Hill*, Plaintiffs are entitled to judgment as a matter of law on the excessive force claim.

**Objection 3: The R&R Misapplies Judicial Notice and Misrepresents the Record Depicted in the Videos**

The R&R states: "To the extent that the request for judicial notice seeks to require the Court to adopt a particular interpretation of the videos, it is denied." (R&R at 15).

**Record-controlled correction.**

Plaintiffs did not request that the Court adopt a "particular interpretation" of the videos. Plaintiffs requested that the Court view the videos for what they actually show. The surveillance footage provides an objective record of events, and the Magistrate's description of those videos— labeling Plaintiff as "irate," "frightening," or "disruptive" for example —is not a neutral account of the evidence but an intentional distortion. By substituting Defendants' narrative for the objective visual record, the R&R demonstrates that the videos were not viewed on their own terms but filtered through Defendants' characterizations. As pro se litigants, Plaintiffs are entitled to the same fair and unbiased evaluation of the evidence as represented parties; the Court may not disregard video evidence that directly contradicts Defendants' claims.

**Legal significance.**

Courts may not intentionally weigh competing interpretations of video evidence at the summary judgment stage. Video evidence overrides testimony only when it "blatantly contradicts" one party's account so that no reasonable jury could believe it. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The proper inquiry for the movant's motion is whether the video and record eliminate any genuine dispute of material fact and entitle the movant to judgment as a matter of law. Here, the videos conclusively corroborate Plaintiffs' account of the chokehold takedown and the forceful hood slam, and no reasonable jury could minimize those events as mere "guidance" or "pushes." By rejecting Plaintiffs' reliance on the videos while crediting Defendants' subjective descriptions, the Magistrate misapplied Rule 56 and distorted the objective record. That approach deprives Plaintiffs of a fair adjudication, contrary to the requirement that courts remain impartial, particularly where pro se litigants are involved. See *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

**Requested disposition.**

The Court should reject the R&R's refusal to consider the videos as objective record evidence. Plaintiffs did not seek judicial notice of an "interpretation," but simply requested acknowledgment of what the videos actually depict. The Court should review the surveillance footage without adopting Defendants' narrative gloss, and should evaluate the motion for summary judgment under the proper Rule 56 standard and governing Supreme Court precedent.

## CONCLUSION

The Magistrate Judge's R&R does not simply err in its analysis — it abandons the neutral role the law requires. It misstates the record, adopts Defendants' narrative as fact, and disregards

what the video evidence undeniably shows. Rule 56 exists to prevent exactly this: when material facts are not genuinely disputed, judgment must be entered as a matter of law.

The surveillance and cellphone videos are not ambiguous. They depict Officer Arruda wrapping his arm around Plaintiff Mello's neck and driving him to the ground, and Officer Rocchio later slamming a handcuffed Plaintiff into the hood of a cruiser with such force that both of his feet left the ground. No reasonable jury could deny what these videos show. To describe them as anything less is not neutrality — it is distortion.

The same distortion pervades the R&R's treatment of the Family Court Order. A binding order that nullified prior restrictions is reduced to a mere "receipt" problem, excusing officials who acted without lawful authority. Yet in Plaintiffs' trespass matter, this Court concluded that Plaintiff Mello was "somehow notified" of a no-trespass restriction because a newspaper reported on it and because his wife sent emails to school officials. Neither a news article nor a spouse's correspondence constitutes official notice under Rhode Island law or due process standards. Nevertheless, those informal sources were treated as binding against Plaintiff, while here, direct on-scene notice coupled with the controlling Family Court Order was dismissed as meaningless. This asymmetrical application of law — disregarding valid judicial orders for Defendants while enforcing nonexistent orders against Plaintiffs — is arbitrary, outcome-driven, and constitutionally indefensible.

A fair and impartial review would apply the controlling law to the actual record, not recast the record to protect government actors. Plaintiffs have established their claims as a matter of law: the videos prove the excessive force, the Family Court order eliminates Defendants' justification,

and no genuine factual dispute remains. Summary judgment is not merely appropriate here — it is required.

This objection would not be 30+ pages if the amount of inaccurate information wasn't so egregious. If the R&R had applied the law neutrally and described the record accurately then we would not be needed to address the totality of the R&R. Its sheer number of distortions, omissions, and misstatements has forced Plaintiffs to respond point by point the best we could given the blatant inaccuracies to preserve their rights.

This Objection would not be so lengthy if the R&R had not required a point-by-point correction of so many errors. The Report does not simply misapply Rule 56; it tilts the scale at every turn. It invokes *Quintana-Dieppa* to stretch "light most favorable" into a license to recast video evidence, narrowing obvious facts into phrases like "feet left the ground" instead of acknowledging the slam, or "does not clearly display a chokehold" when the restraint is unmistakable. It reduces a binding Family Court order to a "receipt problem" (n.5), brushes aside probable cause arguments as "Heck-barred" (n.7), and labels Plaintiffs' evidentiary objections "disingenuous" (n.12). Even when granting in part—such as excluding the unsworn expert report—the R&R minimized the ruling by declaring it "unnecessary" to the outcome. In substance and tone, the Report consistently frames Plaintiffs as unreasonable and Defendants as credible. That is not neutrality; it is clear or transparent judicial bias. This pattern confirms that the R&R cannot stand and that de novo review by the District Judge is not only appropriate but essential.

Accordingly, Plaintiffs respectfully request that the District Judge reject the R&R, grant Plaintiffs' Motion for Summary Judgment, and enter judgment in Plaintiffs' favor. If courts are

permitted to disregard unambiguous video and binding orders in favor of government narrative,

Rule 56 becomes meaningless, and constitutional protections become illusory.

Dated: September 23, 2025

Respectfully submitted,

/s/ Joshua Mello
/s/ Rachel Ware
57 Rolfe Square, Unit 10113
Cranston, RI 02910
kskustomsrideons@gmail.com

Exhibit A: Invalid Court Order the school had on file.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd of September 2025, a copy of the foregoing OBJECTION TO REPORT AND RECOMMENDATION  was served via the e-filing system and via email to:

Julia K. Scott-Benevides
DeSisto Law LLC
(401) 272-4442
julia@desistolaw.com

/s/ Joshua Mello
/s/ Rachel Ware